IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>V.<br><br>ROY W. HILL, ERIC N. SHELLY,<br>CLEAN ENERGY TECHNOLOGY<br>ASSOCIATION, INC., and<br>FREEDOM IMPACT CONSULTING, LLC,<br><br>Defendants. | § § § § § § § § § § § § § § § Case No. 6:23-cv-00321 |

## RECEIVER'S QUARTERLY REPORT FOR THE THIRD QUARTER OF 2023

Receiver Albert C. Black III ("Receiver") provides this quarterly report for the period July 1, 2023 through September 30, 2023, respectfully stating:

### Introduction

1. This is the second quarterly report made pursuant to the requirements of the Order Appointing Receiver ("Appointment Order") (Doc. 8, at 16, para. 53).

2. This report builds upon the Receiver's earlier reports in the case (Docs. 27, 32 & 34).

### Significant Developments in Main Action

3. As the receivership is ancillary to the main action between the above-captioned parties, the Receiver's actions depend, in part, upon the progress of the main action.

4. On August 8, 2023, the Court entered an agreed judgment on liability against Defendant Eric Shelly ("Shelly") (Doc. 38).

5.   On August 25, 2023, the Court entered an agreed judgment on liability against Defendant Roy Hill ("Hill") (Doc. 41).

6.   In the judgments, both of the individual defendants agreed to pay disgorgement and a civil penalty (Doc. 38 at 3; Doc. 41 at 3). The amounts are to be determined by the Court at a later date (*id.*).

7.   In view of the entry of these judgments, the role of the Receiver shifts somewhat from maintaining the status quo to proceeding toward a liquidation and restitution. However, until the amount of the disgorgement and civil penalties is set, the Receiver must proceed on estimates of what is likely to occur.

8.   In regard to the corporate defendants – the Clean Energy Technology Association, Inc. ("CETA") and Freedom Impact Consulting, LLC ("FIC") – the Receiver intends to enter into stipulated judgments in line with the judgments against the individual defendants. The Receiver has concluded the corporate defendants did violate the securities laws as alleged by the Securities and Exchange Commission ("SEC").

A.   **Summary of the Operations of the Receiver**

9.   During the third quarter of 2023, the Receiver engaged in the following principal activities:

   a. Continued to work with Hill and Shelly to obtain full compliance with the requirements of the Appointment Order in respect to disclosures of assets;

   b. Reviewed submissions from Hill and Shelly and conducted due diligence on disclosed assets;

   c. Reviewed recovered records to identify additional assets of the Defendants, including bank records, insurance records, and other CETA documents;

d. Investigated indications of CETA/Hill mineral interests and determined a material value of the same did not exist;

e. Interviewed former CETA board member;

f. Identified appraisers for Shelly real property in Florida;

g. Recovered and resolved course of action to be taken with respect to CETA vehicles;

h. Continued to receive, tabulate and preliminarily review claims of investors and creditors;

i. Continued to respond to investor and creditor inquiries;

j. Prepared and submitted the Receiver's First Report and Recommendation for Claim Approval and Distribution in respect of a unique investor claim arising from the transfer of that investor's funds to CETA subsequent to the entry of the freeze order (Doc. 42);

k. Negotiated, prepared, and submitted the Receiver's Second Report and Recommendation for Claim Approval and for Partial Interim Distribution resolving Shelly's claim to certain assets acquired prior to the CETA/FIC investment scheme and establishing procedures to cooperate in addressing certain assets;

l. Negotiated with William Keels in respect of a potential interim distribution of certain voluntarily frozen funds pertaining to an investor group he assembled and managed, and reconciled his accounting against the recovered bank records and accounting records;

m. Gathered information for, drafted, and submitted the Receiver's first quarterly report (Doc. 34);

n. Engaged in communications with Dave Zook and his counsel, and received and reviewed an investor accounting from him, as well as certain key documents;

o. Examined and evaluated the CETA patents and trademarks, and determined steps necessary to maintain them in force if advisable;

p. Located and obtained approval of the employment of an expert to examine the CETA equipment and to make recommendations as to its highest and best use (*see* Doc. 48);

q. Assessed the cost/benefit of retaining certain equipment for inspection by the expert, and addressed the security of certain equipment;

r. Assessed and determined to abandon certain items in a Hill storage unit;

s. Undertook a more complete investigation into Freestone Energy in view of lack of explanation of same from Hill and millions of dollars of transfers to and from accounts denominated as Freestone Energy accounts;

t. Undertook a more complete investigation into the transfer of approximately $5 million to the Allen Brothers, assessed legal claims to recover the same, and assessed practical impediments to the recovery of the funds;

u. Continued work to assess transfers to Hill Trust #2 for possible recovery;

v. Examined certain parallel litigation;

w. Assessed steps to be taken to establish the value of recovered assets for QSF treatment as required by Appointment Order;

x. Continued to work to secure receivership assets not yet turned over to the Receiver, including certain items needed from Hill;

y. Completed the negotiations to transfer the cash in the Wells Fargo accounts into accounts consistent with the directives of the Appointment Order, and worked

        to establish a brokerage account at Bank of America for the brokerage account remaining at Wells Fargo;

z. Maintained an appropriate receivership accounting;

aa. Addressed employee benefit claims;

bb. Obtained more complete records from the involved banks;

cc. Prepared and served subpoena to recover certain bank records;

dd. Addressed property management issues;

ee. Interviewed certain early CETA investors and assessed claims of same;

ff. Worked to negotiate the resolution of certain claims; and

gg. Responded to inquiries from the Plaintiff, other authorities, and third parties.

**B. Cash and Administrative Expenses**

10. The receivership estate's combined cash and publicly traded liquid securities is reflected on the attached Exhibit A. The amount is $67,027,524.95.

11. The Receiver's professionals have been paid $130,796.19.

**C. Receipts and Disbursements**

12. Exhibit A shows receipts and disbursements for the quarter and since inception.

**D. Receivership Property**

13. On August 8, 2023, Hill provided a statement of assets for himself and CETA.

Cash

14. As reflected on the attached Exhibit A, the value of the receivership estate's combined cash and publicly traded liquid securities was $67,027,524.95.

Equipment

15. As previously reported, the Receiver has identified and secured certain equipment purporting to be coal distillation, carbon capture units, or parts thereof, which were entirely

demonstrative. In his statement of assets, Hill indicated a cash basis value for this equipment in the tens of millions. During the third quarter, the Receiver located and retained an expert to examine the equipment and opine as to its highest and best use.

16. The Receiver has collected a number of CETA vehicles whose value has not yet been determined. The Receiver intends to sell these vehicles in due course.

### Real Estate

17. CETA owns industrial yards in Fairfield and Streetman, Texas. The value has not been determined.

18. CETA Land and Mineral Investments, Inc. appears to own a few lots of limited value in Caddo Parish, Louisiana.

19. Shelly owns real estate as reflected on Exhibit C. During the last quarter, the Receiver obtained authority to cooperate with Shelly in liquidating certain of these properties and to retain others pending resolution of the main action.

### Investments

20. Shelly has a number of investments as shown on Exhibit C.

21. The investment assets stated on Exhibit A are detailed in the list of Shelly investments on Exhibit C.

**E. Claims Held by the Receivership Estate**

22. Hill transferred over $8 million dollars to "Trust No. 2", which owns the house where he often lives, the office where he worked, and other property. As Hill has not provided an accounting of these funds, the Receiver made arrangements to obtain a summary of the applicable bank records, which was undertaken following the end of the third quarter.

23. Hill caused tens of millions of dollars to pass through accounts in the name of Freestone Energy. During the third quarter, the Receiver determined Freestone Energy was

originally an offering made to raise funds for an operating company. Later, the name was applied to several accounts through which funds were laundered and paid back to investors as purported returns of operations. In fact, there were no revenues from any such operations. The payments through Freestone Energy to investors will be tabulated as a part of the claims process as investor returns. There is nothing to recover from Freestone Energy.

24. In respect of the $5.1 million paid in respect of the Allen Brothers business, it is now clear these funds were employed principally to settle a dispute between two sides of the family over ownership of the business, resulting in the full ownership of the business by one side of the family. The assets of the business include oil and gas properties, and some funds were also employed in an effort to bring those properties into production. The Receiver does not see a short-term means of recovering value from the properties, and does not presently expect to be able to recover the entire amount of the loan. It also appears additional sums were paid to litigate the dispute prior to the settlement.

25. The Receiver has concluded that CETA and Hill are unable to provide a complete accounting of the use of the investor funds. During the third quarter, the Receiver assembled and organized the necessary bank records and claim forms to prepare a reliable investor funds accounting, so that the Receiver may validate claims and prepare for a substantial investor interim distribution. The Receiver also conducted an examination of the Keels investor cash flows in order to address the Keels proposal and to establish a pattern for the claims review, as well as to test the value of the information in the CETA accounting records, which were determined to be insufficient.

26. The Receiver also resolved to compile a complete cash accounting from available bank records, and made arrangements to obtain the needed resources. There remains a substantial

gap to be closed that may reveal other claims and will satisfy the strong investor interest in knowing the answer to that question.

27. It appears likely that certain investors in earlier periods did receive back more than they invested. These claims are subject to claw-back. As the Receiver will necessarily have to determine investor investments and returns as a part of the claims process, the Receiver will determine the amount of returns in due course. The Receiver will assess the cost/benefit of any such claims once the accounting is complete.

F. **Claims of Creditors Against the Receivership Estate**

28. The Receiver has compiled a working claims ledger.

29. In regard to investor claims, the estimated amounts of this fundraising has continued to increase, and now stands at: $27 million raised from two large investors who invested in CETA during the period 2009 to 2015; $57 million raised by Dave Zook and his associates during the period 2018 to 2023, inclusive of funds Mr. Zook invested; $167 million in funds raised by Shelly and his associates during the period 2019 to 2023, inclusive of amounts invested by Mr. Shelly; and in excess of $50 million from other smaller groups of investors, likely during the period 2018 to 2023. In sum, at present, the Receiver has identified a period of fundraising by CETA running from 2009 to 2023, and a total raise in excess of $300 million.

30. These claims will be mitigated by investor returns. It is presently estimated that investor returns were approximately $110 million, not all of which is yet reflected on the investor claims schedule. But, some of this amount went to investors above and beyond their investments, such that the net cash loss likely exceeds $190 million.

31. A further revised (but largely unverified) list of investors is attached as Exhibit F. The Receiver has identified 794 specific investors who have submitted claims. To be clear, Exhibit F is a summary of the claims themselves, and not an assessment of the claims. The total investor

claims submitted to date assert fundraising of approximately $302 million and identify $94 million in returns, for a net cash loss of $208 million. Claims made by feeder entities have been eliminated as duplicates where possible; the underlying individual investor claims are shown instead.

32. Five vendor claims totaling $1,381,268.85 have been submitted as reflected on Exhibit G. Additionally, Shimadzu Scientific Instruments, Inc. demanded the return of laboratory equipment, related computer equipment, and software for which payment had not yet been made in the amount due of $58,898.63. This equipment was still in the box, and so it was returned. No claim has been submitted.

33. Claims and claim inquiries may be submitted through the former CETA website, located at www.cetaenergy.com.

G. **Creditor Claims Proceedings**

34. The Receiver is still gathering claims, but believes that sufficient claims have been received and sufficient bank records have been accumulated to commence a detailed claims review.

H. **Continuation of the Receivership**

35. This topic is covered in detail at the end of the Receiver's Preliminary Report.

36. The Receiver recommends that the receivership be continued.

Respectfully submitted,

/s/ Dennis Roossien
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: 214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2023, a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

                                                                    */s/ Dennis Roossien*