IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| V. § § § | Case No. 6:23-cv-00321-ADA |
| ROY W. HILL, et al. § | |

### RECEIVER'S UNOPPOSED SECOND INTERIM FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Albert C. Black III ("Receiver") submits this Second Interim Fee Application, respectfully stating:

### Introduction

1. This Application seeks the Court's approval of the fees and expenses incurred during the period of July 1, 2023 through September 30, 2023.

2. The Receiver has filed a corresponding status report that summarize his efforts during this period, identifies the assets and liabilities of the receivership estate, and provide other information pertinent to this application (Docs. 52). The assets and liabilities are stated in the aggregate, with certain subsidiary information pertaining to the receivership defendants, Clean Energy Technology Association, Inc. ("CETA"), Roy Hill ("Hill"), Eric Shelly ("Shelly"), and Freedom Impact Consulting, LLC ("FIC").

3. The receivership assets are valued at approximately $74 million.

4. The largest liabilities are the claims of over 740 claims from investors who contributed in excess of $300 million. Net of returns, the investor loss is presently estimated at approximately $190 million.

RECEIVER'S UNOPPOSED SECOND INTERIM FEE APPLICATION – Page 1

5. The services provided to implement the appointment order are detailed below and in the accompanying appendix.

### Amount Sought

6. This application seeks approval to pay $249,917.14 for fees and expenses.

### Services Provided

7. During the third quarter of 2023, the Receiver engaged in the following principal activities:

   a. Continued to work with Hill and Shelly to obtain full compliance with the requirements of the Appointment Order in respect to disclosures of assets;

   b. Reviewed submissions from Hill and Shelly and conducted due diligence on disclosed assets;

   c. Reviewed recovered records to identify additional assets of the Defendants, including bank records, insurance records, and other CETA documents;

   d. Investigated indications of CETA/Hill mineral interests and determined a material value of the same did not exist;

   e. Interviewed former CETA board member;

   f. Identified appraisers for Shelly real property in Florida;

   g. Recovered and resolved course of action to be taken with respect to CETA vehicles;

   h. Continued to receive, tabulate and preliminarily review claims of investors and creditors;

   i. Continued to respond to investor and creditor inquiries;

   j. Prepared and submitted the Receiver's First Report and Recommendation for Claim Approval and Distribution in respect of a unique investor claim arising

from the transfer of that investor's funds to CETA subsequent to the entry of the freeze order (Doc. 42);

k. Negotiated, prepared, and submitted the Receiver's Second Report and Recommendation for Claim Approval and for Partial Interim Distribution resolving Shelly's claim to certain assets acquired prior to the CETA/FIC investment scheme and establishing procedures to cooperate in addressing certain assets;

l. Negotiated with William Keels in respect of a potential interim distribution of certain voluntarily frozen funds pertaining to an investor group he assembled and managed, and reconciled his accounting against the recovered bank records and accounting records;

m. Gathered information for, drafted, and submitted the Receiver's first quarterly report (Doc. 34);

n. Engaged in communications with Dave Zook and his counsel, and received and reviewed an investor accounting from him, as well as certain key documents;

o. Examined and evaluated the CETA patents and trademarks, and determined steps necessary to maintain them in force if advisable;

p. Located and obtained approval of the employment of an expert to examine the CETA equipment and to make recommendations as to its highest and best use (*see* Doc. 48);

q. Assessed the cost/benefit of retaining certain equipment for inspection by the expert, and addressed the security of certain equipment;

r. Assessed and determined to abandon certain items in a Hill storage unit;

s.  Undertook a more complete investigation into Freestone Energy in view of lack of explanation of same from Hill and millions of dollars of transfers to and from accounts denominated as Freestone Energy accounts;

t.  Undertook a more complete investigation into the transfer of approximately $5 million to the Allen Brothers, assessed legal claims to recover the same, and assessed practical impediments to the recovery of the funds;

u.  Continued work to assess transfers to Hill Trust #2 for possible recovery;

v.  Examined certain parallel litigation;

w.  Assessed steps to be taken to establish the value of recovered assets for QSF treatment as required by Appointment Order;

x.  Continued to work to secure receivership assets not yet turned over to the Receiver, including certain items needed from Hill;

y.  Completed the negotiations to transfer the cash in the Wells Fargo accounts into accounts consistent with the directives of the Appointment Order, and worked to establish a brokerage account at Bank of America for the brokerage account remaining at Wells Fargo;

z.  Maintained an appropriate receivership accounting;

aa. Addressed employee benefit claims;

bb. Obtained more complete records from the involved banks;

cc. Prepared and served subpoena to recover certain bank records;

dd. Addressed property management issues;

ee. Interviewed certain early CETA investors and assessed claims of same;

ff. Worked to negotiate the resolution of certain claims; and

gg. Responded to inquiries from the Plaintiff, other authorities, and third parties.

8.  Statements further detailing the efforts of the Receiver and his professionals, as well as the costs incurred, are detailed in the accompanying appendix. The following chart summarizes the statements, which appear in the appendix in the order stated on the chart:

| Firm | Month | Amount |
|---|---|---|
| Receiver (New Horizons) | July | 6,966.00 |
| Receiver (New Horizons) | August | 2,736.00 |
| Receiver (New Horizons) | September | 3,474.00 |
| New Horizons | July | 55,154.00 |
| New Horizons | August | 71,205.55 |
| New Horizons | September | 56,028.91 |
| Munsch Hardt | July | 12,847.00 |
| Munsch Hardt | August | 25,695.70 |
| Munsch Hardt | September | 15,809.98 |
| | | 249,917.14 |

## Application of Johnson Factors

9.  The primary concern in regard to professional fees is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

10. The following reviews this Application with regard to each of the *Johnson* factors:

(a)  The time and labor required. The time and labor required are set forth in detail in the statements contained in the accompanying appendix.

(b)  The novelty and difficulty of the questions. The questions addressed by the professionals herein are common to enforcement receiverships generally, but handling such receivership cases is a narrow specialty requiring experienced professionals conversant with a substantial body of largely common law and customary practice.

RECEIVER'S UNOPPOSED SECOND INTERIM FEE APPLICATION – Page 5

(c) <u>The requisite skill to perform the service</u>.  The fiduciary and legal services required the employment of individuals possessing considerable experience and capacity in handling equity receiverships.  The Receiver, his counsel, and his support staff have considerable experience in these areas.  The Receiver's support team also includes persons with more general administrative and logistical capacities of they type ordinarily required to administer assets such as those present in this case, to make business judgments, and to otherwise execute certain administrative functions.

(d) <u>The preclusion of other employment due to the acceptance of the case</u>.  The Receiver and his professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Western District of Texas and in the case of the Receiver and his professionals.  Both the Receiver and his counsel have discounted their standard rates by ten percent and agreed to a $65,000 cap for the first month of the case.

(f) <u>Whether the fee is fixed or contingent</u>. The Receiver and his professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees.  Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets.

(g) <u>Time limitations imposed by the client or other circumstances</u>. The early steps in the receivership were conducted on an emergent basis.  Thereafter, the Receiver and his professionals have generally not faced unusual time pressures.

(h)     <u>The amount involved and the results obtained</u>.  The amount involved in this case can be measured in a number of ways.  First, this case involves invested funds of approximately $300 million and a net cash loss in excess of $190 million.  Second, the remaining assets have a presently estimated market value of approximately $74 million.  Third, this case involves substantial investments by over 740 investors who are entitled to know what actually happened and to address the tax implications of what occurred with the benefit of accurate knowledge.  The results obtained are many, including the implementation of the asset freeze, the halting of the fraudulent conduct both through the asset freeze and the provision of accurate and truthful information, the winding up of the CETA operations and all that entails, the interim resolution of claims and inquiries, and the proper administration of a receivership estate.  Ultimately, this case will provide both restitution to investors and proper payment of other claims consistent with applicable law.

(i)     <u>The experience, reputation and ability of the attorneys</u>.  Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters.  The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion.  The Receiver and his counsel have also served as receivers or participated in other receiverships.  The reputations of the Receiver and his counsel are recognized and respected in their community and area of practice.

(j)     <u>The undesirability of the case</u>.  The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

  (k) <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

  (l) <u>Award in similar cases</u>.  The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases.

## Certification

The undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof.  Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that he has read this Application, that to the best of his knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that he has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, he requests reimbursement only for the amount billed by and paid to the vendor and he is not making a profit on any reimbursable services provided by him.

**Conclusion**

WHEREFORE, the Receiver prays that the Court approve the administrative expenses sought herein.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: 214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

**CERTIFICATE OF CONFERENCE**

I hereby certify that this motion is not opposed by the Plaintiff and Roy Hill, who are the only parties who have appeared through counsel.

*/s/ Dennis Roossien*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

*/s/ Dennis Roossien*