IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| V. | § | Case No. 6:23-cv-00321 |
| | § | |
| ROY W. HILL, et al. | § | |

## APPENDIX IN SUPPORT OF
## UNOPPOSED MOTION TO APPOINT APPRAISERS, TO APPROVE APPRAISALS, AND TO SET A HEARING TO CONSIDER CONFIRMATION OF
## THE SALE OF REAL ESTATE IN OCALA, FLORIDA

Receiver ALBERT C. "TRÉ" BLACK, III (the "Receiver") tenders this appendix in support of the above-titled real estate sale motion.

Respectfully submitted,

/s/ *Dennis Roossien*
Dennis L. Roossien, Jr.
SBN: 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7535
Email: droossien@munsch.com

ATTORNEY FOR RECEIVER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on all counsel of record via ECF contemporaneously with its filing.

/s/ *Dennis Roossien*
Dennis L. Roossien, Jr.

# APPRAISAL OF REAL PROPERTY



## LOCATED AT
10579 SW 11th Ter
Ocala, FL 34476
SEC 30 TWP 16 RGE 22 PLAT BOOK 006 PAGE 097 EQUINE ESTATES LOT 17

## FOR
Alek Wietrzykowski
1133 S. Madison Ave
Dallas, TX 75208

## OPINION OF VALUE
1,150,000

## AS OF
11/10/2023

## BY
Jon A. Dawson, SRA
Dawson Appraisal Services, LLC
13689 Granger Ave
Orlando, FL 32827
(407) 718-1089
appraiser.cfl@gmail.com
www.dawsonappraisals.com

Dawson Appraisal Services, LLC

| Client File #: | 10579 SW 11th Ter | Appraisal File #: | 10579 SW 11th Ter |
|---|---|---|---|

# Appraisal Report · Residential

**AI Reports™**
Form 100.05*

| Appraisal Company: | Dawson Appraisal Services, LLC |
|---|---|
| Address: | 13689 Granger Ave, Orlando, FL 32827 |
| Phone: (407) 718-1089 | Fax: (407) 482-6639 | Website: www.dawsonappraisals.com |

| Appraiser: Jon A. Dawson, SRA | Co-Appraiser: |
|---|---|
| AI Membership (if any): ☒ SRA ☐ MAI ☐ SRPA ☐ AI-GRS ☐ AI-RRS | AI Membership (if any): ☐ SRA ☐ MAI ☐ SRPA ☐ AI-GRS ☐ AI-RRS |
| AI Status (if any): ☐ Candidate for Designation ☐ Practicing Affiliate | AI Status (if any): ☐ Candidate for Designation ☐ Practicing Affiliate |
| Other Professional Affiliation: Orlando Regional Realtor Association | Other Professional Affiliation: |
| E-mail: appraiser.cfl@gmail.com | E-mail: |

| Client: | Alek Wietrzykowski | Contact: | Alek Wietrzykowski |
|---|---|---|---|
| Address: | 1133 S. Madison Ave, Dallas, TX 75208 | | |
| Phone: | 469-513-9226 | Fax: | E-mail: awietrzykowski@otsl.com |

## SUBJECT PROPERTY IDENTIFICATION

| Address: | 10579 SW 11th Ter |
|---|---|

| City: Ocala | County: Marion | State: FL | ZIP: 34476 |
|---|---|---|---|

| Legal Description: | SEC 30 TWP 16 RGE 22 PLAT BOOK 006 PAGE 097 EQUINE ESTATES LOT 17 |
|---|---|

| Tax Parcel #: 37338-017-00 | RE Taxes: 17,293 | Tax Year: 2023 |
|---|---|---|

| Use of the Real Estate As of the Date of Value: | Improved agricultural property |
|---|---|
| Use of the Real Estate Reflected in the Appraisal: | Improved agricultural property |
| Opinion of highest and best use (if required): | The highest and best use is its current use - as an improved agricultural property. |

## SUBJECT PROPERTY HISTORY

| Owner of Record: | Eric Shelly & Margaret Lee |
|---|---|

Description and analysis of sales within 3 years (minimum) prior to effective date of value:          See attached addenda.

Description and analysis of agreements of sale (contracts), listings, and options:          None per client and MFRMLS.

## RECONCILIATIONS AND CONCLUSIONS

| Indication of Value by Sales Comparison Approach | $ 1,150,000 |
|---|---|
| Indication of Value by Cost Approach | $ 1,152,256 |
| Indication of Value by Income Approach | $ |

Final Reconciliation of the Methods and Approaches to Value:          All weight is given to the results from the sales comparison approach, as it best reflects the actions of buyers and sellers in the marketplace. The cost approach to value is applicable due to the subject's limited depreciation and sparse similar recently sold comparables available to support the sales comparison, and is included for support of the reconciled opinion of market value.

The income approach to value is not necessary for credible assignment results. There is an inadequate number of recently sold comparable rentals, and the vast majority of properties in this neighborhood are purchased for owner-occupancy. As such, it is excluded from this analysis.

| Opinion of Value as of: 11/10/2023 | $ 1,150,000 |
|---|---|

| Exposure Time: | The subject's estimated exposure time is 30-90 days. Marketing time is 30-90 days. |
|---|---|

The above opinion is subject to: ☐ Hypothetical Conditions   and/or   ☐ Extraordinary Assumptions   cited on the following page.

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved          June 2017

Form AI1005B - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE          APPENDIX - 003

| Client: | Alek Wietrzykowski | | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | | Appraisal File #: | 10579 SW 11th Ter |

## ASSIGNMENT PARAMETERS

**Intended User(s):** The intended user of this report is the Client and Albert (Tré) Black III. There are no other named intended users.

**Intended Use:** The Intended Use is for receivership.

This report is not intended by the appraiser for any other use or by any other user.

**Type of Value:** Market Value      **Effective Date of Value:** 11/10/2023

**Interest Appraised:** ☒ Fee Simple      ☐ Leasehold      ☐ Other

**Hypothetical Conditions:** (A hypothetical condition is that which is contrary to what exists, but is asserted by the appraiser for the purpose of analysis. Any hypothetical condition may affect the assignment results.) This appraisal includes no hypothetical conditions.

**Extraordinary Assumptions:** (An extraordinary assumption is directly related to a specific assignment and presumes uncertain information to be factual. If found to be false this assumption could alter the appraiser's opinions or conclusions. Any extraordinary assumption may affect the assignment results.) This appraisal includes no extraordinary assumptions.

This is an Appraisal Report in accordance with Standard Rule 2-2(a) of the Uniform Standard of Professional Appraisal Practice (USPAP).

## SCOPE OF WORK

**Definition:** The scope of work is the type and extent of research and analysis in an assignment. Scope of work includes the extent to which the property is identified, the extent to which tangible property is inspected, the type and extent of data research, and the type and extent of analysis applied to arrive at credible opinions or conclusions. The specific scope of work for this assignment is identified below and throughout this report.

| Scope of Subject Property Inspection/Data Sources Utilized | Approaches to Value Developed |
|---|---|
| **Appraiser** | **Cost Approach:** |
| Property Inspection:   ☒ Yes   ☐ No | ☒ Is necessary for credible results and is developed in this analysis |
| Date of Inspection:   11/10/2023 | ☐ Is not necessary for credible results; not developed in this analysis |
| Describe Scope of Property Inspection, Source of Area Calculations | ☐ Is not necessary for credible results but is developed in this analysis |
| and Data Sources Consulted:   The county property appraiser's website | |
| and the local MLS were consulted for this assignment. See the | **Sales Comparison Approach:** |
| attached addendum for the scope of work. | ☒ Is necessary for credible results and is developed in this analysis |
| | ☐ Is not necessary for credible results; not developed in this analysis |
| **Co-Appraiser** | ☐ Is not necessary for credible results but is developed in this analysis |
| Property Inspection:   ☐ Yes   ☐ No | |
| Date of Inspection: | **Income Approach:** |
| Describe Scope of Property Inspection, Source of Area Calculations | ☐ Is necessary for credible results and is developed in this analysis |
| and Data Sources Consulted: | ☒ Is not necessary for credible results; not developed in this analysis |
| | ☐ Is not necessary for credible results but is developed in this analysis |

**Additional Scope of Work Comments:**      See attached addenda.

**Significant Real Property Appraisal Assistance:**      ☒ None   ☐ Disclose Name(s) and contribution:

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved                                                                                                                        June 2017

| Client: | Alek Wietrzykowski | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | Appraisal File #: | 10579 SW 11th Ter |

## MARKET AREA ANALYSIS

| Location | Built Up | Growth | Supply & Demand | Value Trend | Typical Marketing Time |
|---|---|---|---|---|---|
| ☐ Urban | ☐ Under 25% | ☐ Rapid | ☐ Shortage | ☐ Increasing | ☒ Under 3 Months |
| ☐ Suburban | ☒ 25-75% | ☐ Stable | ☒ In Balance | ☒ Stable | ☐ 3-6 Months |
| ☒ Rural | ☐ Over 75% | ☒ Slow | ☐ Over Supply | ☐ Decreasing | ☐ Over 6 Months |

| Neighborhood Single Family Profile | | | Neighborhood Land Use | | | Neighborhood Name: | Ocala (Equine |
|---|---|---|---|---|---|---|---|
| Price | | Age | | | | | Estates) |
| 140,000 | Low | 0 | 1 Family | 45% | Commercial | 5% | PUD ☒  Condo ☐  HOA: $  158/ month |
| 2,500,000 | High | 100 | Condo | % | Vacant | 15% | Amenities:  None (private roads; entry/exit |
| 712,500 | Predominant | 24 | Multifamily | % | Other | 35% | gate) |

Market area description and characteristics:        The subject's neighborhood boundaries include: SW 42nd Street to the north, Interstate-75 to the west, Highway-44 to the south, and Highway-301 to the east. See the neighborhood analysis in the attached general text addendum, and the market analysis in the attached market conditions report.

*Other = parks & recreation, religious facilities, schools, and other public facilities (5%); agricultural (30%).

## SITE ANALYSIS

| Dimensions: | 360 x 1,210 (subject-to survey) | Area: | 10.00 ac |
|---|---|---|---|
| View: | Residential | Shape: | Rectangular |
| Drainage: | Adequate grade | Utility: | Residential |

| Site Similarity/Conformity To Neighborhood | | Zoning/Deed Restriction | |
|---|---|---|---|
| **Size:** | **View:** | Zoning:  A1-Agricultural (SFR permitted. Min.10ac @ 150ft width | **Covenants, Condition & Restrictions** |
| ☐ Smaller than Typical | ☐ Favorable | ☒ Legal  ☐ No zoning | ☒ Yes   ☐ No   ☐ Unknown |
| ☒ Typical | ☒ Typical | ☐ Legal, non-conforming | **Documents Reviewed** |
| ☐ Larger than Typical | ☐ Less than Favorable | ☐ Illegal | ☐ Yes  ☒ No |
| | | | Ground Rent   $        n/a / |

| Utilities | | | Off Site Improvements | | | |
|---|---|---|---|---|---|---|
| Electric | ☒ Public | ☐ Other | Street | ☐ Public | ☒ Private | Asphalt |
| Gas | ☐ Public | ☐ Other  None | Alley | ☐ Public | ☐ Private | None |
| Water | ☐ Public | ☒ Other  Well | Sidewalk | ☐ Public | ☐ Private | None |
| Sewer | ☐ Public | ☒ Other  Septic | Street Lights | ☐ Public | ☐ Private | None |

Site description and characteristics:        The subject's lot shape, orientation, and location is adequate and typical of its neighborhood. There are no obvious adverse site conditions (contaminated soils, wetlands, easements) or external influences. Private well and septic systems are standard in this area and do not adversely affect market value or marketability. Public water and sewer are not available. This is also common to the comparables in the sales comparison grid. As such, special considerations are not necessary.

There are no known or obvious agricultural and/or other income producing endeavors regarding the subject property. The subject is not a working farm. Any historical or potential future income from the property would be a going concern, and not attributed to the value of the real property. This appraisal does not include any value associated with potential business income.

## HIGHEST AND BEST USE ANALYSIS

☒ Present Use      ☐ Proposed Use      ☐ Other

Summary of highest and best use analysis:        See the attached general text addendum.

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved                                                                                              June 2017

| Client: | Alek Wietrzykowski | | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | | Appraisal File #: | 10579 SW 11th Ter |

## IMPROVEMENTS ANALYSIS

**General**  Design: Contemporary   No. of Units: 1   No. of Stories: 1   Actual Age: 6 years   Effective Age: 6 years

☒ Existing  ☐ Under Construction  ☐ Proposed  ☐ Attached  ☒ Detached  ☐ Manufactured  ☐ Modular

Other:

**Exterior Elements**  Roofing: Asphalt Shingle   Siding: Concrete Block/Stucco   Windows: Vinyl/DoublePane/Avg

☒ Patio  Covered   ☐ Deck   ☒ Porch  Covered   ☐ Pool  None   ☒ Fence  Wood

Other:  Three-stall barn with tack room

**Interior Elements**  Flooring: Tile & Carpet   Walls: Drywall   ☐ Fireplace # 0

Kitchen: ☒ Refrigerator  ☒ Range  ☒ Oven  ☒ Fan/Hood  ☒ Microwave  ☒ Dishwasher   Countertops: Natural Stone

Other:

**Foundation**  ☐ Crawl Space   ☒ Slab  Concrete Slab   ☐ Basement

Other:

**Attic**  ☐ None  ☐ Scuttle   ☒ Drop Stair  Yes   ☐ Stairway   ☐ Finished

**Mechanicals**  HVAC: Central   Fuel: Electric   Air Conditioning: Central

**Car Storage**  ☒ Driveway  Concrete   ☒ Garage  2-Car Garage   ☐ Carport   ☐ Finished

**Other Elements**  Ten foot architectural tray ceilings, recessed lighting, crown molding, 42" kitchen cabinets, stainless steel appliances, natural stone counters throughout, ceiling fans, custom built-in closet organizers, two water heaters, and a water softening/filtration system.

### Above Grade Gross Living Area (GLA)

| | Living | Dining | Kitchen | Den | Family | Rec. | Bedrms | # Baths | Utility | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Level 1 | 1 | 1 | 1 | | 1 | | 3 | 3.0 | 1 | | 3,369 |
| Level 2 | | | | | | | | | | | |

| Finished area above grade contains: | Bedroom(s): 3 | Bath(s): 3.0 | GLA: 3,369 |
|---|---|---|---|

Summarize Above Grade Improvements:   The subject's primary above-grade improvements are best described in the attached UAD definition for quality rating Q3.

### Below Grade Area or Other Area

| | Living | Dining | Kitchen | Den | Family | Rec. | Bedrms | # Baths | Utility | % Finished | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Below Grade | | | | | | | | | | 0 | 0 |
| Other Area | | | | | | | | | | | |

Summarize below grade and/or other area improvements:   None

Discuss physical depreciation and functional or external obsolescence:   The subject has been well maintained and features no major deferred maintenance or functional inadequacies. Average is defined in this appraisal by features that are well maintained that are older than 5 years. Good is defined by features that are not new, but superior to average.

Discuss style, quality, condition, size, and appeal of improvements including conformity to market area:   The subject's design/style, quality, condition, and size conform overall to its neighborhood.

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report – Residential© Appraisal Institute 2017, All Rights Reserved                                                                                                    June 2017

## Analysis & Additional Details

File No. 10579 SW 11th Ter

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |

**• Appraisal Report - Residential: Subject Property History - Description and Analysis of Sales Within 3 Years**
Per the county records the subject had a traditional sale (warranty deed) on 01/06/2022 for $1,395,000 ($1,450,000 per MLS listing-MFRMLS#OM628795). Per its listing, this was a cash purchase with no closing concessions and 80 days-on-market. There have been no significant physical changes made since.

As of the effective date of this appraisal, and despite the market trends, the subject's market supported value is less than its prior sale. Based on the county tax records and the local MLS (MFRMLS), there have been no other prior sales or transfers of the subject within 36 months of the effective date of value.

**Neighborhood Analysis**
The subject is located in a low-density neighborhood in Ocala Florida. This equestrian-friendly area consists primarily of contemporary and ranch-style single-family homes, built in the late-1900s to mid-2000s, and adequately maintained. The typical residential lot in this market is roughly five to ten acres. Properties with older homes in inferior condition are predominate. Although it may vary from the predominate One-Unit Housing, the subject is not unique, under or over improved; and conforms to the neighborhood.

The subject is located in a gated equestrian subdivision with private roads. The roads are properly maintained by the association (recently paved), and provide adequate vehicular access. It must be noted that the entry/exit gate system was inoperable at the time of the inspection. The association does not maintain any common area recreational facilities.

Florida Horse Park is located adjacent to the subject. Florida Greenways and trails are also in this immediate area. Supporting facilities such as police, fire, schools, employment, retail, restaurants, etc., are all located within eight miles. Major thoroughfares are located within six miles (Interstate-75, US-301, and SR-200). There are no adverse neighborhood factors affecting the subject's market value or marketability.

**Sales Comparison Analysis & Adjustment Support**
The comparable search criteria for this analysis includes similar sales and listings over the past 12 months. The parameters of the search are: single-family homes, GLA 2,500-4,200 sq.ft., year built 2000-2023, 5-15 acres, traditional sales and listings, and within the subject's neighborhood boundaries. Extreme outliers and non-competitive properties are excluded *(source: MFRMLS)*. It must be noted that this criteria is also the basis of the initial market conditions analysis.

Due to the lack of similar comparables and overall limited market activity, it is necessary to expand the initial search to include comparable data outside of this criteria. It is also necessary to include exceedingly high adjustment percentages, sales over 12 months, and comparables over one mile (which is common in this low-density market).

Comparable #1 is primarily included for its ability to bracket the subject lot size and GLA, comparable #2 for its similar quality, comparable #3 for its recent sale date and similar quality, comparable #4 for its ability to bracket the low-end of the market value range, and comparable #5 for its ability to bracket the subject's room count.

Comparable #6 is included for its recent sale date, location, low gross adjustments, and overall similarities. However, its adjusted sale price is much higher than all other value indicators, including the surrounding sales and the results of the cost approach to value.

As such, and based on the verbiage in the attached definition of market value related to "most probable price", it is not weighted in the final reconciliation. Weighing this sale would create an inflated value opinion for the subject. This is also supported by listing #1, which has a much lower adjusted and unadjusted list price. No other comparables are available to better support the subject's market value.

**-List to Sale Price Ratio**
A market supported list to sale price ratio adjustment of 7% is included for listing #1. This is supported by the attached market conditions report, which reflects a median list to sale price ratio of 96% over the past three month, and by comparable sales #1-6; which sold at 90% of their list prices (average and median result). Based on this data, the range for the reconciled 7% adjustment is 4-10%.

**-Time-of-Sale**
The attached market conditions addenda reflects an increase in the median sale price over the past 12 months, while the six-month short-trend reflects an increase. The varying trends are due to the recent rise in mortgage interest rates and tempered demand. Overall, direct comparisons of recent sales and active listings, and sales earlier in the analysis period, support that values are more-stable/flat.

Despite the trend results, comparables #1-4 and #6 are among the most recent and reliable indicators of current market value. Although time adjustments are not indicated or supported for these sales, consideration for the current market conditions is given in the final reconciliation and weighing of the most recent sales.

Comparable #5 sold in late-2021 during a time of rapidly increasing values, and roughly four months prior to the string of mortgage rate increases that continued through 2023. Based on a grouped sales analysis* of otherwise similar recent sales and sales from late-2021, an adjustment of 10% is indicated and closely supported by sensitivity in the sales grid.

**Adjustments by Grouped Sales**
The following adjustment considerations are derived from grouped sales. Similar to linear regression, sales with few other differences are grouped together and compared, to isolate the market indicated adjustments; or lack-there-of. The data source is the local MLS (MFRMLS).

It is not reasonable or necessary to include adjustments for property attributes that have an estimated contributory value of less than one percent. Such items do not have a meaningful impact on price, and are not attributes that significantly affect buyer motivation.

This includes, but is not limited to: minor differences in GLA (within 100 square feet), site size, chronological age, porches/patios, fireplaces, nominal sales concessions, etc. This is based on multiple grouped data analysis, which indicate no discernable market reaction for such items. The majority of properties lacking in such areas, generally have other similarly marketable features; and vice versa.

APPENDIX - 007

## Analysis & Additional Details

File No. 10579 SW 11th Ter

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |

**-Location**
Comparable #3 is located in the city of Oxford, which is just-over 12 miles south. Properties in this area have historically sold at a discount compared to those in the subject's immediate area. This is primarily due to its further proximity to area amenities such as Florida's Horse Park, greenways, and trails. This is also supported by the attached otherwise similar +/- 10 acre land sales in its neighborhood, which support an adjustment of roughly $100,000.

Despite their proximity, the other comparables are in the subject's neighborhood and market area. Although there is limited-to-no market reaction in the sale prices for gated vs non-gated, consideration is given in the final reconciliation and weighing of the sales.

**-Site**
Based on the attached site analysis, the market supports a value of roughly $0.90 per square foot, or roughly $40,000 per acre. As supported by sensitivity in the sales grid, adjustments are included accordingly for comparables #1 and #2.

**-Quality & Condition**
Quality: Comparable #4 is inferior to the subject for its standard builder-grade cabinetry, counters (level-1 granite and cultured marble), flooring, and fixtures, etc. Unlike the subject, it also does not feature decorative moldings, built-ins, or many of the other features identified for the subject in the *Improvements* section. Based on replacement cost estimates for similar size homes as the subject via DwellingCost, the indicated premium for a home of this quality compared to a home more similar to the subject's, is roughly $50 per square foot.

Despite its UAD rating, a similar analysis supports a more-nominal adjustment of $45 per square foot for comparable #6. This property is superior for its custom higher-quality cabinetry, extensive moldings, architectural ceilings, custom fireplace, flooring, tongue & groove porch/patio ceilings, etc.

Condition: Also despite their UAD ratings, comparables #1 and #5 are older homes with higher estimated effective ages of 15 years (9 year difference from the subject). Based on the subject's cost approach, its improvements are 9.23% depreciated, which equates to roughly 1.5% per year (1.5% x 9 = 13.5%). Applied to comparable #1 and #5's depreciated improvement value (sale price - land value), adjustments are included accordingly. Market support is available through sensitivity in the sales grid.

-Comp #1: $1,250,000 - $462,800 ($392k + $70,800 site adj.) = $787,200 x 0.135 = $106,000 (rounded)
-Comp #5: $1,100,000 (1Mil sale price + $100k time adj) - $392,000 = $708,000 x 0.135 = $96,000 (rounded)

It is not reasonable or necessary to include line-item adjustments for every physical attribute, as this is not a methodology adopted by typical buyer's in this market. Although minor differences in condition and/or upgrades exist, the overall market appeal of the comparables in this analysis is otherwise similar to the subject, and additional considerations are not supported by the market.

**Additional Adjustment Considerations**
All other adjustment considerations are based on sensitivity analysis. Similar to a paired sales/matched pairs analysis, adjustments that are larger or smaller, result in a wider adjusted comparable price range. This includes the adjustments for GLA ($75/sq.ft.), and parking; pools; and site improvements (tempered with estimated depreciated costs).

Although the comparables vary with respect to differences in room count, and other differences not adjusted, there is limited data supporting additional line-item adjustments. There is also limited market reaction reflected in the historical sale prices among otherwise similar properties.

Although additional adjustments are excluded, all of the subject's attributes are supported by the comparables, and consideration is given in the final reconciliation and weighing of the sales. There is also a value overlap with GLA and room count, and additional adjustments would be redundant. Properties with three bedrooms have been selling at similar prices as otherwise similar four bedroom homes with smaller main living areas.

**Final Reconciliation**
The subject's reconciled market value is derived from the adjusted comparable sales price range. Excluding comparable #6 (see prior comments further above), majority of weight is given to comparables #1-3 for their lower gross adjustments and comparable #5 for its room count. The reconciled value also includes consideration for the current market conditions, comparable listing #1's adjusted price, and the results of the cost approach to value. The reconciled opinion of the subject's market value is **$1,150,000**.

**Additional Comments**
No personal property is included in this valuation.

Energy efficient items are identified as standard or none, when significant green features such as whole-house solar, insulated concrete forms (ICF's), or a combination of multiple energy efficient features with significant contributory value are not present.

Based on historical reliability, majority of weight is given to the county property appraiser's website for GLA. The local MLS (MFRMLS) is more heavily weighted only when the source of the GLA is an appraiser, or measurements taken by the listing agent. The local MLS (MFRMLS) has historically been significantly more reliable for room count. However, the county's calculation of 3,253 square feet for the subject's GLA is smaller than as measured at the appraisal inspection.

Although exterior inspections were completed, the comparable MLS photos are included in the attached addendum; as they best represent these properties at their time-of-sale.

**Utilities**
All utilities are on and in good working order.

**Highest and Best Use**
The subject is currently at its highest and best use. It is legally permissible, physically possible, financially feasible, and at its maximum productivity. This is supported by its current on-going use, as well as the surrounding similar properties; which continue to be used in the same manor. This is also supported by the buying and selling of the comparables in this sales grid, all which have traded for their existing improvements and uses; and remain as such. None of the comparables in this analysis were marketed for their land.

**Analysis & Additional Details**

File No. 10579 SW 11th Ter

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |

It is not feasible to remove the existing improvements, as they continue to contribute to the overall property value. If the site became vacant, the ideal improvement would also be residential single-family home, similar to the existing improvements. It would be constructed with modern and readily-available materials. Rebuilding the existing improvements would also meet all four tests of highest and best use.

**• Appraisal Report - Residential: Scope of Work - Additional Scope of Work Comments**
The appraiser completed the on-site appraisal viewing/inspection of the subject property. This included a visual inspection of the site, external site influences, and the interior and exterior of the site improvements (with photographs); measurements of the improvements, confirmed the working-order of the mechanical and electrical systems, gathered data related to finishes, upgrades, and other relevant features.

It must be noted that the appraisal inspection does not rise to the level of a home inspection, and is more limited in scope. The purpose of a professional home inspection report is to furnish a detailed analysis of specific property conditions, and record an inventory of any interior or exterior property components that require current or potential repair or replacement. A home inspection report is prepared for the protection of a potential purchaser and does not address the value of the property.

The appraisal inspection does include observations for physical inadequacies. However, the appraiser does not guaranty that the property is free of significant issues/defect that are not obvious, or that may affect its value.

The appraiser also completed exterior viewing of the comparable properties from the street (unless otherwise noted further above), analyzed relevant market data and market conditions via the local MLS (MFRMLS), tax records, and other available on-line data; verified all data with secondary sources, and prepared the final report with a reconciled opinion of market value.

**ANSI - Gross Living Area Measurements:**  The measurement technique used is the American National Standard for single-family residential buildings (ANSIZ765-2013). According to the American National Standards Institute, the above-grade finished square footage of a dwelling is the sum of the finished areas of levels that are entirely above-grade. The below-grade finished square footage of a house is the sum of finished areas on levels that are wholly or partly below-grade.

The finished square footage calculation for this house is made based on measurements that include the exterior walls/foundation. The calculation does not include unfinished areas, openings in floors not associated with stairs, or openings in floors exceeding the area of associated stairs. The area dimensions are rounded to the nearest tenth of a foot.

Areas where the ceiling height is less than 7 feet high are excluded from this calculation. However, areas where at least 50% of the square footage have ceilings that are at least 7 feet high, the calculation includes the entire area not exceeding the point where the ceiling height is less than 5 feet; as with finished second-floors with sloped ceilings.

**SRA Designation**
The SRA designation is the highest designation conferred by the Appraisal Institute for appraisers that primarily focus on residential. The Appraisal Institute has more than 26,000 members and 91 chapters worldwide. Its mission is to support and advance its members as the choice for real estate solutions and uphold professional credentials, standards of professional practice and ethics consistent with the public good.

SRA designates must meet the following requirements:

**-Education:**
Receive a passing grade on six examinations that reflect 181 hours of classroom instruction and that test the appraiser's knowledge of appraisal principles, residential valuation techniques, report writing and standards of professional practice.

Hold an undergraduate degree from an accredited educational institution (or satisfy a specified alternative).

**-Experience:**
Receive credit for 4,000 hours of experience, including 2,000 hours of residential appraisal experience, all of which must meet strict criteria.

**-Demonstration Report:**
Receive credit for a demonstration appraisal report relating to a residential property that demonstrates the ability to present a properly supported value estimate or opinion evaluating the nature, quality, or utility of a parcel of real estate or any interest in, or aspect of, real property, or fulfill an approved comparable alternative.

*- Appraisal Institute*

| Client: | Alek Wietrzykowski | | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | | Appraisal File #: | 10579 SW 11th Ter |

## COST APPROACH

### Cost Approach Definitions

☐ Reproduction Cost is the estimated cost to construct, at current prices as of the effective appraisal date, an exact duplicate or replica of the building being appraised, using the same materials, construction standards, design, layout, and quality of workmanship, and embodying all of the deficiencies, superadequacies, and obsolescence of the subject building.

☒ Replacement Cost is the estimated cost to construct, at current prices as of the effective appraisal date, a building with utility equivalent to the building being appraised, using modern materials and current standards, design and layout.

### Cost Approach Analysis

**Estimated Cost New**

| | | | | | | |
|---|---|---|---|---|---|---|
| Above Grade Living Area | SFR | 3,369 | Sq. Ft @ $ | 174.39 | =$ | 587,520 |
| Finished Below Grade Area | | | Sq. Ft @ $ | | =$ | |
| Unfinished Below Grade Area | | | Sq. Ft @ $ | | =$ | |
| Other Area | | | Sq. Ft @ $ | | =$ | |
| Car Storage | 2-Car Garage | 606 | Sq. Ft @ $ | 51.56 | =$ | 31,245 |
| Patios/Porches | | | | | $ | 30,747 |
| Barn/Stables & Wood Fencing | | | | | $ | 155,000 |
| | | | | | $ | |
| **Total Estimated Cost New** | | | | | **$** | **804,512** |
| Less Depreciation | | | | | | |
|   Physical | | 9.23 | % = $ | 74,256 | | |
|   Functional | | | $ | | | |
|   External | | | $ | | | |
| Total Depreciation | | | | | $ | 74,256 |
| Depreciated Value of Improvements | | | | | $ | 730,256 |
| Contributory Value of Site Improvements | Well & Septic | | | | $ | 30,000 |
| | | | | | $ | |
| Cost Source: DwellingCost / Date of Cost Data: 11/10/2023 | | | | | $ | |
| | | | | | $ | |
| Opinion of Site Value | | | | | $ | 392,000 |
| Indicated Value | | | | | $ | 1,152,256 |

Cost Approach Comments (Data Sources, Depreciation Basis, Site Value, Etc.):     Cost data was modified using a multiplier based on the zip code 34476. The quality rating of 4.8 describes a property that is custom or tract built using materials that meet the uniform building code, but may be finished with above average materials. The age/life method is applied. Economic life of 65 years; remaining 59 years.

The reconciled as-is opinion of the subject's site value is based on the attached vacant comparable land sales and listings, and the associated statistics report. While the average and median price per square foot are $1.15 and $1.06, the principle of substitution applied to the recent influx of vacant +/- 10 acre listings supports a value towards the low-end of the vacant land sales. The attached addenda reflects a median list to sale price ratio of 92% for the sales. Applied to the price per square foot for the listings, the adjusted listing price per square foot/likely sale price for these properties is $0.89 ($0.97 x 0.92 = $0.90 rounded). Applied to the subject, its reconciled opinion of market value is $392,000 (435,600 x 0.90); which is reasonably at the low-end of the $350,000 - $549,900 adjusted sale price range - given the availability of five similar lots as the subject listed below $400,000.

Cost Approach Reconciliation:     The cost approach to value is applicable due to the subject's limited depreciation and sparse similar recently sold comparables available to support the sales comparison, and is included for support of the reconciled opinion of market value. The subject's reconciled opinion of market value via this approach is **$1,152,256**.

| **Indication of Value by Cost Approach** | **$     1,152,256** |
|---|---|

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved                                                                                                                June 2017

| Client: | Alek Wietrzykowski | | Client File #: | | 10579 SW 11th Ter |
|---|---|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | | Appraisal File #: | | 10579 SW 11th Ter |

## SALES COMPARISON APPROACH

| ITEM | SUBJECT | COMPARISON 1 | | COMPARISON 2 | | COMPARISON 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10579 SW 11th Ter | 9491 SW 14th Ave | | 9271 SW 14th Ave | | 10772 County Road 209 | |
| | Ocala, FL 34476 | Ocala, FL 34476 | | Ocala, FL 34476 | | Oxford, FL 34484 | |
| Proximity to Subject | | 1.11 miles N | | 1.31 miles N | | 12.15 miles SE | |
| Data Source/ | | StellarMLS #OM638011 | | StellarMLS #OM643545 | | StellarMLS #G5070990 | |
| Verification | | Doc #7845-1559/Realist | | Doc #7880-298/Realist | | Doc #4533-317/Realist | |
| Original List Price | $ | $ 1,397,500 | | $ 1,100,000 | | $ 999,000 | |
| Final List Price | $ | $ 1,397,500 | | $ 1,100,000 | | $ 999,000 | |
| Sale Price | $          n/a | $ 1,250,000 | | $ 1,075,000 | | $ 950,000 | |
| Sale Price % of Original List | % | 89.4 % | | 97.7 % | | 95.1 % | |
| Sale Price % of Final List | % | 89.4 % | | 97.7 % | | 95.1 % | |
| Closing Date | n/a | 07/29/2022 | | 09/13/2022 | | 09/08/2023 | |
| Days On Market | n/a | 36 | | 15 | | 13 | |
| Price/Gross Living Area | $ | $          277.53 | | $          345.55 | | $          304.49 | |
| | DESCRIPTION | DESCRIPTION | +(-) Adjustment | DESCRIPTION | +(-) Adjustment | DESCRIPTION | +(-) Adjustment |
| Financing Type | n/a | Cash | 0 | Conv | 0 | Conv | 0 |
| Concessions | n/a | $0 | 0 | $0 | 0 | $0 | 0 |
| Contract Date | n/a | 05/31/2022 | | 08/16/2022 | | 07/25/2023 | |
| Location | EquineEsts;Gtd | SpringGrove;Gtd | | SpringGrove;Gtd | | Oxford | +100,000 |
| Site Size | 10.00 ac | 11.77 ac | -70,800 | 6.67 ac | +133,200 | 10.00 ac | |
| Site Views/Appeal | Residential/N | Residential/N | | Residential/N | | Residential/N | |
| Design and Appeal | 1-Story Contemp | 1-Story Contemp | | 2-Story RnchPlus | 0 | 1-Story Ranch | 0 |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Age | 6 years | 22 years | 0 | 6 years | | 5 years | |
| Condition | C3 | C3 | +106,000 | C3 | | C3 | |
| Above Grade Bedrooms | Bedrooms 3 | Bedrooms 4 | 0 | Bedrooms 4 | 0 | Bedrooms 4 | 0 |
| Above Grade Baths | Baths 3.0 | Baths 3.1 | | Baths 3.0 | | Baths 3.0 | |
| Gross Living Area | 3,369 Sq.Ft. | 4,504 Sq.Ft. | -85,125 | 3,111 Sq.Ft. | +19,350 | 3,120 Sq.Ft. | +18,675 |
| Below Grade Area | 0sf | 0sf | | 0sf | | 0sf | |
| Below Grade Finish | n/a | n/a | | n/a | | n/a | |
| Other Area | n/a | n/a | | n/a | | n/a | |
| n/a | n/a | n/a | | n/a | | n/a | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Car Storage | 2-Car Garage | 2-Car Garage | | 3-Car Garage | -15,000 | 2-Car Garage | |
| Pool | None | Pool Package | -45,000 | Pool Package | -45,000 | Pool Package | -45,000 |
| Site Improvements | 3-StallBrn/TackRm | Barn/Workshop | | Det. Wrkshp/Gar | 0 | strg bldg/2cnpies | 0 |
| Site Improvements Cont. | Fence | Fence | | fnce/s.kitch/gate | -25,000 | Summer Kitchen | +30,000 |
| Net Adjustment (total) | | [ ]+ [X]– $ | -94,925 | [X]+ [ ]– $ | 67,550 | [X]+ [ ]– $ | 103,675 |
| | | Net Adj. 7.6% | | Net Adj. 6.3% | | Net Adj. 10.9% | |
| Adjusted Sale Price | | Gross Adj. 24.6% $ | 1,155,075 | Gross Adj. 22.1% $ | 1,142,550 | Gross Adj. 20.4% $ | 1,053,675 |
| Prior Transfer | 01/06/2022 | 07/29/2022 | | None | | None | |
| History | $1,395,000 | $155,500 | | None within prior 12 months | | None within prior 12 months | |

Comments and reconciliation of the sales comparison approach:          See the addenda.


*9491 SW 14th Ave - prior transfer was a non-market transaction (certification of trust). Per Realist this property also had a by-owner transfer on 01/20/2022 for $155,500. This transaction is not reflected in its county tax record. Specific details are not known. However, this transfer is not relative or reflective of this property's market value.

| Indication of Value by Sales Comparison Approach | $    1,150,000 |
|---|---|

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved                                                                                          June 2017

## ADDITIONAL COMPARABLE SALES

| Client: | Alek Wietrzykowski | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | Appraisal File #: | 10579 SW 11th Ter |

### SALES COMPARISON APPROACH

| ITEM | SUBJECT | COMPARISON 4 | | COMPARISON 5 | | COMPARISON 6 | |
|---|---|---|---|---|---|---|---|
| Address | 10579 SW 11th Ter Ocala, FL 34476 | 9502 SW 27th Ave Ocala, FL 34476 | | 730 SW 87th Pl Ocala, FL 34476 | | 1490 SE 140th St Summerfield, FL 34491 | |
| Proximity to Subject | | 1.76 miles NW | | 1.69 miles N | | 3.94 miles SE | |
| Data Source/ Verification | | StellarMLS #OM648085 Tax Records | | StellarMLS #OM630003 Tax Records | | StellarMLS #OM658526 Tax Records | |
| Original List Price | $ | $ 1,200,000 | | $ 1,250,000 | | $ 1,694,375 | |
| Final List Price | $ | $ 1,100,000 | | $ 1,250,000 | | $ 1,694,375 | |
| Sale Price | $ n/a | $ 1,000,000 | | $ 1,000,000 | | $ 1,517,000 | |
| Sale Price % of Original List | % | 83.3 % | | 80.0 % | | 89.5 % | |
| Sale Price % of Final List | % | 90.9 % | | 80.0 % | | 89.5 % | |
| Closing Date | n/a | 02/16/2023 | | 01/14/2022 | | 10/16/2023 | |
| Days On Market | n/a | 78 | | 38 | | 105 | |
| Price/Gross Living Area | $ | $ 329.06 | | $ 387.90 | | $ 482.66 | |
| | DESCRIPTION | DESCRIPTION | + (-) Adjustment | DESCRIPTION | + (-) Adjustment | DESCRIPTION | + (-) Adjustment |
| Financing Type | n/a | Cash | 0 | Cash | 0 | Cash | 0 |
| Concessions | n/a | $0 | | $0 | | $0 | |
| Contract Date | | 01/20/2023 | | 12/17/2021 | +100,000 | 09/05/2023 | 0 |
| Location | EquineEsts;Gtd | Not in Sub. | 0 | Not in Sub. | 0 | Not in Sub. | 0 |
| Site Size | 10.00 ac | 10.00 ac | | 10.00 ac | | 10.00 ac | |
| Site Views/Appeal | Residential/N | Residential/N | | Residential/N | | Residential/N | |
| Design and Appeal | 1-Story Contemp | 1-Story Contemp | | 1-Story Ranch | 0 | 2-Story Trad. | 0 |
| Quality of Construction | Q3 | Q4 | +152,000 | Q3 | | Q3 | -140,000 |
| Age | 6 years | 7 years | 0 | 19 years | +96,000 | 2 years | 0 |
| Condition | C3 | C3 | | C3 | | C2 | |
| Above Grade Bedrooms | Bedrooms 3 | Bedrooms 4 | 0 | Bedrooms 3 | | Bedrooms 3 | |
| Above Grade Baths | Baths 3.0 | Baths 3.0 | | Baths 2.1 | 0 | Baths 3.1 | 0 |
| Gross Living Area | 3,369 Sq.Ft. | 3,039 Sq.Ft. | +24,750 | 2,578 Sq.Ft. | +59,325 | 3,143 Sq.Ft. | +16,950 |
| Below Grade Area | 0sf | 0sf | | 0sf | | 0sf | |
| Below Grade Finish | n/a | n/a | | n/a | | n/a | |
| Other Living Area | n/a | n/a | | n/a | | n/a | |
| n/a | n/a | n/a | | n/a | | n/a | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Car Storage | 2-Car Garage | 3-Car Garage | -15,000 | 3-Car Garage | -15,000 | 2-Car Garage | |
| Pool | None | Pool Package | -45,000 | None | | Pool Package | -45,000 |
| Site Improvements | 3-StallBrn/TackRm | None | +35,000 | 2-StallBrn/TackRm | 0 | None | +35,000 |
| Site Improvements Cont. | Fence | Fence | | 1/1 ADU/Fence | -53,000 | Fence/Sec.Gate | -15,000 |
| Net Adjustment (total) | | ☒+ ☐- $ 151,750 | | ☒+ ☐- $ 187,325 | | ☐+ ☒- $ -148,050 | |
| Adjusted Sale Price | | Net Adj. 15.2% Gross Adj. 27.2% $ 1,151,750 | | Net Adj. 18.7% Gross Adj. 32.3% $ 1,187,325 | | Net Adj. 9.8% Gross Adj. 16.6% $ 1,368,950 | |
| Prior Transfer | 01/06/2022 | None | | 01/13/2022 | | None | |
| History | $1,395,000 | None within prior 12 months | | $0 | | None within prior 12 months | |

Comments:    See the addenda.

*730 Sw 87th Pl - prior transfer was a non-market transaction.

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of AI Reports®. AI Reports® AI-100.05 Appraisal Report - Residential© Appraisal Institute 2017, All Rights Reserved                                                                                                June 2017

Additional Listings

File # 10579 SW 11th Ter

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10579 SW 11th Ter Ocala, FL 34476 | 10548 SW 27th Ave Ocala, FL 34476 | | | | | |
| Proximity to Subject | | 1.39 miles W | | | | | |
| List Price | $ | | $ 1,297,750 | | $ | | $ |
| List Price/Gross Liv. Area | $ sq.ft. | $ 345.70 | sq.ft. | $ | sq.ft. | $ | sq.ft. |
| Last Price Revision Date | | 10/02/2023 | | | | | |
| Data Source(s) | | StellarMLS #OM665472;DOM 11 | | | | | |
| Verification Source(s) | | Realist | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | Listing | -90,842 | | | | |
| Concessions | | Pndng 10/13/2023 | 0 | | | | |
| Days on Market | | 11 | 0 | | | | |
| Location | EquineEsts;Gtd | Lexington;Gtd | 0 | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 10.00 ac | 5.10 ac | +196,000 | | | | |
| View | Residential/N | Residential/N | | | | | |
| Design (Style) | 1-Story Contemp | 1-Story Contemp | | | | | |
| Quality of Construction | Q3 | Q3 | | | | | |
| Actual Age | 6 years | 6 years | | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 3 3.0 | 8 3 3.0 | | | | | |
| Gross Living Area | 3,369 sq.ft. | 3,754 sq.ft. | -28,900 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | n/a | n/a | | | | | |
| Functional Utility | Adequate | Adequate | | | | | |
| Heating/Cooling | Central | Central | | | | | |
| Energy Efficient Items | Standard Feat. | Standard Feat. | | | | | |
| Garage/Carport | 2-Car Garage | 2-Car Garage | | | | | |
| Porch/Patio/Deck | Cov.Porch/Patio | Cov.Prch/Scr.Patio | 0 | | | | |
| Pool | None | Pool Package | -45,000 | | | | |
| Site Improvements | 3-StallBrn/TackRm | 4,000sf Barn | -130,000 | | | | |
| Site Improvements Cont. | Fence | Fence | | | | | |
| Net Adjustment (Total) | | + ☒ - | $ -98,742 | + - | $ | + - | $ |
| Adjusted List Price | | Net 7.6 % | | Net % | | Net % | |
| of Comparables | | Gross 37.8 % | $ 1,199,008 | Gross % | $ | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 01/06/2022 | 10/20/2014 | | |
| Price of Prior Sale/Transfer | $1,395,000 | 147,000 | | |
| Data Source(s) | Tax Rec/mfrmls#OM628795 | Realist | | |
| Effective Date of Data Source(s) | 11/10/2023 | 11/17/2023 | | |

Comments: See attached addendum.

APPENDIX - 013

March 2005

## Vacant Land Comparables

| Distance | # | ML # | County | Status | Address | City | Subdivision Name | Current Price | Close Date | Lot Size | $Zonin |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 mi | 1 | V4933079 | Marion | ACT | 2551 SW 107TH PL | OCALA | | $330,000 | | 392,040 | A1 |
| 9.6 mi | 2 | G5072334 | Sumter | ACT | NW 122ND AVE | OXFORD | | $345,000 | | 435,600 | A10C |
| 5.4 mi | 3 | OM655313 | Marion | ACT | TBD SE 26TH CT Unit#Lot 15 | OCALA | VIA PARADISUS | $375,000 | | 436,036 | A1 |
| 2.1 mi | 4 | OM628500 | Marion | ACT | tbd SE 111TH PL Unit#Lot 4 | OCALA | VIA PARADISUS | $382,280 | | 438,213 | A1 |
| 1.7 mi | 5 | OM637649 | Marion | ACT | 1001 SW 123RD PLACE, LOT 2 | OCALA | HORSE PARK LANE | $408,330 | | 456,073 | A1 |
| 9.1 mi | 6 | OM663445 | Marion | ACT | TBD NW 14TH ST. JUMPER LANE LOT 6 | OCALA | JUMPER LANE | $425,000 | | 448,232 | A1 |
| 9.1 mi | 7 | OM663003 | Marion | ACT | TBD NW 14TH ST. - LOT 5 | OCALA | JUMPER LANE | $425,000 | | 453,895 | A1 |
| 2.0 mi | 8 | OM551834 | Marion | ACT | 0 SE 15TH AVE Unit#Lot 6 | OCALA | VIA PARADISUS | $429,400 | | | A-1 C |
| 1.7 mi | 9 | OM651033 | Marion | ACT | 1001 SW 123RD PLACE, LOT 01 | OCALA | HORSE PARK LANE | $446,160 | | 498,326 | A1 |
| 9.1 mi | 10 | OM664732 | Marion | ACT | TBD NW 14TH ST. - LOT 2 | OCALA | JUMPER LANE | $450,000 | | 451,717 | A1 |
| 9.1 mi | 11 | OM664722 | Marion | ACT | TBD NW 14TH ST. - LOT 1 | OCALA | JUMPER LANE | $450,000 | | 448,668 | A1 |
| 9.1 mi | 12 | OM662918 | Marion | ACT | TBD NW 14TH ST. - LOT 3 | OCALA | JUMPER LANE | $450,000 | | 443,005 | A1 |
| 3.0 mi | 13 | OM657550 | Marion | ACT | TBD SE 22ND AVENUE RD | OCALA | VIA PARADISUS | $470,876 | | 437,342 | A1 |
| 6.5 mi | 14 | OM650808 | Marion | ACT | 6601 SE 119TH ST | BELLEVIEW | | $475,000 | | 364,162 | B5 |
| 7.4 mi | 15 | OM664482 | Marion | ACT | 0 SE 57TH TER Unit#21 | SUMMERFIELD | SILVERLEAF HILLS | $495,000 | | 514,809 | A-1 |
| 2.9 mi | 16 | OM640521 | Marion | ACT | 0 SE 26TH CT Unit#Lot 14 | OCALA | VIA PARADISUS | $495,000 | | 438,649 | A1 |
| 9.4 mi | 17 | O6127957 | Marion | ACT | 157 TH | SUMMERFIELD | | $499,000 | | 522,720 | A1 |
| 2.6 mi | 18 | OM628716 | Marion | ACT | 0 SE 116 PL Unit#Lot 11 | OCALA | VIA PARADISUS | $499,800 | | 438,649 | A-1 G |
| 2.5 mi | 19 | OM662587 | Marion | ACT | 0 SE 116TH PLACE RD Unit#Lot 10 | OCALA | VIA PARADISUS | $531,000 | | 514,008 | A-1 |
| 7.9 mi | 20 | OM655203 | Marion | ACT | 0 SE 61ST TERRACE RD Unit#10A | SUMMERFIELD | SILVERLEAF HILLS | $549,000 | | 0 | A-1 |
| 4.7 mi | 21 | V4931264 | Marion | PND | SE 140TH PL | SUMMERFIELD | | $550,000 | | 435,600 | R4 |
| 7.9 mi | 22 | OM655201 | Marion | SLD | 0 SE 163RD ST Unit#Lot 28 | SUMMERFIELD | SILVERLEAF HILLS | $350,000 | 06/21/2023 | 460,845 | A-1 |
| 7.5 mi | 23 | OM655323 | Marion | SLD | SE 157TH STREET RD Unit#44 | SUMMERFIELD | SILVERLEAF HILLS | $445,000 | 07/21/2023 | 524,462 | A1 |
| 7.9 mi | 24 | J963825 | Marion | SLD | 0 SE 61ST TERRACE RD Unit#16 | SUMMERFIELD | SILVERLEAF HILLS | $450,000 | 07/12/2023 | 0 | A-1 |
| 2.9 mi | 25 | OM650449 | Marion | SLD | TBD SE 26TH CT | OCALA | VIA PARADISUS | $505,000 | 01/27/2023 | 436,471 | A1 |
| 1.9 mi | 26 | OM662668 | Marion | SLD | 0 SE 15TH AVE Unit#Lot 66 | OCALA | VIA PARADISUS | $549,900 | 10/05/2023 | 448,668 | X |

## Vacant Land Comparable Statistics



### 📊 Market Analysis

Minimum, Maximum, Average, & Median statistics results are calculated by column, not by row.

**Status: Active** (20)

|  | Beds | Baths | List Price | LP / SqFt | Close Price | SP / SqFt | Days to Contract | Days To Close | ADOM | CDOM | SP/LP Ratio |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Min | - |  | $330,000 | $.79 | - | - |  | - | 16 | 16 | - |
| Max | - |  | $549,000 | $1.30 | - | - |  | - | 1,725 | 1,725 | - |
| Avg | - |  | $446,542 | $.98 | - | - |  | - | 317 | 332 | - |
| Median | - |  | $450,000 | $.96 | - | - |  | - | 136 | 158 | - |

**Status: Pending** (1)

|  | Beds | Baths | List Price | LP / SqFt | Close Price | SP / SqFt | Days to Contract | Days To Close | ADOM | CDOM | SP/LP Ratio |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Min | - |  | $550,000 | $1.26 | - | - | 106 | - | 103 | 103 | - |
| Max | - |  | $550,000 | $1.26 | - | - | 106 | - | 103 | 103 | - |
| Avg | - |  | $550,000 | $1.26 | - | - | 106 | - | 103 | 103 | - |
| Median | - |  | $550,000 | $1.26 | - | - | 106 | - | 103 | 103 | - |

**Status: Sold** (5)

|  | Beds | Baths | List Price | LP / SqFt | Close Price | SP / SqFt | Days to Contract | Days To Close | ADOM | CDOM | SP/LP Ratio |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Min | - |  | $380,000 | $.82 | $350,000 | $.76 | -30 |  |  |  | .74 |
| Max | - |  | $741,600 | $1.65 | $549,900 | $1.23 | 75 | 119 | 64 | 133 | 1 |
| Avg | - |  | $516,320 | $1.15 | $459,980 | $1.00 | 32 | 60 | 35 | 60 | .91 |
| Median | - |  | $485,000 | $1.06 | $450,000 | $1.01 | 35 | 51 | 35 | 35 | .92 |

**Adjustment Support–Location (vacant +/- 10 ac lots in Oxford)**



| Distance | # | ML # | County | Status ↓ | Address | City ↓ | Current Price ↓ | Close Date | Lot Size | Zoning | Lot Dimensions |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.3 mi | 1 | G5055025 | Sumter | SLD | CR 209 | OXFORD | $285,000 | 07/29/2022 | 437,778 | RR1C | 770x1155 |
| 2.5 mi | 2 | G5049860 | Sumter | SLD | 4868 COUNTY ROAD 128 | WILDWOOD | $306,700 | 05/24/2022 | 435,600 | RR1C | 660 ft. X 680 ft. |
| 2.2 mi | 3 | T3457367 | Sumter | SLD | 826 NE 107TH RD | OXFORD | $345,000 | 09/29/2023 | 431,244 | AG | 664 x 651 |

Fully Fenced w/Barn

**Subject Photo Page**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



**Subject Front**

| | |
|---|---|
| 10579 SW 11th Ter | |
| Sales Price | n/a |
| Gross Living Area | 3,369 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | EquineEsts;Gtd |
| View | Residential/N |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 6 years |



**Subject Rear**



**Subject Street**

APPENDIX - 017

**Additional Subject Photos**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



**Left Side**



**Right Side**



**Covered Patio**



**Living Room**



**Kitchen**



**Dining Nook**

APPENDIX - 018

**Additional Subject Photos**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



**Dining Room**



**Family Room**



**Primary Bedroom**



**Bedroom 2**



**Bedroom 3**



**Primary Bath**

APPENDIX - 019

**Additional Subject Photos**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |




**Bath 2**                    **Bath 3**




**Laundry Room**              **Garage Interior**




**Water Softener & Water Heaters**    **Above Ground Spa (Personal Property-no value)**

APPENDIX - 020

**Photograph Addendum**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



**Barn**



**Rear of Barn**



**Tack Room/Garage at Barn**



**Stable (1 of 3)**



**Well**



**Wood Fence**

APPENDIX - 021

**Comparable Photo Page**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



### Comparable 1
9491 SW 14th Ave
| | |
|---|---|
| Prox. to Subject | 1.11 miles N |
| Sales Price | 1,250,000 |
| Gross Living Area | 4,504 |
| Total Rooms | |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | SpringGrove;Gtd |
| View | Residential/N |
| Site | 11.77 ac |
| Quality | Q3 |
| Age | 22 years |



### Comparable 2
9271 SW 14th Ave
| | |
|---|---|
| Prox. to Subject | 1.31 miles N |
| Sales Price | 1,075,000 |
| Gross Living Area | 3,111 |
| Total Rooms | |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | SpringGrove;Gtd |
| View | Residential/N |
| Site | 6.67 ac |
| Quality | Q3 |
| Age | 6 years |



### Comparable 3
10772 County Road 209
| | |
|---|---|
| Prox. to Subject | 12.15 miles SE |
| Sales Price | 950,000 |
| Gross Living Area | 3,120 |
| Total Rooms | |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Oxford |
| View | Residential/N |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 5 years |

Form PICPIX.CR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Comparable Photo Page**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



### Comparable 4
9502 SW 27th Ave

| | |
|---|---|
| Prox. to Subject | 1.76 miles NW |
| Sale Price | 1,000,000 |
| Gross Living Area | 3,039 |
| Total Rooms | |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Not in Sub. |
| View | Residential/N |
| Site | 10.00 ac |
| Quality | Q4 |
| Age | 7 years |



### Comparable 5
730 SW 87th Pl

| | |
|---|---|
| Prox. to Subject | 1.69 miles N |
| Sale Price | 1,000,000 |
| Gross Living Area | 2,578 |
| Total Rooms | |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Not in Sub. |
| View | Residential/N |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 19 years |



### Comparable 6
1490 SE 140th St

| | |
|---|---|
| Prox. to Subject | 3.94 miles SE |
| Sale Price | 1,517,000 |
| Gross Living Area | 3,143 |
| Total Rooms | |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.1 |
| Location | Not in Sub. |
| View | Residential/N |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 2 years |

APPENDIX - 023

## Listing Photo Page

| | |
|---|---|
| Borrower | n/a |
| Property Address | 10579 SW 11th Ter |
| City | Ocala |
| County | Marion |
| State | FL |
| Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski |



### Listing 1

10548 SW 27th Ave

| | |
|---|---|
| Proximity to Subject | 1.39 miles W |
| List Price | 1,297,750 |
| Days on Market | 11 |
| Gross Living Area | 3,754 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Age/Year Built | 6 years |

### Listing 2

| | |
|---|---|
| Proximity to Subject | |
| List Price | |
| Days on Market | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Age/Year Built | |

### Listing 3

| | |
|---|---|
| Proximity to Subject | |
| List Price | |
| Days on Market | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Age/Year Built | |

## Subject Plot Map



## Aerial Map

| Borrower | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | |



# Location Map

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



## Location Map (expanded)

| Borrower | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | |
| City | Ocala | County | Marion | State | FL    Zip Code    34476 |
| Lender/Client | Alek Wietrzykowski | | | | |



## Building Sketch (Page – 1)

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |



TOTAL Sketch by a la mode

APPENDIX - 029

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Building Sketch (Page – 2)

| | |
|---|---|
| Borrower | n/a |
| Property Address | 10579 SW 11th Ter |
| City | Ocala    County  Marion    State  FL    Zip Code  34476 |
| Lender/Client | Alek Wietrzykowski |



## Building Sketch (Page – 3)

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | Marion | | State | FL | Zip Code | 34476 |
| Lender/Client | Alek Wietrzykowski | | | | | | |

TOTAL Sketch by a la mode

**Area Calculations Summary**

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 3369 Sq ft | 11.6 × 4.7 = 54.52 |
| | | 21.5 × 19.4 = 417.1 |
| | | 16.4 × 9.5 = 155.8 |
| | | 15.99 × 6.5 = 103.92 |
| | | 28.99 × 2.9 = 84.07 |
| | | 15.5 × 2.9 = 44.95 |
| | | 18.7 × 1.4 = 26.18 |
| | | 34.25 × 19 = 650.78 |
| | | 23.2 × 1.4 = 32.48 |
| | | 39.4 × 20.1 = 791.94 |
| | | 32.09 × 27.58 = 885.04 |
| | | 0.5 × 2.97 × 2.97 = 4.41 |
| | | 11.92 × 3.4 = 40.52 |
| | | 5.9 × 7.2 = 42.48 |
| | | 4.32 × 5.9 = 25.48 |
| | | 0.5 × 4.32 × 4.32 = 9.32 |
| **Total Living Area (Rounded):** | **3369 Sq ft** | |

| Non-living Area | | |
|---|---|---|
| Covered Patio | 420.19 Sq ft | 4.65 × 5.9 = 27.44 |
| | | 9.5 × 4 = 38 |
| | | 22.79 × 11.85 = 270.07 |
| | | 1.35 × 2.97 = 4 |
| | | 0.5 × 2.97 × 2.97 = 4.41 |
| | | 4.32 × 15.5 = 66.94 |
| | | 0.5 × 4.32 × 4.32 = 9.32 |
| Covered Porch | 52.63 Sq ft | 6.6 × 2.9 = 19.14 |
| | | 10.6 × 3.16 = 33.49 |
| 2-Car Garage | 605.88 Sq ft | 11.1 × 1.4 = 15.54 |
| | | 22.7 × 23.53 = 534.1 |
| | | 3 × 18.75 = 56.24 |
| Stables | 509.52 Sq ft | 13.2 × 38.6 = 509.52 |
| Tack Room | 383.4 Sq ft | 18 × 21.3 = 383.4 |
| Covered Porch | 185.28 Sq ft | 4.8 × 38.6 = 185.28 |
| Covered Patio | 266.8 Sq ft | 11.6 × 23 = 266.8 |

Market Conditions Addendum to the Appraisal Report

File No.   10579 SW 11th Ter

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 10579 SW 11th Ter | City | Ocala | State | FL | ZIP Code | 34476 |
|---|---|---|---|---|---|---|---|
| Borrower | n/a | | | | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 3 | 0 | 4 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.50 | 0.00 | 1.33 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 0 | 2 | 3 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.0 | N/A | 2.3 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $1,000,000 | N/A | $1,110,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 78 | N/A | 15 | ☒ Increasing | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | N/A | $1,346,688 | $999,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | N/A | 51 | 53 | ☒ Increasing | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 91% | N/A | 96% | ☒ Increasing | ☐ Stable | ☐ Increasing |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☐ Stable | ☒ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).     An analysis was performed on 7 competing sales over the past 12 months. For those sales, a total of 14.3% were reported to have seller concessions. This analysis shows a change of -8% per month. The same analysis was performed on 120 sales from the broader defined neighborhood. For those sales, a total of 17.5% were reported to have seller concessions. This analysis shows a change of +90.1% per month.

Are foreclosure (REO sales) a factor in the market?     ☐ Yes     ☒ No     If yes, explain (including the trends in listings and sales of foreclosed properties).

An analysis was performed on 7 competing sales over the past 12 months. For those sales, a total of 0.0% were reported to be REO. The same analysis was performed on 120 sales from the broader defined neighborhood. For those sales, a total of 2.5% were reported to be REO.

Cite data sources for above information.     Information reported in the StellarMLS system (using an effective date of 11/10/2023) was utilized to arrive at the results noted on this addendum. Any percent change results noted in these comments are based on simple regression.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

An analysis was performed on 7 competing sales over the past 12 months. The sales within this group had a median sale price of $1,000,000. This analysis shows a change of +1.3% per month. The same analysis was performed on 120 sales from the broader defined neighborhood. The sales within this group had a median sale price of $560,000. This analysis shows a change of +0.8% per month. An analysis was also performed on 71 sales from the broader defined neighborhood over the past 6 months. The sales within this group had a median sale price of $580,000. This analysis shows a change of -4.2% per month. In addition, an analysis was performed on 7 sales plus all active listings that are competing properties, over the past 12 months. Based on this entire set of data there is a 5.1 month supply. This analysis shows a change of +28.7% per month. These sales had a median DOM of 17. This analysis shows a change of -4.9% per month. Due to the sparse amount of comparable market activity, limited weight should be given to the data above. See additional comments in the sales comparison section in the addendum.

If the subject is a unit in a condominium or cooperative project, complete the following:     Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure (REO sales) a factor in the project?     ☐ Yes     ☐ No     If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| | Signature | |
|---|---|---|
| Signature | | Signature |
| Appraiser Name | Jon A. Dawson, SRA | Supervisory Appraiser Name |
| Company Name | Dawson Appraisal Services, LLC | Company Name |
| Company Address | 13689 Granger Ave, Orlando, FL 32827 | Company Address |
| State License/Certification # | Cert Res RD4940   State FL | State License/Certification #   State |
| Email Address | appraiser.cfl@gmail.com | Email Address |

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Subject Zoning (Restrictions & Permitted Uses) – Page 1

11/15/23, 3:12 PM                                    Marion County, FL Land Development Code

Sec. 4.2.3. - General Agriculture (A-1) classification.

A.  Intent of classification. The General Agriculture classification is intended to preserve agriculture
    as the primary use. This classification in the Urban Area may be used for agriculture until it is
    rezoned to another permitted classification.

B.  Permitted Uses:

   Single-family dwellings

   Manufactured buildings (DCA approved residential units)

   Manufactured homes

   Commercial vehicles utilized for transporting agricultural products raised or produced on the
       A-1 property of the vehicle owner may be parked on the A-1 zoned property; otherwise
       see Section 4.3.21.A. and B. for additional options on properties consisting of 5 acres or
       greater.

   General farming, agricultural uses such as aquaculture, fish hatcheries, agricultural crop
       production including sod farms, agricultural production of livestock and forestry, including
       horses, cattle or the keeping and raising of ratites such as ostriches and emus

   Greenhouse and plant nursery including both retail and wholesale, provided the products
       sold are raised on premises

   Hay sales, refer to Sec. 4.2.2.C (4)

   Single family, guest cottage, apartment. Refer to Sec. 4.3.18

   Ornamental horticulture, floriculture, and nursery products retail, wholesale

   Poultry farms, hatcheries

   Public park, or other public recreational use or building

   Racetrack, non-motorized, non-commercial for training only

   Silviculture

   Veterinary office, clinic, or hospital, no outside kennels permitted

C.  Special Uses (requiring permit):

   Airport, private

   Aviaries

   Bed and breakfast inn

   Cemetery, mausoleum (private)

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    APPENDIX - 033

## Subject Zoning (Restrictions & Permitted Uses) – Page 2

Church, Places of worship

Dude ranch, riding academy

Feedlots, cattle, hog, lamb, etc.

Gas meter facility and supply lines, high-pressure, except where such permits are pre-empted by state and federal regulations

Kennel

Landfill, construction, and demolition

Motorized Vehicle Racetrack or Practice Facilities shall be defined as: Motorized Vehicle Racetrack or Practice Facility: a place where ATV's, Motocross Bikes, Go Carts, Off Road Vehicles, or any similar vehicles, gather to compete against each other or against time on a tract of land or course constructed or designed for such purpose; A place to train, develop form, techniques or other skills related to competition

Nursery school

Parking of commercial vehicles, see Sec. 4.3.21

Shooting range

School, accredited public, private, parochial

Sewage treatment plants with an inflow exceeding 5,000 gallons per day

Specialty animals

Sprayfields or other type of effluent disposal area when application rate exceeds 5,000 gallons per day, if allowed by law

Storage of explosives

Transportation services solely related to the transport of horses and livestock

Treatment facility for wastewater residuals

Veterinary office, clinic, or hospital, outside kennels permitted

Water wellfields

D. Development Standards:

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   APPENDIX - 034

**Subject Zoning (Restrictions & Permitted Uses) – Page 3**

11/15/23, 3:12 PM                                        Marion County, FL Land Development Code



Maximum Density Permitted: 1 du/10 acres, unless qualifies for the density exceptions provisions in Sec. 4.3.2.

Minimum Lot Area: 10 acres

Minimum Lot Width: 150 feet

Maximum Building Height: 50 feet

Maximum Floor Area Ratio: None

E.  Setbacks Minimums:

Front Setback: 25 feet

Side Setback: 25 feet

Rear Setback: 25 feet

F.  Accessory Buildings:

Front Setback: 25 feet

Side Setback: 25 feet

Rear Setback: 25 feet

G.  Accessory Building Housing for Livestock:

Front Setback: 75 feet

Side Setback: 25 feet

Rear Setback: 25 feet

H.  Accessory Building Housing for Poultry:

Front Setback: 100 feet

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE     APPENDIX - 035

## Subject Zoning (Restrictions & Permitted Uses) – Page 4

11/15/23, 3:12 PM                                    Marion County, FL Land Development Code

Side Setback: 25 feet

Rear Setback: 25 feet

I.  Pool Enclosures:

Front Setback: 25 feet

Side Setback: 25 feet

Rear Setback: 10 feet

(Ord. No. 17–08, § 2(Exh. A), 4-11-2017)

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE     APPENDIX - 036

File No.    10579 SW 11th Ter

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

APPENDIX - 037

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Client: | Alek Wietrzykowski | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | Appraisal File #: | 10579 SW 11th Ter |

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal is subject to the following assumptions and limiting conditions:

■ This report is prepared using forms developed and copyrighted by the Appraisal Institute. However, the content, analyses, and opinions set forth in this report are the sole product of the appraiser. The Appraisal Institute is not liable for any of the content, analyses, or opinions set forth herein.

■ No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and marketable. All existing liens, encumbrances, and assessments have been disregarded, unless otherwise noted, and the property is appraised as though free and clear, having responsible ownership and competent management.

■ I have examined the property described herein exclusively for the purposes of identification and description of the real property. The objective of my data collection is to develop an opinion of the highest and best use of the subject property and make meaningful comparisons in the valuation of the property. The appraiser's observations and reporting of the subject improvements are for the appraisal process and valuation purposes only and should not be considered as a warranty of any component of the property. This appraisal assumes (unless otherwise specifically stated) that the subject is structurally sound and all components are in working condition.

■ I will not be required to give testimony or appear in court because of having made an appraisal of the property in question, unless specific arrangements to do so have been made in advance, or as otherwise required by law.

■ I have noted in this appraisal report any significant adverse conditions (such as needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) discovered during the data collection process in performing the appraisal. Unless otherwise stated in this appraisal report, I have no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and have assumed that there are no such conditions and make no guarantees or warranties, express or implied. I will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because I am not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable public and/or private sources that I believe to be true and correct.

■ I will not disclose the contents of this appraisal report except as provided for in the Standards and Ethical Rules under which this appraisal was developed and reported and/or applicable federal, state or local laws.

■ The Client is the party or parties who engage an appraiser (by employment contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment. The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

■ If this valuation conclusion is subject to satisfactory completion, repairs, or alterations, it is assumed that the improvements will be completed competently and without significant deviation.

## VALUE DEFINITION

| ☒ Market Value Definition (below) | ☐ Alternate Value Definition (attached) |
|---|---|

MARKET VALUE is defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. buyer and seller are typically motivated;

2. both parties are well informed or well advised and acting in what they consider their own best interests;

3. a reasonable time is allowed for exposure in the open market;

4. payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5. the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source: The Dictionary of Real Estate Appraisal, 6th ed., Appraisal Institute

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-900.05 Certification, Assumptions and Limiting Conditions© Appraisal Institute 2017, All Rights Reserved                                                                                          June 2017

| Client: | Alek Wietrzykowski | Client File #: | 10579 SW 11th Ter |
|---|---|---|---|
| Subject Property: | 10579 SW 11th Ter, Ocala, FL 34476 | Appraisal File #: | 10579 SW 11th Ter |

## APPRAISER CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analysis, opinions, and conclusions are limited only by the report assumptions and limiting conditions, and are my personal, unbiased professional analysis, opinions, and conclusions.

- I have no present (unless specified below) or prospective interest in the property that is the subject of this report, and I have no (unless specified below) personal interest with respect to the parties involved.

- I have no bias with respect to any property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon the developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- Individuals who have provided significant real property appraisal assistance are named below. The specific tasks performed by those named are outlined in the Scope of Work section of this report.

☒ None  ☐ Name(s)

As previously identified in the Scope of Work section of this report, the signer(s) of this report certify to the inspection of the property that is the subject of this report as follows:

Property Inspected by Appraiser  ☒ Yes  ☐ No
Property Inspected by Co-Appraiser  ☐ Yes  ☐ No

- Services provided, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment:  ☒ None  ☐ Specify services provided:  I have not performed any other services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## ADDITIONAL CERTIFICATION FOR APPRAISAL INSTITUTE MEMBERS, CANDIDATES AND PRACTICING AFFILIATES

Appraisal Institute Designated Member, Candidate for Designation, or Practicing Affiliate Certify:

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

| - I am a Designated Member of the Appraisal Institute. As of the date of this report, I have completed the continuing education program of the Appraisal Institute. | - |

## APPRAISERS SIGNATURES

| APPRAISER: | CO-APPRAISER: |
|---|---|
| Signature | Signature |
| Name  Jon A. Dawson, SRA | Name |
| Report Date  11/20/2023 | Report Date |
| Trainee ☐ Licensed ☐ Certified Residential ☒ Certified General ☐ | Trainee ☐ Licensed ☐ Certified Residential ☐ Certified General ☐ |
| License #  Cert Res RD4940  State  FL | License #  State |
| Expiration Date  11/30/2024 | Expiration Date |

*NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute makes no representations, warranties or guarantees as to, and assumes no responsibility for, the data, analysis or work product, or third party certifications, verifications, data specifications, scores, indexes, or valuation tools, used or provided by the individual appraiser(s) or others in the specific contents of the AI Reports®. AI Reports® AI-900.05 Certification, Assumptions and Limiting Conditions© Appraisal Institute 2017, All Rights Reserved          June 2017

**Certification**



Ron DeSantis, Governor

Melanie S. Griffin, Secretary



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## DAWSON, JON ASHLEY

13689 GRANGER AVE
ORLANDO        FL 32827

**LICENSE NUMBER: RD4940**

**EXPIRATION DATE:  NOVEMBER 30, 2024**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# INVOICE

**FROM:**

McCalip & Morales Appraisal Service, Inc.
PO Box 6034
Ocala, FL 34478-6034

| INVOICE NUMBER | |
|---|---|
| 231823 | |

| DATES | |
|---|---|
| Invoice Date: | 11/10/2023 |
| Due Date: | 11/14/2023 |

Telephone Number:  352-817-7595      Fax Number:

**TO:**

ALBERT BLACK III

| REFERENCE | |
|---|---|
| Internal Order #: | |
| Lender Case #: | |
| Client File #: | |
| FHA/VA Case #: | |
| Main File # on form: | 231823 |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

E-Mail:
Telephone Number:            Fax Number:
Alternate Number:

## DESCRIPTION

| | | | | |
|---|---|---|---|---|
| Lender: | ALBERT BLACK III | Client: | N/A | |
| Purchaser/Borrower: | N/A | | | |
| Property Address: | 10579 SW 11th Ter | | | |
| City: | Ocala | | | |
| County: | MARION | State: FL | Zip: | 34476 |
| Legal Description: | SEC 30 TWP 16 RGE 22 PLAT BOOK 006 PAGE 097 EQUINE ESTATES | | | |

| FEES | AMOUNT |
|---|---|
| 1004 | 750.00 |
| FEE PAID IN FULL | -750.00 |
| **SUBTOTAL** | 0 |

| PAYMENTS | AMOUNT |
|---|---|
| Check #:        Date:        Description: | |
| Check #:        Date:        Description: | |
| Check #:        Date:        Description: | |
| **SUBTOTAL** | 0 |
| **TOTAL DUE** | $       0 |

## Uniform Residential Appraisal Report
File # 231823

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| Field | Value |
|---|---|
| Property Address | 10579 SW 11th Ter |
| City | Ocala | State | FL | Zip Code | 34476 |
| Borrower | N/A | Owner of Public Record | SHELLY ERIC LEE MARGARET | County | MARION |
| Legal Description | SEC 30 TWP 16 RGE 22 PLAT BOOK 006 PAGE 097 EQUINE ESTATES |
| Assessor's Parcel # | 37338-017-00 | Tax Year | 2023 | R.E. Taxes $ | 16,601 |
| Neighborhood Name | EQUINE ESTATES | Map Reference | STR: 30/16/22 | Census Tract | 0009.01 |

Occupant: ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0   ☐ PUD   HOA $ 0   ☐ per year ☐ per month
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type: ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) MARKET VALUATION FOR RECEIVERSHIP
Lender/Client ALBERT BLACK III   Address N/A

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). INSPECTION/OMCARMLS

### CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location: ☐ Urban ☒ Suburban ☐ Rural | Property Values: ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000) | One-Unit 73 % |
| Built-Up: ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply: ☐ Shortage ☒ In Balance ☐ Over Supply | AGE (yrs) | 2-4 Unit |
| Growth: ☐ Rapid ☒ Stable ☐ Slow | Marketing Time: ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | Low 800   0 | Multi-Family |
| Neighborhood Boundaries SEE ADDENDUM. SW 42ND ST THE NORTH, HWY 484 TO THE SOUTH, | High 2,000   60 | Commercial 2 % |
| HWY 301 TO THE EAST, I-75 TO THE WEST. | Pred. 1,100   5 | Other 25 % |

Neighborhood Description SEE ADDENDUM.
UNDER THE PRESENT LAND USE % OTHER REPRESENTS VACANT.
Market Conditions (including support for the above conclusions) MARION COUNTY IS CURRENTLY SHOWING SIGNS OF A STABLE MARKET.

### SITE

| Field | Value |
|---|---|
| Dimensions | 359 X 1213 | Area | 10.00 ac | Shape | RECTANGULAR | View | N;Res; |
| Specific Zoning Classification | A-1 | Zoning Description | AGRICULTURAL |

Zoning Compliance: ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe THE
HIGHEST AND BEST USE IS RESIDENTIAL.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☐ | ☒ ***WELL/TYPICAL | Street ASPHALT | ☒ | |
| Gas | ☐ | NONE | Sanitary Sewer | ☐ | ☒ ***SEPTIC/TYPICAL | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 12083C0710D   FEMA Map Date 08/28/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
***PUBLIC WATER & SEWER ARE NOT AVAILABLE TO THE SUBJECT PROPERTY.
***WELL & SEPTIC SYSTEMS ARE TYPICAL AND COMMON FOR THE AREA. THERE IS NO AFFECT ON VALUE OR MARKETABILITY.
THE SUBJECT PROPERTY IS NOT IN AN AGE RESTRICTED COMMUNITY.

### IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units: ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls CONCRETE/GOOD | Floors CPT/TILE--GOOD |
| # of Stories 1 | ☐ Full Basement ☐ Partial Basement | Exterior Walls BLK/STUCCO--GD | Walls DRYWALL-GOOD |
| Type: ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface COMPOSITE--GOOD | Trim/Finish STND. WD-GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts NONE | Bath Floor TILE-GOOD |
| Design (Style) CUSTOM | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type SH.ALUMINUM-GD | Bath Wainscot TILE-GOOD |
| Year Built 2017 | Evidence of: ☐ Infestation | Storm Sash/Insulated NONE | Car Storage ☐ None |
| Effective Age (Yrs) 3 | ☐ Dampness ☐ Settlement | Screens ALUMINUM/GOOD | ☒ Driveway # of Cars 1 |
| Attic ☐ None | Heating ☐ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface CONCRETE |
| ☒ Drop Stair ☐ Stairs | ☒ Other H. PUMP Fuel ELECTRIC | ☐ Fireplace(s) # 0 ☒ Fence FENCE | ☒ Garage # of Cars 2 |
| ☐ Floor ☐ Scuttle | Cooling ☐ Central Air Conditioning | ☐ Patio/Deck PTO ☐ Porch FOP/FOP | ☐ Carport # of Cars 0 |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool NONE ☒ Other BARN | ☐ Att. ☐ Det. ☐ Built-in |

Appliances: ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 6 Rooms   3 Bedrooms   3 Bath(s)   3,261 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). COVERED ENTRY, FENCE, OPEN PORCH, PATIO, BARN WITH LEAN TO, WELL, SEPTIC
SYSTEM & AVERAGE LANDSCAPING.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C3;No updates in the prior 15 years;THE
APPRAISER USED THE AGE/LIFE METHOD OF DEPRECIATION BASED ON AN EFFECTIVE 3 OVER 60 YEARS.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 231823

| | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| There are | N/A | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 0 | | to $ 0 | |
| There are | N/A | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 0 | | to $ 0 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 10579 SW 11th Ter Ocala, FL 34476 | 9502 SW 27th Ave Ocala, FL 34476-7518 | 2291 SW 76th Ln Ocala, FL 34476-6774 | 10540 SW 27th Ave Ocala, FL 34476-7508 |
| Proximity to Subject | | 1.76 miles NW | 3.07 miles NW | 1.68 miles W |
| Sale Price | $ | $ 1,000,000 | $ 1,086,500 | $ 1,249,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 329.06 sq.ft. | $ 306.40 sq.ft. | $ 416.19 sq.ft. |
| Data Source(s) | | OMCARMLS#OM648085;DOM 78 | OMCARMLS#OM651362;DOM 159 | OMCARMLS#OM646034;DOM 175 |
| Verification Source(s) | | P.A. 35699-022-02 | P.A. 35547-012-00 | P.A. 35770-048-07 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Cash;0 | | Cash;0 | |
| Date of Sale/Time | | s02/23;c01/23 | | s08/23;c07/23 | | s10/23;c09/23 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 10.00 ac | 10.00 ac | | 6.80 ac | 0 | 16.24 ac | -156,000 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;CUSTOM | DT1;CUSTOM | | DT2;CUSTOM | 0 | DT2;CUSTOM | 0 |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 6 | 7 | 0 | 24 | +40,000 | 12 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9  3  3.0 | 9  4  3.0 | 0 | 9  5  4.0 | -10,000 | 9  3  2.2 | 0 |
| Gross Living Area | 3,261 sq.ft. | 3,039 sq.ft. | +33,300 | 3,546 sq.ft. | -42,750 | 3,001 sq.ft. | +39,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | CENTRAL | CENTRAL | | CENTRAL | | CENTRAL | |
| Energy Efficient Items | HEAT PUMP | HEAT PUMP | | HEAT PUMP | | HEAT PUMP | |
| Garage/Carport | 2ga1dw | 3ga1dw | -10,000 | 3ga1dw | -10,000 | 2ga1dw | |
| Porch/Patio/Deck | FOP/FOP/PTO | FOP/FSP/PTO | -2,000 | 4FOP | -3,000 | FOP/FSP/FEP | -5,000 |
| FIREPLACE | NONE | NONE | | FIREPLACE | -3,000 | FIREPLACE | -3,000 |
| FENCE/POOL | FENCE/NONE | FENCE/SCPOOL | -40,000 | FENCE/NONE | | FENCE/SCPOOL | -40,000 |
| SITE IMPROVEMENTS | BARN/LEANTO | SHED | +49,000 | SHED | +50,000 | SHED/2BARNS/SUMKIT | -75,000 |
| Net Adjustment (Total) | | ☒ + ☐ - | 30,300 | ☒ + ☐ - | 21,250 | ☐ + ☒ - | -240,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 3.0 % Gross Adj. 13.4 % | $ 1,030,300 | Net Adj. 2.0 % Gross Adj. 14.6 % | $ 1,107,750 | Net Adj. 19.2 % Gross Adj. 25.5 % | $ 1,009,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)  PUBLIC RECORDS/OMCARMLS.

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)  PUBLIC RECORDS/OMCARMLS.

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/25/2022 | | | |
| Price of Prior Sale/Transfer | $1,395,000 | | | |
| Data Source(s) | PUBLIC RECORDS | PUBLIC RECORDS | PUBLIC RECORDS | PUBLIC RECORDS |
| Effective Date of Data Source(s) | 11/10/2023 | 11/10/2023 | 11/10/2023 | 11/10/2023 |

Analysis of prior sale or transfer history of the subject property and comparable sales  SUBJECT PRIOR TRANSFERS WERE A WARRANTY WHICH IS A RESULT OF THE CURRENT OWNER'S PURCHASE IN WHAT APPEARS TO BE AN ARMS-LENGTH TRANSACTION.

Summary of Sales Comparison Approach  ALL SALES WERE GIVEN CONSIDERATION IN THIS APPROACH TO VALUE. SITE VALUES ARE BASED ON ESTIMATED DIRECT VALUE AND NOT ON SIZE ALONE. ALL COMPS RESIDE IN COMPETITIVE AND COMPARABLE MARKET AREAS TO THE SUBJECT, SHARING SIMILAR VIEWS. THE SUBJECT'S VALUE IS BASED ON A WEIGHTED AVERAGE OF ALL SALES USED. ADJUSTMENTS TECHNIQUES EMPLOYED IN THIS REPORT WERE BASED ON THE MARKETS REACTION OF ANALYZING PAIRED DATA AND REGRESSION ANALYSIS. SEE COMMENTS REGARDING SALES COMPARISON APPROACH ON SUPPLEMENTAL ADDENDUM SUPPORTING ADJUSTMENT GIVEN.

Indicated Value by Sales Comparison Approach $  1,100,000

Indicated Value by: Sales Comparison Approach $ 1,100,000  Cost Approach (if developed) $  Income Approach (if developed) $

THE MARKET APPROACH TO VALUE IS THE PRINCIPLE APPROACH USED AS IT BEST REFLECTS THE ACTIONS OF INFORMED BUYERS AND SELLERS.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,100,000 , as of 11/10/2023 , which is the date of inspection and the effective date of this appraisal.

APPENDIX 045

Form 1004UAD — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Uniform Residential Appraisal Report

File # 231823

**NEIGHBORHOOD BOUNDARIES & DESCRIPTION:**

THE SUBJECT PROPERTY IS LOCATED APPRX. 5 MILES SOUTHWEST OF THE CITY OF OCALA, WHERE MOST NECESSARY AMENITIES CAN BE FOUND.  THE AREA IS COMPRISED OF SINGLE FAMILY RESIDENTIAL DWELLINGS BOTH MANUFACTURED AND CONVENTIONALLY BUILT ON 1/6 ACRE TO SMALL ACREAGE TRACTS.  THE NEIGHBORHOOD BOUNDARIES ARE: SW 42ND ST TO THE NORTH, HWY 484 TO THE SOUTH, HWY 301 TO THE EAST, I-75 TO THE WEST.

**SITE IMPROVEMENTS:**

CONCRETE DRIVEWAY, FENCE, BARN WITH LEAN TO, WELL, SEPTIC AND LANDSCAPING.

**UTILITIES COMMENTS:**

AT THE TIME OF INSPECTION THE UTILITIES WERE ON AND IN WORKING ORDER.   ALL APPLIANCES AND MECHANICAL ITEMS WERE IN WORKING ORDER.

**SEPTIC COMMENT:**

THE SEPTIC SYSTEM APPEARS TO BE IN WORKING ORDER WITH NO SIGNS OF POOLING.

**DATA SOURCES USED:**

THIS APPRAISAL CONSISTS OF DATA AND INFORMATION FROM THE FOLLOWING SOURCES:  MULTIPLE LISTING SERVICE, PUBLIC RECORDS INCLUDING COUNTY PROPERTY APPRAISER, TAX COLLECTOR, ZONING AND LAND USE,  AND CLERK OF THE COURT, TRULIA, ZILLOW, VARIOUS LOCAL AND NATIONAL NEWSPAPERS AND PUBLICATIONS.

**PRIOR SERVICES:**

I HAVE PERFORMED NO SERVICES AS AN APPRAISER OR IN ANY OTHER CAPACITY REGARDING THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT WITHIN THE 3 YEAR PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THIS ASSIGNMENT.

**EXPOSURE TIME:**

IS DEFINED AS THE ESTIMATED LENGTH OF TIME THAT THE PROPERTY INTEREST BEING APPRAISED WOULD HAVE BEEN OFFERED ON THE MARKET PRIOR TO THE HYPOTHETICAL CONSUMMATION OF A SALE AT MARKET VALUE ON THE EFFECTIVE DATE OF THE APPRAISAL.  THE DEFINITION OF EXPOSURE TIME IS FROM THE DEFINITIONS SECTION OF THE 2021-2022 VERSION OF THE USPAP. THE EXPOSURE TIME WOULD BE APPX. 3-6 MONTHS.  THE LOCAL MULTIPLE LISTING SERVICE WAS THE INFORMATION AND DATA SOURCE USED.

| COST APPROACH TO VALUE (not required by Fannie Mae) |
|---|

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    THE COST APPROACH WAS NOT DEVELOPED.

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | = $ |
|---|---|---|---|---|---|---|
| Source of cost data | LOCAL COST DATA | | DWELLING | Sq.Ft. @ $ | | = $ |
| Quality rating from cost service | GOOD | Effective date of cost data 2023 | | 0 Sq.Ft. @ $ | | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | | = $ |
| LOCAL COST DATA.  REPLACEMENT COST IS USED IN THIS APPROACH TO VALUE. | | | Garage/Carport | Sq.Ft. @ $ | | = $ |
| | | | Total Estimate of Cost-New | | | = $ |
| THE SUBJECT DWELLING IS CONSIDERED TO BE OF GOOD QUALITY CONSTRUCTION BASED UPON FENESTRATION AND GOOD INTERIOR FINISH. | | | Less   Physical | Functional | External | |
| | | | Depreciation   31,661 | | | = $ (        ) |
| | | | Depreciated Cost of Improvements | | | = $ |
| | | | "As-is" Value of Site Improvements | | | = $ |
| Estimated Remaining Economic Life (HUD and VA only)   57   Years | | | INDICATED VALUE BY COST APPROACH | | | = $ |

| INCOME APPROACH TO VALUE (not required by Fannie Mae) |
|---|

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)    NOT APPLICABLE

| PROJECT INFORMATION FOR PUDs (if applicable) |
|---|

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes    ☐ No    Unit type(s)    ☐ Detached    ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes    ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?    ☐ Yes    ☐ No    Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes    ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes    ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 231823

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

APPENDIX 047

Uniform Residential Appraisal Report

File # 231823

**APPRAISER'S CERTIFICATION:**     The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

APPENDIX 048

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 231823

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name JOHN G. MORALES
Company Name MCCALIP & MORALES APPRAISAL SERVICE, INC.
Company Address PO BOX 6034
OCALA, FL 34478
Telephone Number (352) 817-7595
Email Address REALTYGATOR@AOL.COM
Date of Signature and Report 11/27/2023
Effective Date of Appraisal 11/10/2023
State Certification # CERT GEN RZ2334
or State License #
or Other (describe)    State #
State FL
Expiration Date of Certification or License 11/30/2024

ADDRESS OF PROPERTY APPRAISED
10579 SW 11th Ter
Ocala, FL 34476
APPRAISED VALUE OF SUBJECT PROPERTY $ 1,100,000
LENDER/CLIENT
Name NO AMC
Company Name ALBERT BLACK III
Company Address N/A
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

## Supplemental Addendum

File No. 231823

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |

INTENDED USER/USE:

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MARKET VALUATION FOR RECEIVERSHIP, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

THE SCOPE OF WORK INCLUDES, BUT IS NOT LIMITED TO:

THE EXTENT TO WHICH THE PROPERTY IS IDENTIFIED;
THE EXTENT TO WHICH TANGIBLE PROPERTY IS INSPECTED;
THE TYPE AND EXTENT OF DATA RESEARCHED; AND
THE TYPE AND EXTENT OF ANALYSES APPLIED TO ARRIVE AT OPINIONS OR CONCLUSIONS.

 A COMPLETE INSPECTION OF THE SUBJECTS INTERIORS AND EXTERIORS WERE PERFORMED.  A COMPLETE VISUAL INSPECTION OF THE UNOBSTRUCTED EXTERIORS OF THE COMPARABLE SALES  WAS PERFORMED FROM THE STREET.  ADEQUATE RESEARCH WAS PERFORMED TO OBTAIN THE NECESSARY DATA TO PRODUCE A RELIABLE OPINION OF VALUE.  INFORMATION PERTAINING TO LIVING AREAS, SITE IMPROVEMENTS, AND OTHER ACCESSORY BUILDINGS OF THE SUBJECT AND COMPARABLE SALES WERE OBTAINED FROM A VARIETY OF SOURCES INCLUDING BUT NOT LIMITED TO: PUBLIC RECORDS, MLS & VISUAL INSPECTION.  UNLESS INDICATED, PERSONAL PROPERTY WAS NOT GIVEN CONSIDERATION IN ESTIMATE OF VALUE.  THE APPRAISER HAS ATTEMPTED TO VERIFY ALL SALES WITH A PARTY TO THE TRANSACTION.  HOWEVER, SUCH VERIFICATION IS NOT ALWAYS POSSIBLE OR FEASIBLE AND IN THESE CASES THE APPRAISER HAS RELIED ON MLS AND OTHER DATA SOURCES.  THESE SOURCES ARE CONSIDERED RELIABLE AND IT IS AN EXTRAORDINARY ASSUMPTION TO THE REPORT THAT INFORMATION OBTAINED FROM THESE SOURCES  IS ACCURATE.  THE APPRAISER RESERVES THE RIGHT TO AMEND THE APPRAISAL IN THE CASE THAT MISINFORMATION RELEVANT TO THE VALUE CONCLUSION WAS OBTAINED FROM ANY DATA SOURCES.  THE MARKET APPROACH TO VALUE IS THE PRINCIPLE APPROACH USED AS IT BEST REFLECTS THE ACTIONS OF INFORMED BUYERS AND SELLERS, WHICH IS SUPPORTED BY THE COST APPROACH.  ALL SALES WERE GIVEN CONSIDERATION IN THE MARKET APPROACH TO VALUE.  ALTHOUGH ADEQUATE INFORMATION IS AVAILABLE TO DEVELOP AN INCOME APPROACH, IT IS NOT CONSIDERED NECESSARY IN DEVELOPING A CREDIBLE OPINION OF VALUE.  RESEARCH INDICATES THAT HOMES IN THE SUBJECTS AREA ARE PREDOMINANTLY OWNER OCCUPIED.

GENERAL TEXT ADDENDUM:

COMMENTS REGARDING SALES COMPARISON APPROACH:

PORCH/PATIO/DECK ADJUSTMENTS WERE BASED ON THE TYPE OF PORCH AND SQFT.  BATHROOM AND SQUARE FOOTAGE ADJUSTMENTS ARE BASED ON PAIRED SALES DATA DERIVED FROM THE MARKET AND ARE A PER UNIT ADJUSTMENT.  SITE ADJUSTMENTS ARE BASED ON ESTIMATED DIRECT VALUE AND NOT ON SIZE ALONE, IN THE CASE OF WATER INFLUENCED PROPERTIES MORE CONSIDERATION IS GIVEN TO THE TYPE AND QUALITY OF THE WATER INFLUENCE LIKE FRONT FOOTAGE, QUALITY AND SIZE OF BODY OF WATER.  FENCE, POOL, FIREPLACE, SITE IMPROVEMENT ADJUSTMENTS IE; BARNS, SHEDS, DOCK, BOAT HOUSE ETC. WERE BASED ON PAIRED SALES DATA, CONTRIBUTORY VALUE AND 30 YEARS OF PROFESSIONAL APPRAISAL EXPERIENCE.  AGE ADJUSTMENTS ARE BASED ON EFFECTIVE AGES OF THE SUBJECT AND COMPARABLE SALES AND LISTINGS.  EFFECTIVE AGES FOR HOMES OF AVERAGE CONDITION WOULD BE APPX. HALF THE ACTUAL AGE.  HOMES WHICH HAVE HAD MAJOR RENOVATIONS OR UPDATING WOULD HAVE EFFECTIVE AGES OF LESS THAN HALF THE ACTUAL AGE.  HOMES WHICH HAVE DEFERRED MAINTENANCE OR ARE IN NEED OF UPDATING WOULD HAVE EFFECTIVE AGES GREATER THAN HALF THE ACTUAL AGE.  DOM FOR THE SUBJECT MARKET AREA IS APPX. 3-6 MONTHS HOWEVER NOT ALL SALES WILL FALL INTO THIS TIME FRAME SOME SALES WILL BE LESS THAN 3 MONTHS AND SOME SALES WILL BE MORE THAN 6 MONTHS THIS IS TYPICAL AND COMMON FOR THE MARKET AREA.  IF THE GLA DIFFERENCE BETWEEN THE SUBJECT AND COMPARABLE SALES AND LISTINGS IS GREATER THAN 20% THAT IS BECAUSE THERE WERE NOT ADEQUATE AVAILABLE SALES TO BRACKET THE SUBJECT GLA, THE SALES USED WERE THE BEST AVAILABLE.  BEDROOM COUNT ADJUSTMENTS ARE NOT DEEMED NECESSARY AS THERE IS NO PROOF IN THE MARKET THAT A VALUE DIFFERENCE EXIST BASED ON BEDROOM COUNT, HOWEVER SQFT ADJUSTMENTS ARE MADE FOR A DIFFERENCE OF 100 SQFT OR GREATER. IF THE SUBJECTS CONDITION COULD NOT BE BRACKETED THAT IS BECAUSE THERE WERE NO SALES WITH SIMILAR CONDITION AVAILABLE.  THE CONDITION ADJUSTMENT IS BASED ON PAIRED SALES DATA, CONTRIBUTORY VALUE OF REPAIRS AND 30 YEARS OF PROFESSIONAL APPRAISAL EXPERIENCE.  THE SEARCH PARAMETERS WERE EXPANDED BY TIME AND DISTANCE AND NO COMPARABLE SALES, PENDING SALES OR LISTINGS WERE AVAILABLE, SALES OF THIS TYPE OF PROPERTY ARE VERY LIMITED.

COMPETENCY STATEMENT:

I AM COMPETENT IN THE PROPERTY TYPE OF THIS ASSIGNMENT AND COMPETENT IN THIS GEOGRAPHICAL AREA OF WHICH THE PROPERTY FOR THIS ASSIGNMENT IS LOCATED.  I CERTIFY THAT I HAVE ACCESS TO THE APPROPRIATE DATA SOURCES FOR THIS ASSIGNMENT AND WILL IMMEDIATELY NOTIFY THE LENDER, CLIENT OR AMC IN WRITING IF I AT ANYTIME DETERMINE THAT I AM NOT QUALIFIED TO COMPLETE THIS ASSIGNMENT. FURTHERMORE, I AM AWARE THAT ANY MISREPRESENTATION OF COMPETENCY MAY BE SUBJECT TO THE MANDATORY REPORTING REQUIREMENT OF THE MOST CURRENT VERSION OF THE USPAP.

## Supplemental Addendum

File No. 231823

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |

ADDITIONAL COMMENTS:

SMOKE DETECTORS WERE NOT REQUIRED UNTIL 2008, HOWEVER IF PRESENT IT WILL BE NOTED AND A PHOTO WILL BE IN THE REPORT.   CO2 DETECTORS AND WATER HEATER STRAPPING ARE NOT REQUIRED.

TIME ADJUSTMENTS:

ONE UNIT HOUSING IS STABLE, NOT ENOUGH DATA HAS BEEN COLLECTED OVER A LONG ENOUGH TIME FRAME TO WARRANT TIME ADJUSTMENTS.

GLA DIFFERENCES:

IF THE GLA DIFFERS FROM PUBLIC RECORDS IT IS BECAUSE WE PHYSICALLY MEASURE EVERY HOUSE TO DETERMINE THE GLA.  MOST COUNTIES DO NOT HAVE ACCURATE GLA'S BECAUSE THEY DO NOT PHYSICALLY INSPECT THE WHOLE PROPERTY AND CANNOT ACCOUNT FOR ADDITIONS OR CONVERTING PORCHES OR GARAGES TO GLA.

ANSI MEASUREMENT GUIDELINES:

THE SUBJECT DWELLING AND ALL OUT BUILDINGS WERE MEASURED USING ANSI MEASUREMENT GUIDELINES. THE MEASUREMENTS COMPLY WITH ANSI Z765-2021.

THE APPRAISER HAS CALCULATED THE HEATED SQUARE FOOTAGE OF THE SUBJECT PROPERTY'S GROSS-LIVING AREA FROM FIELD MEASUREMENTS TAKEN AT THE TIME OF PROPERTY VIEWING. THE SUBJECT IMPROVEMENTS CONSIST OF A 1 STORY DETACHED, SINGLE-FAMILY DWELLING WITH FINISHED AREA OF 3,261 SQUARE FEET. PHYSICAL AND TRANSACTIONAL INFORMATION REPORTED IN THIS APPRAISAL REPORT MAY BE DIFFERENT THAN THAT REPORTED IN EITHER THE MLS, THE ASSESSOR FILES, OR OTHER PUBLIC RECORD DATA SOURCES. THE APPRAISER COMPLIED WITH ANSI Z765-2021 IN CALCULATING AND REPORTING THE FINISHED SQUARE FOOTAGE OF THE SUBJECT PROPERTY.

CONDITION OF SUBJECT PROPERTY:

The subject is in new condition (C1), meaning the improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

The subject is in good condition (C2), meaning the improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

The subject is in average(+) condition (C3), meaning the improvements are well-maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well-maintained.

The subject is in average condition (C4), meaning the improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs.

| Borrower | N/A | | | | File No. | 231823 |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | |

# APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report  (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Appraisal Report  (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name:  JOHN C. MORALES | Name: |
| State Certification #:  CERT GEN RZ2334 | State Certification #: |
| or State License #: | or State License #: |
| State:  FL   Expiration Date of Certification or License:  11/30/2024 | State:   Expiration Date of Certification or License: |
| Date of Signature and Report:  11/27/2023 | Date of Signature: |
| Effective Date of Appraisal:  11/10/2023 | |
| Inspection of Subject:  ☐ None  ☒ Interior and Exterior  ☐ Exterior-Only | Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☐ Exterior-Only |
| Date of Inspection (if applicable):  11/10/2023 | Date of Inspection (if applicable): |

APPENDIX 052

**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Subject Front**

10579 SW 11th Ter
Sales Price
Gross Living Area      3,261
Total Rooms             9
Total Bedrooms         3
Total Bathrooms        3.0
Location                   N;Res;
View                        N;Res;
Site                         10.00 ac
Quality                    Q3
Age                         6

**Subject Rear**



**Street Facing North**



**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Subject Front Right**

10579 SW 11th Ter
Sales Price
Gross Living Area       3,261
Total Rooms             9
Total Bedrooms          3
Total Bathrooms         3.0
Location                N;Res;
View                    N;Res;
Site                    10.00 ac
Quality                 Q3
Age                     6



**Subject Rear Right**



**Street Facing South**

APPENDIX - 054

**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Subject Front Left**

10579 SW 11th Ter
Sales Price
Gross Living Area     3,261
Total Rooms            9
Total Bedrooms         3
Total Bathrooms        3.0
Location               N;Res;
View                   N;Res;
Site                   10.00 ac
Quality                Q3
Age                    6



**Subject Rear Left**



**Subject Address**

Form PIC3x5.SR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Subject North Side**

| | |
|---|---|
| 10579 SW 11th Ter | |
| Sales Price | |
| Gross Living Area | 3,261 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 6 |



**Subject South Side**



**Mechanical**

APPENDIX - 056

## Subject Photo Page

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Barn**

10579 SW 11th Ter
Sales Price
Gross Living Area      3,261
Total Rooms             9
Total Bedrooms          3
Total Bathrooms         3.0
Location                N;Res;
View                    N;Res;
Site                    10.00 ac
Quality                 Q3
Age                     6



**Barn Interior**



**Barn Interior**

Form PIC3X5.SR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Subject Interior Photo Page**

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | |



**Garage**

10579 SW 11th Ter
Sales Price
Gross Living Area    3,261
Total Rooms    9
Total Bedrooms    3
Total Bathrooms    3.0
Location    N;Res;
View    N;Res;
Site    10.00 ac
Quality    Q3
Age    6



**Utility**



**Kitchen**

APPENDIX - 058

**Subject Interior Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Living Room**

10579 SW 11th Ter
Sales Price
Gross Living Area    3,261
Total Rooms          9
Total Bedrooms       3
Total Bathrooms      3.0
Location             N;Res;
View                 N;Res;
Site                 10.00 ac
Quality              Q3
Age                  6



**Family Room**



**Dining Room**

APPENDIX - 059

Subject Interior Photo Page

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code 34476 |
| Lender/Client | ALBERT BLACK III | | | | | |



**Nook**

10579 SW 11th Ter
Sales Price
Gross Living Area 3,261
Total Rooms 9
Total Bedrooms 3
Total Bathrooms 3.0
Location N;Res;
View N;Res;
Site 10.00 ac
Quality Q3
Age 6



**Office**



**Bedroom**

APPENDIX - 060

**Subject Interior Photo Page**

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code 34476 |
| Lender/Client | ALBERT BLACK III | | | | | |



**Bedroom**

10579 SW 11th Ter
Sales Price
Gross Living Area     3,261
Total Rooms             9
Total Bedrooms         3
Total Bathrooms       3.0
Location                     N;Res;
View                          N;Res;
Site                           10.00 ac
Quality                       Q3
Age                            6



**Bedroom**



**Bathroom**

APPENDIX - 061

**Subject Interior Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Bathroom**

10579 SW 11th Ter
Sales Price
Gross Living Area    3,261
Total Rooms    9
Total Bedrooms    3
Total Bathrooms    3.0
Location    N;Res;
View    N;Res;
Site    10.00 ac
Quality    Q3
Age    6



**Bathroom**



**Smoke Detector**

**Comparable Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



### Comparable 1
9502 SW 27th Ave

| | |
|---|---|
| Prox. to Subject | 1.76 miles NW |
| Sales Price | 1,000,000 |
| Gross Living Area | 3,039 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 10.00 ac |
| Quality | Q3 |
| Age | 7 |



### Comparable 2
2291 SW 76th Ln

| | |
|---|---|
| Prox. to Subject | 3.07 miles NW |
| Sales Price | 1,086,500 |
| Gross Living Area | 3,546 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6.80 ac |
| Quality | Q3 |
| Age | 24 |



### Comparable 3
10540 SW 27th Ave

| | |
|---|---|
| Prox. to Subject | 1.68 miles W |
| Sales Price | 1,249,000 |
| Gross Living Area | 3,001 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.2 |
| Location | N;Res; |
| View | N;Res; |
| Site | 16.24 ac |
| Quality | Q3 |
| Age | 12 |

APPENDIX - 063

## ENVIRONMENTAL ADDENDUM
APPARENT* HAZARDOUS SUBSTANCES AND/OR DETRIMENTAL ENVIRONMENTAL CONDITIONS

| | |
|---|---|
| Borrower | N/A |
| Address | 10579 SW 11th Ter |
| City | Ocala |
| Lender/Client | ALBERT BLACK III |

| County | MARION | State | FL | Zip code | 34476 |

**\*Apparent is defined as that which is visible, obvious, evident or manifest to the appraiser.**

This universal Environmental Addendum is for use with any real estate appraisal.  Only the statements which have been checked by the appraiser apply to the property being appraised.

This addendum reports the results of the appraiser's routine inspection of and inquiries about the subject property and its surrounding area.  It also states what assumptions were made about the existence (or nonexistence) of any hazardous substances and/or detrimental environmental conditions. **The appraiser is not an expert environmental inspector** and therefore might be unaware of existing hazardous substances and/or detrimental environmental conditions which may have a negative effect on the safety and value of the property.  It is possible that tests and inspections made by a qualified environmental inspector would reveal the existence of hazardous materials and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

### DRINKING WATER

_____ Drinking Water is supplied to the subject from a municipal water supply which is considered safe. However the only way to be absolutely certain that the water meets published standards is to have it tested at all discharge points.

_____ Drinking Water is supplied by a well or other non-municipal source.  It is recommended that tests be made to be certain that the property is supplied with adequate pure water.

_____ Lead can get into drinking water from its source, the pipes, at all discharge points, plumbing fixtures and/or appliances. The only way to be certain that water does not contain an unacceptable lead level is to have it tested at all discharge points.

__X__ **The value estimated in this appraisal is based on the assumption that there is an adequate supply of safe, lead-free Drinking Water.**

Comments _____

### SANITARY WASTE DISPOSAL

_____ Sanitary Waste is removed from the property by a municipal sewer system.

_____ Sanitary Waste is disposed of by a septic system or other sanitary on site waste disposal system. The only way to determine that the disposal system is adequate and in good working condition is to have it inspected by a qualified inspector.

__X__ **The value estimated in this appraisal is based on the assumption that the Sanitary Waste is disposed of by a municipal sewer or an adequate properly permitted alternate treatment system in good condition.**

Comments _____

### SOIL CONTAMINANTS

_____ There are no apparent signs of Soil Contaminants on or near the subject property (except as reported in Comments below).  It is possible that research, inspection and testing by a qualified environmental inspector would reveal existing and/or potential hazardous substances and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

__X__ **The value estimated in this appraisal is based on the assumption that the subject property is free of Soil Contaminants.**

Comments _____

### ASBESTOS

_____ All or part of the improvements were constructed before 1979 when Asbestos was a common building material. The only way to be certain that the property is free of friable and non-friable Asbestos is to have it inspected and tested by a qualified asbestos inspector.

_____ The improvements were constructed after 1979. No apparent friable Asbestos was observed (except as reported in Comments below).

__X__ **The value estimated in this appraisal is based on the assumption that there is no uncontained friable Asbestos or other hazardous Asbestos material on the property.**

Comments _____

### PCBs (POLYCHLORINATED BIPHENYLS)

_____ There were no apparent leaking fluorescent light ballasts, capacitors or transformers anywhere on or nearby the property (except as reported in Comments below).

_____ There was no apparent visible or documented evidence known to the appraiser of soil or groundwater contamination from PCBs anywhere on the property (except as reported in Comments below).

__X__ **The value estimated in this appraisal is based on the assumption that there are no uncontained PCBs on or nearby the property.**

Comments _____

### RADON

_____ The appraiser is not aware of any Radon tests made on the subject property within the past 12 months (except as reported in Comments below).

_____ The appraiser is not aware of any indication that the local water supplies have been found to have elevated levels of Radon or Radium.

_____ The appraiser is not aware of any nearby properties (except as reported in Comments below) that were or currently are used for uranium, thorium or radium extraction or phosphate processing.

__X__ **The value estimated in this appraisal is based on the assumption that the Radon level is at or below EPA recommended levels.**

Comments _____

APPENDIX - 064

## USTs (UNDERGROUND STORAGE TANKS)

_____ There is no apparent visible or documented evidence known to the appraiser of any USTs on the property nor any known historical use of the property that would likely have had USTs.

_____ There are no apparent petroleum storage and/or delivery facilities (including gasoline stations or chemical manufacturing plants) located on adjacent properties (except as reported in Comments below).

_____ There are apparent signs of USTs existing now or in the past on the subject property. It is recommended that an inspection by a qualified UST inspector be obtained to determine the location of any USTs together with their condition and proper registration if they are active; and if they are inactive, to determine whether they were deactivated in accordance with sound industry practices.

__X__ **The value estimated in this appraisal is based on the assumption that any functioning USTs are not leaking and are properly registered and that any abandoned USTs are free from contamination and were properly drained, filled and sealed.**

Comments _____

## NEARBY HAZARDOUS WASTE SITES

_____ There are no apparent Hazardous Waste Sites on the subject property or nearby the subject property (except as reported in Comments below). Hazardous Waste Site search by a trained environmental engineer may determine that there is one or more Hazardous Waste Sites on or in the area of the subject property.

__X__ **The value estimated in this appraisal is based on the assumption that there are no Hazardous Waste Sites on or nearby the subject property that negatively affect the value or safety of the property.**

Comments _____

## UREA FORMALDEHYDE (UFFI) INSULATION

_____ All or part of the improvements were constructed before 1982 when UREA foam insulation was a common building material. The only way to be certain that the property is free of UREA formaldehyde is to have it inspected by a qualified UREA formaldehyde inspector.

_____ The improvements were constructed after 1982. No apparent UREA formaldehyde materials were observed (except as reported in Comments below).

__X__ **The value estimated in this appraisal is based on the assumption that there is no significant UFFI insulation or other UREA formaldehyde material on the property.**

Comments _____

## LEAD PAINT

_____ All or part of the improvements were constructed before 1980 when Lead Paint was a common building material. There is no apparent visible or known documented evidence of peeling or flaking Lead Paint on the floors, walls or ceilings (except as reported in Comments below). The only way to be certain that the property is free of surface or subsurface Lead Paint is to have it inspected by a qualified inspector.

_____ The improvements were constructed after 1980. No apparent Lead Paint was observed (except as reported in Comments below).

__X__ **The value estimated in this appraisal is based on the assumption that there is no flaking or peeling Lead Paint on the property.**

Comments _____

## AIR POLLUTION

_____ There are no apparent signs of Air Pollution at the time of the inspection nor were any reported (except as reported in Comments below). The only way to be certain that the air is free of pollution is to have it tested.

__X__ **The value estimated in this appraisal is based on the assumption that the property is free of Air Pollution.**

Comments

## WETLANDS/FLOOD PLAINS

_____ The site does not contain any apparent Wetlands/Flood Plains (except as reported in Comments below). The only way to be certain that the site is free of Wetlands/ Flood Plains is to have it inspected by a qualified environmental professional.

__X__ **The value estimated in this appraisal is based on the assumption that there are no Wetlands/Flood Plains on the property (except as reported in Comments below).**

Comments _____

## MISCELLANEOUS ENVIRONMENTAL HAZARDS

_____ There are no other apparent miscellaneous hazardous substances and/or detrimental environmental conditions on or in the area of the site except as indicated below:

_____ Excess Noise _____
_____ Radiation + Electromagnetic Radiation _____
_____ Light Pollution _____
_____ Waste Heat _____
_____ Acid Mine Drainage _____
_____ Agricultural Pollution _____
_____ Geological Hazards _____
_____ Nearby Hazardous Property _____
_____ Infectious Medical Wastes _____
_____ Pesticides _____
_____ Others (Chemical Storage + Storage Drums, Pipelines, etc.) _____

__X__ **The value estimated in this appraisal is based on the assumption that there are no Miscellaneous environmental Hazards (except those reported above) that would negatively affect the value of the property.**

```
When any of the environmental assumptions made in this addendum are not correct, the estimated value in this appraisal may not be valid.
```

**APPENDIX - 065**

File No. 231823

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# BUILDING SECTION TYPES

BUILDING SECTION TYPES:

```
ADU   UTILITY-ALUM
ALA   ADD LIVING AREA
AOF   OFFICE-AVG
APT   APARTMENT
BTH   BOAT HOUSE
C/A   CENT AIR COND
CAN   CANOPY-ATTACHD
CDN   CANOPY-DETACHD
CHA   CENT HEAT AIR
CLP   LOADING-FINISH
COM   FINISHED AREA
DCK   DECK-WOOD
EPA   POOL ENC-A
EPB   POOL ENC-B
EPC   POOL ENC-C
FAP   ACRYLIC POR-FINISH
FBG   GARAGE-BASEMNT
FCB   CABANA-FINISHD
FCP   CARPORT-FINISH
FDC   CARPORT-FINISH
FDG   GARAGE-FINISHD
FDS   SCRN PORCH-FIN
FDU   UTILITY-FINISH
FEP   PORCH-ENC-FIN
FGR   GARAGE-FINISHD
FOP   PORCH-OPEN-FIN
FSP   SCRN PORCH-FIN
FST   UTILITY-FINISH
FUS   UPPER STORY FN
FVP   VNYL PORCH FIN
GOF   OFFICE-GOOD
HAN   HANGER-FINISH
IND   FINISHED AREA
MBL   FINISHED AREA
MFB   FINISHED AREA
MZO   MEZZANINE OFF
MZR   MEZZANINE RETL
MZS   MEZZANINE STOR
PTO   PATIO
RES   FINISHED AREA
ROM   MH ROOM ADDITN
SFB   SEMI-FIN AREA
STP   STOOP
TOL   TOILETS
UAP   ACRYLIC POR-UNFIN
UBG   GARAGE-BASEMNT
UCB   CABANA-UNFINSH
UCD   CANOPY UNFN DE
UCN   CANOPY UNFIN
UCP   CARPORT-UNFIN
UDC   CARPORT-UNFIN
UDG   GARAGE-UNFINSH
UDS   SCRN PORCH-UNF
UDU   UTILITY-UNFINS
UEP   PORCH-ENC-UNFN
UGR   GARAGE-UNFINSH
UHA   HANGER-UNFIN
ULP   LOADING-UNFINS
UOP   PORCH-OPEN-UNF
USP   SCRN PORCH-UNF
UST   UTILITY-UNFINS
UUS   UPPER STORY-UF
UVP   VNYL PORCH UNF
```

LICENSE



Ron DeSantis, Governor

Melanie S. Griffin, Secretary



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED GENERAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## MORALES, JOHN C

4 BANYAN DRIVE
OCALA          FL 34472

LICENSE NUMBER: RZ2334

EXPIRATION DATE:  NOVEMBER 30, 2024

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

E. & O. Insurance



**GREAT AMERICAN.**
INSURANCE GROUP
301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE PROFESSIONAL
ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS A CLAIMS MADE INSURANCE POLICY.

THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD. ALL CLAIMS MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN SIXTY (60) DAYS AFTER THE END OF THE POLICY PERIOD.

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒ Great American Assurance Company

Note: The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number: **RAB4446321-23**                    Renewal of: **RAB4446321-22**

Program Administrator:  **Herbert H. Landy Insurance Agency Inc.
100 River Ridge Drive, Suite 301
Norwood, MA 02062**

Item 1. **Named Insured:**     **McCalip & Morales Appraisal Service, Inc**

Item 2. **Address:**          **4 Banyan Dr.**

City, State, Zip Code: **Ocala, FL 34472**

Attn:

Item 3. **Policy Period:** From  ___**06/10/2023**___  To  ___**06/10/2024**___
(Month, Day, Year)          (Month, Day, Year)
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability:**    **(inclusive of claim expenses):**
   A.   **$ 1,000,000  Limit of Liability - Each Claim**
   B.   **$ 1,000,000  Limit of Liability - Policy Aggregate**
   C.   **$ 500,000   Limit of Liability -  Fair Housing Claims**
   D.   **$ 500,000   Limit of Liability -  Fungi Claims**

Item 5. **Deductible:**   **(inclusive of Claim Expense): $ 10,000   Each Claim**

Item 6. **Premium:** $ **1,581.00**        **Additional 2.0% FL Guaranty Association Assessment $31.62**

item 7. **Retroactive Date** (if applicable): **06/10/2016**

Item 8. **Forms, Notices and Endorsements** attached:
   **D43100 (08/19) D43300 FL (05/13) D43444 (03/17) D43442 (03/15)
   D43411 (05/13) D43447 (06/17) D43448 (06/17) D43427 (05/13)
   D43432 (05/13) D43421 (03/15) D43425 (05/13) IL7324 (07/21)**

*Betsy A. Ferguson*

Authorized Representative

D43101 (03/15)                                                    Page 1 of 1

Plat Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



**Aerial Map**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



Form MAP.AERIAL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



Form MAP.LOC - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Building Sketch (Page - 1)**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |



TOTAL Sketch by a la mode

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Building Sketch (Page - 2)

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Ter | | | | | | |
| City | Ocala | County | MARION | State | FL | Zip Code | 34476 |
| Lender/Client | ALBERT BLACK III | | | | | | |

TOTAL Sketch by a la mode

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 3261.3 Sq ft | 11.6 × 4.7 | = 54.5 |
| | | 21.4 × 19.3 | = 413 |
| | | 16 × 9.5 | = 152 |
| | | 15.6 × 6.4 | = 99.8 |
| | | 27.4 × 3 | = 82.2 |
| | | 19 × 3 | = 57 |
| | | 1.8 × 1.6 | = 2.8 |
| | | 18.3 × 1.3 | = 23.8 |
| | | 33.5 × 18.7 | = 626.4 |
| | | 22.8 × 1.3 | = 29.6 |
| | | 37.4 × 9.7 | = 362.1 |
| | | 35.4 × 4.4 | = 155.8 |
| | | 37.4 × 3.6 | = 134.7 |
| | | 34.3 × 27 | = 925.1 |
| | | 0.5 × 2.8 × 2.8 | = 4 |
| | | 11.4 × 5.7 | = 65.5 |
| | | 6 × 7.2 | = 43.2 |
| | | 3.7 × 6 | = 22.5 |
| | | 0.5 × 3.7 × 3.7 | = 7 |
| **Total Living Area (Rounded):** | **3261 Sq ft** | | |
| Non-living Area | | | |
| Barn | 890.6 Sq ft | 18 × 21.4 | = 385.2 |
| | | 38 × 13.3 | = 505.4 |
| LEAN TO | 276 Sq ft | 24 × 11.5 | = 276 |
| 2 Car Attached | 632.4 Sq ft | 4.4 × 2 | = 8.8 |
| | | 11.5 × 1.3 | = 15 |
| | | 22.9 × 23.8 | = 545 |
| | | 4 × 15.9 | = 63.5 |
| | | 0 × 2.4 | = 0.1 |
| | | 0.5 × 0 × 1.6 | = 0 |

APPENDIX - 076

# INVOICE

Date:  11/21/2023

File No.  23-176
Case No.

Prepared for:

Alex Wietrzykoski
1133 S Madison Ave
Dallas, TX 75208

Property Appraised:

10579 SW 11th Terrace
Ocala, FL 34476-7655

Work Performed:

| | |
|---|---|
| Appraisal Report | $ 1,500.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Total Amount Due: | $ 1,500.00 |

Please make checks payable to:

Rhodes & Rickolt, PA
1701 NE 42nd Avenue, Suite 101
Ocala, FL 34470
(352) 732-2288

# APPRAISAL REPORT

# OF



10579 SW 11th Terrace
Ocala, FL 34476-7655

## PREPARED FOR

Alex Wietrzykoski
1133 S Madison Ave
Dallas, TX 75208

## AS OF

11/10/2023

## PREPARED BY

Rhodes & Rickolt, PA
1701 NE 42nd Avenue, Suite 101
Ocala, FL 34470

Rhodes & Rickolt, PA

File No.    23-176
Case No.

## Residential Appraisal Report

The purpose of this appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | | | | |
|---|---|---|---|---|
| Property Address 10579 SW 11th Terrace | City Ocala | State FL | Zip Code 34476-7655 | |
| Owner Eric Shelly & Margaret Lee | Intended User Alex Wietrzykoski | County Marion | | |

Legal Description SEC 30 TWP 16 RGE 22 PLAT BOOK 006 PAGE 097 EQUINE ESTATES LOT 17

| Assessor's Parcel # 37338-017-00 | Tax Year 2022 | R.E. Taxes $ 17,293.08 |
|---|---|---|

| Neighborhood Name Marion County | Map Reference 2010 C. Bureau | Census Tract 0009.01 |
|---|---|---|

| Occupant [X] Owner [ ] Tenant [ ] Vacant | Special Assessments $ 0 | [X] PUD | HOA $ 1,900 | [X] per year [ ] per month |
|---|---|---|---|---|

| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | | |
|---|---|---|

Intended Use Market Value for Court Ordered List and Selling Purposes

Client Alex Wietrzykoski    Address 1133 S Madison Ave, Dallas, TX 75208

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offerings price(s), and date(s). Ocala Marion County Multiple Listing Service, Inc.

### CONTRACT

[ ] I did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

| Contract Price $ N/A | Date of Contract N/A | Is the property seller the owner of public record? [X] Yes [ ] No Data Source(s) Cty Records |
|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [X] No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

### NEIGHBORHOOD

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE $ (000) | AGE (yrs) | One-Unit | 65 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | 1,000 Low | 2 | 2-4 Unit | 0 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 4,000 High | 35 | Multi-Family | 0 % |
| | | 1,500 Pred. | 15 | Commercial | 0 % |
| | | | | Other VAC | 35 % |

Neighborhood Boundaries. The general neighborhood encompasses all areas of Marion County suitable for large custom homes and small farms. However, the immediate neighborhood **

Neighborhood Description ** is located in South Marion County south of Ocala; north of CR 484; west of the US Hwy 441/4301 corridor; and east of I-75. The subject development, Equine Estates, is an upscale gated development comprised of custom homes/small farms on 10 AC to 20 AC tracts in close proximity to the Green way riding trails and Horse Park.

Market Conditions (including support for the above conclusions)  The market began a significant acceleration in early 2021 attributable to the recent opening of The World Equestrian Center, the expansion of the nearby Green way Horse Park, and blue state migration. However, recent interest hikes have slowed this momentum somewhat. Market and Exposure times are estimated at 6 to 12 months.

### SITE

| Dimensions See Attached Plat Maps | Area 10.00 AC | Shape Rectangular | View Res/Acreage |
|---|---|---|---|

| Specific Zoning Classification A-1 | Zoning Description General Agriculture (Residential in Nature) |
|---|---|

| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) |
|---|

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe. The Highest & Best Use is for continued residential and/or horse farm consistent with its zoning.

| Utilities | Public | Other (describe) | | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity [X] | | [X] Underground | Water | [X] Well w/Softener | Street Asphalt | |
| Gas | | | Sanitary Sewer | [X] Septic | Alley None | [X] |

| FEMA Special Flood Hazard Area [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 12083C0710D | FEMA Map Date 08/28/2008 |
|---|---|---|---|

Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No. If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
The site features a gated entry with an extensive drive leading to an attractively landscaped homesite with gently rolling pastures, oaks, perimeter and three 4-board fenced paddocks set up as a residential horse farm. There is ample room for the addition of an arena to maximize its highest and best use.

### IMPROVEMENTS

| General Description | | Foundation | | Exterior Description materials/condition | | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls Reinf Conc/Gd | | Floors | Tile;Cpt/Avg-Gd |
| # of Stories One | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls CB;Stco/Gd | | Walls | Drywall/Gd |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | | Basement Area 0 sq. ft. | | Roof Surface Dimens Shgle/Gd | | Trim/Finish | Custom/Gd |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 0 % | | Gutters & Downspouts Aluminum/Gd | | Bath Floor | Cer Tile/Gd |
| Design (Style) Traditional | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type Alum Single Hung/Gd | | Bath Wainscot | Tile;FG/Gd |
| Year Built 2017 | | Evidence of [ ] Infestation | | Storm Sash/Insulated No/Yes/Gd | | Car Storage | None |
| Effective Age (Yrs) 4 | | [ ] Dampness [ ] Settlement | | Screens Yes/Gd | | [X] Driveway # of Cars 2 | |
| Attic | None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | | Woodstove(s) # | Driveway Surface Concrete/Asph | |
| [X] Drop Stair [ ] Stairs | | [ ] Other Fuel Elec | | Fireplace(s) # [X] Fence 4-Board | [X] Garage # of Cars 2 | |
| [X] Floor [ ] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck [X] Porch Entry | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool [X] Other Lanai | [X] Att. [ ] Det. [ ] Built-in | |

| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe) |
|---|

Finished area above grade contains: 8 Rooms 3.00 Bedrooms 3.00 Bath(s) 3,253 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) The residence is a custom quality home, and includes: 50 SF covered entry; 421 SF lanai; 596 SF 2-car garage; 10'-13' ceilings with crown molding's, tray and coffers treatments, and fans; custom wood cabinets with granite counters; **

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). ** and stainless appliances; dual HVAC units and water heaters; rear paver patio with hot tub (excluded); island kitchen; built-ins; custom baths and showers. The property also includes a 1,075 SF concrete block and shingle roof barn with 3-stalls, shed -rows, and a storage garage with an attached 260 SF lean-to.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe
The improvements were in average to good overall condition with no major items of deferred maintenance noted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe The size estimates were taken from county records, and verified as reasonably accurate on-site.

Rhodes & Rickolt, PA

File No.    23-176
Case No.

## Residential Appraisal Report

| | | | |
|---|---|---|---|
| There are | 21 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,100,000 to $ 1,999,999 . | |
| There are | 20 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,120,000 to $ 2,000,000 . | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 10579 SW 11th Terrace | 10579 SW 11th Terrace | 10579 SW 11th Terrace | 10681 SW 11th Terrace |
| | Ocala, FL 34476-7655 | Ocala, FL 34476-7658 | Ocala, FL 34476-7659 | Ocala, FL 34476 |
| Proximity to Subject | | 0.00 miles | 0.19 miles SW | 0.14 miles S |
| Sale Price | $ N/A | $ 1,850,000 | $ 1,395,000 | $ 1,650,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 414.24 sq. ft. | $ 428.83 sq. ft. | $ 511.15 sq. ft. |
| Data Source(s) | | MLS # OM637852 | MLS # OM628795 | MLS # OM609578 |
| Verification Source(s) | | PA # 37338-016-00 | PA # 37338-017-00 | PA # 37338-019-00 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing | | Cash | | Cash | | Cash | |
| Concessions | | None Noted | | None Noted | | None Noted | |
| Date of Sale/Time | | 01/31/2023 | | 03/25/2022 | +139,500 | 12/17/2021 | +214,500 |
| Location | Equine Estates | Equine Estates | | Equine Estates | | Equine Estates | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10.00 AC | 10.33 AC | -20,000 | 10.00 AC | 0 | 10.00 AC | 0 |
| View | Res/Acreage | Res/Acreage | | Res/Acreage | | Res/Acreage | |
| Design (Style) | Traditional | Traditional | | Traditional | | Traditional | |
| Quality of Construction | Excellent | Exceptional | --OFF-- | Excellent | | Excellent + | --OFF-- |
| Actual Age | 6 yrs | 17 yrs | | 5 | | 12 yrs | |
| Condition | 4 Eff/Good | 9 Eff/Good | --SET-- | 3 Eff/Good | -16,000 | 6 Eff/Good | --SET-- |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8   3   3.00 | 10   5   3.50 | -15,000 | 8   3   3.00 | 0 | 8   3   3.00 | 0 |
| Gross Living Area | 3,253 sq. ft. | 4,466 sq. ft. | -182,000 | 3,253 sq. ft. | 0 | 3,228 sq. ft. | 0 |
| Basement & Finished | 1,075 SF CB | Solar Heated | | 1,075 SF CB | 0 | 480 SF Aprt | |
| Rooms Below Grade | Gar/3-S Brn/L-to | Screen Pool | -25,000 | Gar/3-S Brn/L-to | | 2,976 SF Barn | -290,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central HVAC | Central HVAC | | Central HVAC | | Central HVAC | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 2-Garage | 3.5-Garage | -25,000 | 2-Garage | 0 | 2-Garage | 0 |
| Porch/Patio/Deck | Entry;Lanai;Pto | CY Entry;2 Lanai's | -20,000 | Entry;Lanai;Pto | 0 | Entry;Big Lanai | -10,000 |
| | | Sec;Sprk;CCTV | 0 | Sprk | 0 | Sprk;Gen | -5,000 |
| | | FP;Drive;Gen | 0 | Gate;Drive;Pddks | 0 | Gate;Drive;Pddks | 0 |
| | Gate;Drive;Pddks | Sum Kit;Kennel | 0 | | | FP's;RV H/up | -15,000 |
| Net Adjustment (Total) | | + X - | $ -287,000 | X + - | $ 123,500 | + X - | $ -105,500 |
| Adjusted Sale Price | | Net Adj. -16% | | Net Adj. 9% | | Net Adj. -6% | |
| of Comparables | | Gross Adj: 16% | $ 1,563,000 | Gross Adj: 11% | $ 1,518,500 | Gross Adj: 32% | $ 1,544,500 |

| | |
|---|---|
| I   X did   did not research the sale or transfer history of the subject property and comparable sales. If not, explain    See Below | |

My research X did   did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) Marion County Property Appraiser
My research   did X did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) Marion County Property Appraiser
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/2022 | None Noted | None Noted | None Noted |
| Price of Prior Sale/Transfer | $1,395,000 | Past 3 Years | Past 3 Years | Past 3 Years |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | Effective Date of Report | Effective Date of Report | Effective Date of Report | Effective Date of Report |

Analysis of prior sale or transfer history of the subject property and comparable sales  Sales 1, 2, and 3 are older sales from within the subject subdivision, while Sales 4, 5, and 6 are from comparable nearby subdivisions/areas.  Sale 1, while most recent, is a larger and superior quality pool home (note quality vs age off-sets), while Sale 2 is above purchase of the subject property adjusted solely for time.  Sale 3 occurred in late 2021, and featured a slightly superior quality home (note age vs quality off-sets) with superior barn and out-building, and was adjusted most significantly for time.  SEE PAGE 4 FOR ADDITIONAL SALES AND NARRATIVE....

Summary of Sales Comparison Approach

The sales form a wide adjusted range of value from $1,323,000 to $1,563,000 with a mean of $1,464,750, and bracket the subject in terms of living area as well as site size and extent of improvements. An estimate above the mean has been concluded based on the strength of Sales 1 and 4 (most recent and reliable), correlated to the subject Sale 2 adjusted for time.

| | |
|---|---|
| Indicated Value by Sales Comparison Approach $ | 1,520,000 |

Indicated Value by: Sales Comparison Approach $ 1,520,000  Cost Approach (if developed) $ 1,461,099  Income Approach (if developed) $ 0

The Sales Comparison Approach is weighted with support provided by the Cost Approach. The Income Approach has been excluded as irrelevant and unreliable. The conclusion above the Cost Approach reflects the strong market still in place in this gated subdivision area and sub-market.

This appraisal is made X "as is,"   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require repair:  Subject to attached

Certification and Limiting Conditions.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is

$ 1,520,000 , as of 11/10/2023 .

NL - Residential 5/2007    This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

APPENDIX - 080

Rhodes & Rickolt, PA

File No.  23-**176**
Case No.

## Residential Appraisal Report

### COST APPROACH/VACANT LAND VALUE ANALYSIS/GATED SOUTH MARION COUNTY SUBDIVISIONS

| | |
|---|---|
| OR Bk 7361/1356; 01/2021; Equine Estates: | 20.12 AC @ $30,567/AC (+ for time) |
| MLS #OM655724; 06/2023; Gated SW 24th  Ave; | 5.31 AC @ $39,360/AC |
| MLS # OM638261;09/2023; **Bellewether**; | 5.64 AC @ $41,667/AC |
| MLS # OM655323; 07/2023; Silver Leaf; | 12.04 AC @ $36,960/AC |
| MLS # J963825; 07/2023; Silver Leaf; | 10.33 AC @ $43,562/AC |
| MLS @ OM662668; 10/2023; Via Paradisus; | 10.30 AC @ $53,338/AC |

The land sales noted above are all similarly located residential and/or agricultural tracts in south Marion County, and bracket the subject in terms of location (inferior as well as superior) and site size. They form an unadjusted range of value from $30,567/AC to $53,338/AC with a mean of $40,909/AC.  An estimate toward the mean has been concluded @ $42,000/AC or: 10.00 AC X $42,000/AC = $420,000, rounded

### ADDITIONAL SITE COMMENTS

The subject is also in very close proximity to the Florida Green way Trails and its associated nearby horse park.

### SITE IMPROVEMENTS/CONTRIBUTORY VALUES

| | |
|---|---|
| Concrete/Asphalt | $45,000 |
| L/scape/Sod/Irrig | 35,000 |
| Fencing/Pddks | 35,000 |
| Gate | 10,000 |
| TOTAL | $125,000 |

*(left margin label: ADDITIONAL COMMENTS)*

### COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  See land sales above which support a value conclusion @ $41,000/AC for the subject site.

| ESTIMATED ☐ | REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 420,000 |
|---|---|---|---|---|---|---|---|
| Source of cost data  Marshall & Swift Tempered with Local Builders | | | Dwelling | 3,253 | Sq. Ft. @ $ 260.00 | =$ | 845,780 |
| Quality rating from cost service  **Exc**  Effective date of cost data  Current | | | Porches | 471 | Sq. Ft. @ $ 65.00 | =$ | 30,615 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Det Barn; 1,075 SF @ $75.00/SF | | | | 80,625 |
| Physical Depreciation is based on the modified age/life method | | | Garage/Carport  596 | | Sq. Ft. @ $ 65.00 | =$ | 38,740 |
| and estimated @ 8% | | | Total Estimate of Cost-new | | | =$ | 995,760 |
| | | | Less  Physical 8  Functional 0  External 0 | | | | |
| | | | Depreciation  79,661 | 0 | 0 | =$ ( | 79,661 ) |
| | | | Depreciated Cost of Improvements | | | =$ | 916,099 |
| | | | "As-is" Value of Site Improvements | | | =$ | 125,000 |
| Estimated Remaining Economic Life (HUD and VA only)  46  Years | | | Indicated Value By Cost Approach | | | =$ | 1,461,099 |

### INCOME APPROACH TO VALUE (if applicable)

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $ | | X Gross Multiplier  **N/A**  =$ | 0 | Indicated Value by Income Approach | |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowner's Association (HOA)? | ☐ Yes ☒ No  Unit type(s)  ☒ Detached  ☐ Attached |
|---|---|

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold | |
|---|---|---|---|
| Total number of **units** rented | Total number of units for sale | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? | Yes | No  If Yes, date of conversion. | |
| Does the project contain any multi-dwelling units? | Yes | **No**  Data source. | |
| Are the units, common elements, and recreation facilities complete? | **Yes** | No  If No, describe the status of completion. | |

| Are the common elements leased to or by the Homeowner's Association? | Yes | No  If Yes, describe the rental terms and options. |
|---|---|---|

Describe common elements and recreational facilities.  Entry gate; roads, swale's and trails.

**Rhodes & Rickolt, PA**
**EXTRA COMPARABLES 4-5-6**

File No.   23-176
Case No.

Owner  Eric Shelly & Margaret Lee
Property Address  10579 SW 11th Terrace
City  Ocala    County  Marion    State  FL    Zip Code  34476-7655
Client  Alex Wietrzykoski    Address  1133 S Madison Ave, Dallas, TX 75208

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | +(-)$ Adjustment | COMPARABLE SALE # 5 | +(-)$ Adjustment | COMPARABLE SALE # 6 | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 10579 SW 11th Terrace Ocala, FL 34476-7655 | 1049 SE 131st Street Ocala, FL 34480 | | 9502 SW 27th Avenue Ocala, FL 34476 | | 2291 SW 76th Lane Ocala, FL 34476 | |
| Proximity to Subject | | 2.88 miles SE | | 1.84 miles NW | | 3.09 miles N | |
| Sale Price | $ N/A | $ 1,225,000 | | $ 1,000,000 | | $ 1,086,500 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 413.99 sq. ft. | | $ 329.06 sq. ft. | | $ 306.40 sq. ft. | |
| Data Source(s) | | MLS # OM654136 | | MLS # OM648085 | | MLS # OM651362 | |
| Verification Source(s) | | PA # 41482-001-18 | | PA # 35699-022-02 | | PA # 35547-012-00 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | Conv Fin | | Cash | | Cash | |
| Concessions | | None Noted | | None Noted | | None Noted | |
| Date of Sale/Time | | 08/07/2023 | | 02/16/2023 | | 08/15/2023 | |
| Location | Equine Estates | Alamar Village | | STR/No Sub | +160,000 | Shady Grove | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10.00 AC | 6.02 AC | +170,000 | 10.00 AC | | 6.80 AC | +140,000 |
| View | Res/Acreage | Res/Acreage | | Res/Acreage | | Res/Acreage | |
| Design (Style) | Traditional | Traditional | | Traditional | | Traditional | |
| Quality of Construction | Excellent | Very Gd +$25/SF | +74,000 | Very Gd +$25/SF | +76,000 | Excellent | |
| Actual Age | 6 yrs | 26 | | 7 | | 24 | |
| Condition | 4 Eff/Good | 12 Eff/Good | +122,000 | 4 Eff/Good | | 15 Eff/Avg | +152,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  3  3.00 | 8  4  3.00 | | 8  4  3.00 | | 9  5  4.00 | -10,000 |
| Gross Living Area | 3,253 sq. ft. | 2,959 sq. ft. | +44,000 | 3,039 sq. ft. | +32,000 | 3,546 sq. ft. | -44,000 |
| Basement & Finished | 1,075 SF CB | 1,296 SF Barn | | Scrn Pool | | None | |
| Rooms Below Grade | Gar/3-S Brn/L-to | 1,440 SF Equ Brn | -65,000 | None | +35,000 | None | +75,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central HVAC | Central HVAC | | Central HVAC | | Central HVAC | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 2-Garage | 3-Garage | -15,000 | 3-Garage | -15,000 | 3-Garage | -15,000 |
| Porch/Patio/Deck | Entry;Lanai;Pto | Entry;Lanai | 0 | Entry;Lanai | 0 | Entry;Cov Pch | 0 |
| | | Irrig;Scrn Pool | -40,000 | 2 Sheds | 0 | Shed;Fnc'd Pool | -40,000 |
| | | Gate;Drive;Pddks | 0 | Drive;Gate | +35,000 | FP;Drive;Pddks | +20,000 |
| | | Clay Arena | -40,000 | | 0 | | 0 |
| Net Adjustment (Total) | | X + ☐ - | $ 250,000 | X + ☐ - | $ 323,000 | X + ☐ - | $ 278,000 |
| Adjusted Sale Price of Comparables | | Net Adj: 20% Gross Adj : 47% | $ 1,475,000 | Net Adj: 32% Gross Adj: 35% | $ 1,323,000 | Net Adj: 26% Gross Adj: 46% | $ 1,364,500 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/2022 | 09/2022 | None Noted | None Noted |
| Price of Prior Sale/Transfer | $1,395,000 | $900,000 | Past 3 Years | Past 3 Years |
| Data Source(s) | County Records | County Records | County Records | County Records |
| Effective Date of Data Source(s) | Effective Date of Report | Effective Date of Report | Effective Date of Report | Effective Date of Report |

Analysis of prior sale or transfer history of the subject property and comparable sales  Sale 4 is in an inferior nearby gated development, and included a smaller and inferior quality pool home with superior barn and out-building  space.  Sale 5 is outside any structured or gated development, and includes an inferior quality pool home with little other features or landscaping. Sale 6, like Sale 4 has less acreage, less any significant out-buildings, but did have a pool.

Summary of Sales Comparison Approach  SEE PAGE TWO

Rhodes & Rickett, PA

File No.    23-176
Case No.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

## SCOPE OF WORK:
The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) research, verify, and analyze data from reliable public and/or private sources, and (2) report his or her analysis, opinions, and conclusions in this appraisal report.

## DEFINITION OF MARKET VALUE:
The definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:
The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser may have provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727

APPENDIX 083
Page 80

File No. 23-176
Case No.

**APPRAISER'S CERTIFICATION:** I certify that, to the best of my knowledge and belief:

1. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

2. I ☐ have ☒ have no present or prospective interest in the property that is the subject of this report and ☐ have ☒ have no personal interest with respect to the parties involved.

3. I ☒ have performed ☐ have not performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of this client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions, were developed, and this report has been prepared, in conformity, with the *Uniform Standards of Professional Appraisal Practice*

8. I ☒ have ☐ have not made a personal inspection of the property that is the subject of this report.

9. Unless otherwise noted, no one has provided significant real property appraisal assistance to the person signing this certification.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Charles E. Rickolt_ | Signature _____ |
| Name    Charles E. Rickolt, SRA | Name _____ |
| Company Name Rhodes & Rickolt, PA | Company Name _____ |
| Company Address 1701 NE 42nd Avenue, Suite 101 | Company Address _____ |
|     Ocala, FL 34470 | |
| Telephone Number (352) 732-2288 | Telephone Number _____ |
| Email Address chuck@rhodesandrickolt.com | Email Address _____ |
| Date of Signature and Report 11/21/2023 | Date of Signature _____ |
| Effective Date of Appraisal 11/10/2023 | State Certification # _____ |
| State Certification # Cert Res RD 860 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State    FL | |
| Expiration Date of Certification or License 11/30/2024 | **SUBJECT PROPERTY** |
| | |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 10579 SW 11th Terrace | ☐ Did inspect exterior of subject property from street |
| Ocala, FL 34476-7655 | Date of Inspection _____ |
| | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,520,000 | Date of Inspection _____ |
| CLIENT | |
| Contact | **COMPARABLE SALES** |
| Client Name    Alex Wietrzykoski | ☐ Did not inspect exterior of comparable sales from street |
| Client Address    1133 S Madison Ave | ☐ Did inspect exterior of comparable sales from street |
| Dallas, TX 75208 | Date of Inspection _____ |
| Email Address | |

Rhodes & Rickolt, PA
**QUALIFICATIONS AND BACKGROUND**

File No.  23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | | County | Marion | State | FL | Zip Code  34476-7655 |
| Lender/Client  Alex Wietrzykoski | | | Address  1133 S Madison Ave, Dallas, TX 75208 | | | |

CHARLES E. RICKOLT, SRA

Professional Organizations/Designations:

Senior Residential Appraiser (SRA), Appraisal Institute
State Certified Residential Appraiser #RD 0000860
Licensed Real Estate Broker #BL 0478602
Ocala Board of Realtors
Florida Association of Realtors
National Association of Realtors
Marion County Chamber of Commerce (Rhodes & Rickolt, PA)

Real Estate Education/Courses & Seminars

Basic Valuation Procedures (AIREA)
Real Estate Appraisal Principles (AIREA)
Residential Evaluation (AIREA)
Standards of Professional Practice (AIREA)
Form Report Seminar (AIREA)
New Construction Seminar (AIREA)
Residential Construction (CFCC)
Real Estate Investment (CFCC)
Regulation Update Seminar (AA)-1993
The New URAR Report (AA)-1993
Standards of Professional Practice (ASA)-1994
SFR & FHA Appraisal Forms (ASA)-1994
Residential Construction Materials & Methods (ASA)-1994
Appraisal Review & HUD Seminar-1995
Electromagnetic Fields & Effects on Real Estate-1995
Appraising Apartments (CFCC)-1996
USPAP Update (CFCC)-1996
The Internet and Appraising (AA)-1997
Alternative Residential Reporting Forms (AA)-1997
Standards of Professional Practice Course 430 (AA)-1998
Construction Materials & Methods (CFCC) -1998
Florida Core Law Update (AA)-1998
Issues in Apartment Appraisal (CFCC)-2000
USPAP Update (CFCC)-2000
Florida Core Law Update (CFCC)-2000
Litigation Skills for the Appraiser (AA-2001)
Real Estate Fraud/Appraiser's Responsibilities (AA-2002)
Florida Core Law/USPAP Update (CFCC)-2002
Appraising The Tough Ones (AA) 2005
New URAR Forms (McKissock) 2005
Many Additional Courses 2006-2022

Expert Witness Testimony

United States District Court, Miami, Florida
Federal Bankruptcy Court, Middle District of Florida
5th Judicial Circuit Court, Marion County, Florida
8th Judicial Circuit Court, Levy County, Florida
Marlborough District Court, Boston, Massachusetts

Personal Background

AA Degree, Central Florida Community College
Manager, Sears, Roebuck & Co. (1973-1986)
Fee Appraiser, Albright & Associates of Ocala, Inc. (1986-1989)
Fee Appraiser & Partner, Rhodes & Rickolt, PA (1989-Present)

Civic Organizations

Centerpoint Community Church, Member
Citizen's Advisory Committee for Board of County Commissioners
Marion County (2001)
Interfaith Emergency Services, Former Board of Directors

APPENDIX - 085

Rhodes & Rickolt, PA
**ADDITIONAL CERTIFICATIONS**

ADDITIONAL CERTIFICATIONS

26    I certify that, to of my knowledge and belief, the reported analyses, opinions and conclusions were developed, and this report has been prepared in conformity with the Requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

27    I certify that the use of this report is subject to the requirements of the Appraisal Institute relating to its duly authorized representatives.

28    As of the date of this report, I Charles E. Rickolt, have completed the requirements of the continuing education program of the Appraisal Institute.

29. I have not appraised or provided services on this property in the past 3 years.

30. This appraisal was prepared for Alex Wietrzykoski for his sole and exclusive use in making a court ordered listing and selling decision. It is not intended for, nor should it be relied upon by any other party for any reason whatsoever. Any additional users must be identified and approved by this appraiser in writing.

Rhodes & Rickolt, PA
**SKETCH ADDENDUM**

File No.    23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City Ocala | | County | Marion | State FL | Zip Code | 34476-7655 |
| Lender/Client Alex Wietrzykoski | | | Address 1133 S Madison Ave, Dallas, TX 75208 | | | |



APPENDIX - 087

Rhodes & Rickolt, PA
**PLAT MAP**

File No.   23-176
Case No.

| | | | | | |
|---|---|---|---|---|---|
| Borrower | | | | | |
| Property Address | 10579 SW 11th Terrace | | | | |
| City  Ocala | County | **Marion** | State | FL | Zip Code  **34476-7655** |
| Lender/Client  Alex Wietrzykoski | | Address  1133 S Madison Ave, Dallas, TX 75208 | | | |



Rhodes & Rickolt, PA
**PLAT MAP**

File No.   23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City   Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client   Alex Wietrzykoski | | | Address   1133 S Madison Ave, Dallas, TX 75208 | | | | |



APPENDIX - 089

Rhodes & Rickolt, PA
**FLOOD MAP ADDENDUM**

File No.   23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City Ocala | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



**Flood Map Legends**

Flood Zones
- Areas inundated by 100-year flooding
- Areas inundated by 500-year flooding
- Areas of undetermined but possible flood hazards
- Floodway areas with velocity hazard
- Floodway areas
- COBRA zone

**Flood Zone Determination**

| | |
|---|---|
| In Special Flood Hazard Area (Flood Zone): | Out |
| Within 250 ft. of multiple flood zones? | Not within 250 feet |
| Community: | 120160 |
| Community Name: | MARION COUNTY |
| Map Number: | 12083C0710D |
| Zone:   X   Panel: 12083C 0710D   Panel Date: | 08/28/2008 |
| FIPS Code:   12083   Census Tract: | 0009.01 |

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when accessing this product. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT, ACCURACY, OR COMPLETENESS OF THIS REPORT INCLUDING ANY WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

Rhodes & Rickolt, PA

**LOCATION MAP ADDENDUM**

File No.    23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | County | | Marion | State | FL | Zip Code  34476-7655 |
| Lender/Client  Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



Produced by ClickFORMS Software 800-622-8727

Rhodes & Rickolt, PA
## SUBJECT PHOTO ADDENDUM

File No.  23-176
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | | | | | | |
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | | County | Marion | State  FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | |



**FRONT OF
SUBJECT PROPERTY**
10579 SW 11th Terrace
Ocala, FL 34476-7655



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

APPENDIX - 092

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**

File No.   23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | | County | Marion | State        FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



STREET SCENE



ADDITIONAL FRONT VIEW



SIDE VIEW

Produced by ClickFORMS Software 800-622-8727

APPENDIX - 093

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**    File No.   23-176
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | | | | | | |
| Property Address | 10579 SW 11th Terrace | | | | | |
| City Ocala | | County | Marion | State | FL | Zip Code 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



SIDE VIEW



REAR VIEW/PATIO



LANAI

Produced by ClickFORMS Software 800-622-8727    Page 16 of 30
APPENDIX - 094

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**

File No. 23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City Ocala | County | | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | | |

LANAI



SIDE VIEW



DRIVEWAY



APPENDIX - 095

Rhodes & Rickolt, PA
## SUBJECT PHOTO ADDENDUM

File No.  23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



BARN/GARAGE FRONT VIEW



REAR VIEW WITH LEAN-TO



SHED-ROW

Produced by ClickFORMS Software 800-622-8727

APPENDIX - 096

Rhodes & Rickolt, PA

## SUBJECT PHOTO ADDENDUM

File No.  23-176
Case No.

| Borrower | | | | | |
|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | |
| City  Ocala | County | Marion | State | FL | Zip Code  34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | |



STORAGE GARAGE



STALL DETAIL



AUTO WATER

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**

File No.    23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City Ocala | | County | Marion | State FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |



REAR YARD



SIDE YARD



FENCED PADDOCKS

Rhodes & Rickolt, PA
## SUBJECT PHOTO ADDENDUM

File No.   23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City Ocala | County | | Marion | State | FL | Zip Code 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | |



FENCED PADDOCKS



LANDSCAPED AREA



LANDSCAPED AREA

Produced by ClickFORMS Software 800-622-8727

APPENDIX - 099

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**

File No. 23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | | |



BARN AREA



REAR PASTURE/PADDOCK



REAR PASTURE/PADDOCK

Rhodes & Rickolt, PA
**SUBJECT PHOTO ADDENDUM**

File No.  23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | | County | Marion | State | FL | Zip Code  34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | |



REAR PASTURE/PADDOCK



VIEW FROM REAR PROPERTY
LIVE



PROXIMITY OF IMPROVEMENTS

Produced by ClickFORMS Software 800-622-8727

Rhodes & Rickolt, PA
ADDITIONAL/INTERIOR PHOTOS

File No.   23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City | Ocala | County | | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |










Rhodes & Rickolt, PA
ADDITIONAL/INTERIOR  PHOTOS

File No.   23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City  Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |










Rhodes & Rickolt, PA
ADDITIONAL/INTERIOR PHOTOS

File No.   23-176
Case No.

| Borrower | | | | | | | |
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City | Ocala | County | | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |










Rhodes & Rickolt, PA
ADDITIONAL/INTERIOR PHOTOS

File No.   23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City  Ocala | | County | Marion | State  FL | Zip Code | 34476-7655 |
| Lender/Client  Alex Wietrzykoski | | | Address  1133 S Madison Ave, Dallas, TX 75208 | | | |

 

 

 

Rhodes & Rickolt, PA
ADDITIONAL/INTERIOR PHOTOS

File No.   23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City  Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | |













Rhodes & Rickolt, PA
**COMPARABLES 1-2-3**

File No.    23-176
Case No.

| Borrower | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | | |
| City  Ocala | | County | Marion | State | FL | Zip Code | 34476-7655 |
| Lender/Client | Alex Wietrzykoski | | Address | 1133 S Madison Ave, Dallas, TX 75208 | | | |



**COMPARABLE SALE #    1**
10579 SW 11th Terrace
Ocala, FL 34476-7658



**COMPARABLE SALE #    2**
10579 SW 11th Terrace
Ocala, FL 34476-7659



**COMPARABLE SALE #    3**
10681 SW 11th Terrace
Ocala, FL 34476

APPENDIX 107
Page 29 of 30

Rhodes & Rickolt, PA
**COMPARABLES 4-5-6**

File No.   23-176
Case No.

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10579 SW 11th Terrace | | | | | |
| City   Ocala | | County | Marion | State | FL | Zip Code   34476-7655 |
| Lender/Client   Alex Wietrzykoski | | | Address   1133 S Madison Ave, Dallas, TX 75208 | | | |



**COMPARABLE SALE #   4**
1049 SE 131st Street
Ocala, FL 34480



**COMPARABLE SALE #   5**
9502 SW 27th Avenue
Ocala, FL 34476



**COMPARABLE SALE #   6**
2291 SW 76th Lane
Ocala, FL 34476

## "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1* **PARTIES:** ~~ALBERT BLACK III -RECEIVER~~  *Albert C. Black, III, Receiver*                    ("Seller"),

2* and              **ATICLE VI TRUST FBO PHILIP G. SILVESTRI**                              ("Buyer"),

3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5   and any riders and addenda ("Contract"):

6   **1. PROPERTY DESCRIPTION:**
7*    (a) Street address, city, zip:          10579 SW 11th TERRACE, OCALA, FL 34476
8*    (b) Located in:    Marion    County, Florida. Property Tax ID #:          3733801700
9*    (c) Real Property: The legal description is Lot 17, EQUINE ESTATES, as per Plat thereof recorded in Plat
10   book 6, Page(s) 97, of the Public Records of Marion County, Florida.
11
12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14   by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16   which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17   purchase: range(s)/oven(s), ~~refrigerator(s)~~, dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18   and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19   television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20   keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*  Other Personal Property items included in this purchase are:
22
23   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*  (e) The following items are excluded from the purchase:
25

26                          **PURCHASE PRICE AND CLOSING**

27* **2. PURCHASE PRICE** (U.S. currency):.................................................................. $    **1,300,000**

28*   (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ............ $    50,000
29   The initial deposit made payable and delivered to "Escrow Agent" named below
30*   **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left blank,
31   then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32   SHALL BE DEEMED SELECTED.
33*   Escrow Agent Name:          Klein and Klein, LLC
34*   Address:    40 SE 11th Ave., Ocala, FL 34471    Phone:    352-732-7750
35*   Email:    randy@kleinandkleinpa.com    Fax:
36*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*   days after Effective Date ......................................................................................... $
38   (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.........
40*   (d) Other:                                                                        ................ $
41   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*   transfer or other Collected funds (See STANDARD S) ............................................... $    **1,250,000**

43   **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*        February 23, 2024      , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46   Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47   the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49   initialed and delivered this offer or final counter-offer ("Effective Date").
50   **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51   received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52   furnished by each party pursuant to this Contract are delivered ("Closing").  Unless modified by other provisions of

53 * this Contract, the Closing shall occur on _____10 days after court approval_____ ("Closing Date"), at the time
54  established by the Closing Agent.

**5.  EXTENSION OF CLOSING DATE:**

55

56  (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57  Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58  checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59  extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60  days.
61  (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62  unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63  extended as provided in STANDARD G.

**6.  OCCUPANCY AND POSSESSION:**

64

65  (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66  to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67  personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68  codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69  to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70  shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71  CLOSING OCCUPANCY BY BUYER.
72  (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73  subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74  Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75  shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76  within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77  occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78  election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80  and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81  be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82  Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83 * **7.  ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 * this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.
85  IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86  **FINANCING**

**8.  FINANCING:**

87

88 * ☒ (a) This is a cash transaction with no financing contingency.
89* ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90* Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91* (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92* adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93* blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30)
94  years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95  of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96  for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").
97* (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98  and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99  Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100  Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101  unless Rider V is attached.

102  Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103  be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104  but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105  and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106  (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107  mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108  of Loan Approval.  Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.

111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.

115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.

120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.

126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.

132 * ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133 * ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(i) is checked)    • Seller's attorneys' fees
140 * • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
141 • Charges for FIRPTA withholding and reporting
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages    • Loan expenses
148 • Recording fees for deed and financing statements    • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
150 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
151 • Lender's title policy and endorsements    • All property related insurance
152 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)     9(c)(iii) is checked)
154 * • Other:_____

155 * (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

165 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166 liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167 **(CHECK ONE):**
168 * ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 * premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171 provider(s) as Buyer may select; or
172 * ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173 services related to Buyer's lender's policy, endorsements and loan closing; or
174 * ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 * furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176 continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177 reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178 continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179 * be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180 search ordered or performed by Closing Agent.
181 (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184 * (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
185 * _____ at a cost not to exceed $_____. A home
186 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193 be paid in installments **(CHECK ONE):**
194 * ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195 Installments prepaid or due for the year of Closing shall be prorated.
196 * ☒ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197 to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198 deemed selected for such assessment(s).
199 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201 (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202 Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212 F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213 Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214 knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215 unpermitted improvements.
216 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217 desires additional information regarding mold, Buyer should contact an appropriate professional.
218 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

221  or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222  Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223  flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224  through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225 * may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226  Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227  obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228  designation of Property.

229  (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230  required by Section 553.996, F.S.

231  (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232  mandatory.

233  (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234  **CONTRACT    UNTIL    BUYER    HAS    RECEIVED    AND    READ    THE    HOMEOWNERS'**
235  **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236  (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237  PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238  PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239  IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240  PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241  COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242  (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243  Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244  and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245  is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246  under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247  V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248  advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249  FIRPTA.

250  (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251  not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252  sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253  implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254  has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255  building, environmental or safety code violation.

256  **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257  **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258  Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259  IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260  **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

261 * (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* __0__ *(if left blank, then 15)*
262  *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263  *performed* **as** *Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264  *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265  *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266  *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267  *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268  *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269  *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270  *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271  *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272  *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273  *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274  *repairs and improvements required by Buyer's lender.*

Buyer's Initials _____ _____         Page **5** of 13         Seller's Initials _ACBI_ _____ _____

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

<strong>ESCROW AGENT AND BROKER</strong>

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

<b>DEFAULT AND DISPUTE RESOLUTION</b>

**15. DEFAULT:**

    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

<b>STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")</b>

**18. STANDARDS:**

    **A. TITLE:**

    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

453 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.

458 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.

464 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.

469 (iii) **FinCEN GTO REPORTING OBLIGATION**. If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS**.**

475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing
478 funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

479 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

490 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N.   1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O.   CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail, facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P.   INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q.   WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R.   RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S.   COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been Collected in Closing Agent's accounts.

**T.   RESERVED.**

**U.   APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V.   FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.
558 (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.
564 (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.
567 (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574 (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.
578 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.
580 **W.  RESERVED**
581 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming* **by, through, under or against the Buyer.** *This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

587                                    **ADDENDA AND ADDITIONAL TERMS**

588 * **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | Line | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☐ O. Insulation Disclosure | ☐ AA. Licensee Property Interest |
| ☐ E. FHA/VA Financing | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ BB. Binding Arbitration |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ CC. Miami-Dade County |
| ☐ G. Short Sale | ☐ R. Rezoning | Special Taxing District |
| ☐ H. Homeowners/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | Disclosure |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy | ☐ DD. Seasonal/Vacation Rentals |
| ☐ J. Interest-Bearing Acct | ☐ U. Post-Closing Occupancy | ☐ EE. PACE Disclosure |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | ☒ Other:_____ |
| ☐ L. RESERVED | ☐ W. Back-up Contract | _____ |
| . | | _____ |

590 * **20. ADDITIONAL TERMS:** This Contract between buyer's and sellers is contingent upon Court Approval
591 process
592 in Civil Action No 6:23-CV-00321 in United States District Court for Western District of Texas Waco
593 Division.
594
595 .
596
597
598
599
600
601
602
603
604
605
606
607

608                                              **COUNTER-OFFER**

609 *        ☐ Seller counters Buyer's offer.

610                          **[The remainder of this page is intentionally left blank.**
611                          **This Contract continues with Line 612 on Page 13 of 13.]**

612 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618 *interested persons.*

619 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620 TO BE COMPLETED.

---

621 **ATTENTION: SELLER AND BUYER**

622 **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623 2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624 certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625 Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626 Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627 **sell property in violation of the Act.**

628 **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629 **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630 the Act.

---

631* Buyer: _Philip G. Silvestri_     Date: February 20, 2024
632* Buyer: _____     Date: _____
633* Seller: _Albert C. Black III_     Date: 02/23/2024
634* Seller: _____     Date: _____

635 Buyer's address for purposes of notice      Seller's address for purposes of notice
636* _____     _____
637* _____     _____
638* _____     _____

639 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644 made by Seller or Listing Broker to Cooperating Brokers.

645*      Connie Thoreson              Lucinda Striker
646 **Cooperating Sales Associate, if any**      **Listing Sales Associate**
647*      Oak & Sage Realty, LLC           COMPASS FLORIDA, LLC
648 **Cooperating Broker, if any**      **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

APPENDIX - 121