IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § § § § § | |
| V. | Case No. 6:23-cv-00321-ADA |
| ROY W. HILL, et al. | |

## RECEIVER'S REPLY IN SUPPORT OF FOURTH INTERIM FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Albert C. Black III ("Receiver") replies to Mr. Hill's objection to his Fourth Interim Fee Application, respectfully stating:

### Introduction

1.  The Fourth Interim Fee Application (Doc. 72) should be granted because the fees and expenses are reasonable and necessary under the applicable factor-test as presented in the application. One of the factors is the lodestar amount of hours worked multiplied by the rate charged (*id.* at 9). The hours worked are established by invoices presented in an accompanying appendix (*id.* & Doc. 73).

2.  Mr. Hill objects to five time entries for a total of 19.5 hours (Doc. 76, at 2). Specifically, Mr. Hill challenges whether Mr. Veech actually "worked" on a "Fairfield report" and a "final report" (*id.*).

3.  The following shows why the Court should conclude Mr. Veech actually spent the time working on these two reports as his invoices assert.

### I. The Court Should Find Mr. Veech Worked on a "Final Report"

4.  Taking first Mr. Veech's assertion that he "worked on" a "final report", these entries are consistent with the preparation of a draft final report that was published in final form

as a part of the Fourth Quarterly Report (Doc. 66, at 2-8). When coupled with the CV in the initial motion to retain Mr. Veech (Doc. 48 at 2-5) and the disclosures regarding compensation in the motion to retain (Doc. 47) and the appendix to this application (Doc. 73), one can see that Mr. Veech has tendered a final report as one might reasonably describe it.

5. To explain, an expert report as defined in the Federal Rules of Civil Procedure is a document that contains:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts and data considered by the witness in forming them;

(iii) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(iv) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(v) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

6. Here, items (i) and (ii) are set forth in the Fourth Quarterly Report (Doc. 66, at 2-8). The report is appropriately contained in the Receiver's quarterly report because the quarterly reports are published to all investors on the Receiver's website, and his findings are of interest to investors. An excerpt of the quarterly report is attached hereto as Exhibit A for reference. As one can immediately see, paragraphs 6-16 and the subparts thereof, contain Mr. Veech's opinions, the basis and reasons for them, and the facts and data considered by the witness in forming them. Items (iii) and (iv) are contained in the CV that was attached to the motion seeking approval of Mr. Veech's retention (Doc. 48, at 2-5). Item (v) is contained in both the motion seeking to retain Mr. Veech for a rate of $325 per hour (Doc. 47) and the appendix attached to this application wherein one can see Mr. Veech's invoices (Doc. 73).

RECEIVER'S REPLY IN SUPPORT OF FOURTH INTERIM FEE APPLICATION – Page 2

7. Of these three parts, Mr. Veech's considered views and findings are set forth in the Fourth Quarterly Report, such that one might correctly refer to that as the "final" report. Additionally, as discussed below, Mr. Veech also produced various interim drafts pertaining to his site visits, such that, again, the final published report is properly referred to as the "final report".

8. So, Mr. Hill is simply wrong that there is no final report.

9. **What Mr. Hill implicitly seeks is** the **final** report as it existed in its draft stages. To see this, one needs to keep in mind that the entries at issue state only that Mr. Veech "worked on" a final report:

| Description | date | time | amount | tax | Sum |
|---|---|---|---|---|---|
| * * * | | | | | |
| worked on final report | 12/21/23 | 3 | 325 | 0.00 | 975.00 |
| worked on final report | 12/22/23 | 4.5 | 325 | 0.00 | 1462.50 |
| worked on final report | 12/26/23 | 2.5 | 325 | 0.00 | 812.50 |

Doc. 73 at 7. As the final report was not published in final form until later, the more reasonable conclusion is that these entries reflect the preparation of a draft or drafts.

10. Mr. Hill's implied criticism that drafts have not been published is inconsistent with what the rules provide in regard to draft expert reports:

> Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

Fed. R. Civ. P. 26(a)(4)(B); *see also* Fed. R. Civ. P. 26(b)(3)(A) & (B) (work product privilege).

11. Frankly, it is hard to credit that Mr. Hill is actually confused about how it can be that Mr. Veech "worked on" a "final report" when it is plain to see that the work product is set out in the Fourth Quarterly Report (see Doc. 76 at 2).

12. Accordingly, the Court should conclude Mr. Hill actually "worked on" on a final report as he said he did.

**II.     The Court Should Find Mr. Veech Worked on a "Fairfield Report"**

1. In addition to contesting the three entries pertaining to a final report, Mr. Hill also objects to two entries recording Mr. Veech "worked on" a "Fairfield report" (Doc. 76, at 2).

2. Here too, the record contains Mr. Veech's invoices reflecting he "worked on a Fairfield report" (Doc. 73, at 7), and the record also contains corroborating material. The record reflects "CETA owns industrial yards in Fairfield and Streetman, Texas" (Doc. 34 at 4) and "The Receiver has identified and secured certain equipment purporting to be coal distillation, carbon capture units, or parts thereof. They are located in three places: a yard in Fairfield; a yard in Streetman; and at a supplier in Corpus Christi" (*id.* at 3). As a part of his work, "Mr. Veech toured the Fairfield and Streetman sites" (Doc. 66 at 3). Mr. Veech's time detail confirms a trip to Fairfield and Streetman on November 15, 2023 (Doc. 73 at 5). A time entry from one of the Receiver's team members indicates he "created tasks based upon Mr. Veech's report" (Doc. 71 at 33). Another entry indicates Veech prepared a report of his inspection of the PWC site as well (*id.* at 34). An entry in the invoice of the Receiver's counsel indicates discussion of "Veech's upcoming report on his recent inspections" (*id*. at 48). It is therefore entirely consistent with the record, and common sense, that Mr. Veech would prepare a report of his inspection of the site in Fairfield and the nearby Streetman site.

3. In objecting to the two time entries that pertain to the Fairfield report, Mr. Hill misconstrues the application's comments concerning the final report and its incorporation into the quarterly report. It is the final report that the application states was presented as a part of the Receiver's quarterly report (Doc. 72 at 1 – "Mr. Hill has advised the Receiver that he objects because the Receiver advised that Mr. Veech would be tendering a final report. Mr. Hill seems unable or unwilling to understand that paragraphs 6-16 of the Receiver's Quarterly Report for the Fourth Quarter of 2023 contain the final report of Mr. Veech (Doc. 66, at 2-8)."). Indeed, as the

application's certificate of conference makes clear, Mr. Hill raised only the question of the final report prior to his objection (*id.* at 12).  He did not seek underlying drafts, neither the initial site reports nor the draft of the final report.[1]

4.   Accordingly, the Court should likewise conclude Mr. Veech "worked on" a "Fairfield report" as he said he did.

## The Remaining Entries and Costs Are Uncontested

5.   Mr. Hill raises no objection (*see* Doc. 76) to the rest of the application as illustrated on this chart:

|          | Hours  | Fees      | Contested Hours | Rate | Total    |
|----------|--------|-----------|-----------------|------|----------|
| October  | 26.75  | 8,693.75  |                 |      |          |
| November | 117.25 | 33,107.50 |                 |      |          |
| December | 63.00  | 20,475.00 | 19.50           | 325  | 6,337.50 |
| January  | 65.00  | 26,807.50 |                 |      |          |
|          |        | 89,083.75 |                 |      |          |
|          | Expenses | 5,087.25 |                 |      |          |
|          | Total Appl'n | 94,171.00 |             | Net Uncontested | 87,833.50 |

## Conclusion

WHEREFORE, the Receiver prays that the Court approve Mr. Veech's fees and costs in full.

---

[1] Nor should he have requested them.  The site visit reports and the draft final report are not subject to production according to Fed. R. Civ. P. 26(a)(4)(B).

RECEIVER'S REPLY IN SUPPORT OF FOURTH INTERIM FEE APPLICATION – Page 5

        Respectfully submitted,

        */s/ Dennis Roossien*
        Dennis L. Roossien, Jr.
        Texas Bar No. 00784873
        MUNSCH HARDT KOPF & HARR, P.C.
        500 N. Akard Street, Suite 4000
        Dallas, Texas 75201-6659
        Telephone: 214.855.7535
        droossien@munsch.com

        COUNSEL FOR RECEIVER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

        */s/ Dennis Roossien*