IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § <br> § <br> Plaintiff, § <br> § <br> V. § <br> § <br> ROY W. HILL, ERIC N. SHELLY, § <br> CLEAN ENERGY TECHNOLOGY § <br> ASSOCIATION, INC., and § <br> FREEDOM IMPACT CONSULTING, LLC, § <br> § <br> Defendants. § | Case No. 6:23-cv-00321-ADA |

## RECEIVER'S QUARTERLY REPORT FOR THE FIRST QUARTER OF 2024

Receiver Albert C. Black III ("Receiver") provides this quarterly report for the period January 1, 2024 through March 31, 2024, respectfully stating:

### Introduction

1. This quarterly report is made pursuant to the requirements of the Order Appointing Receiver ("Appointment Order") (Doc. 8, at 16, para. 53).

**I.  SUMMARY OF THE OPERATIONS OF THE RECEIVER**

2. During the first quarter of 2024, the Receiver engaged in the following principal activities:

**A.  Interim Distribution and Liquidation**

3. As reported in the Receiver's last quarterly report, an interim distribution has been delayed due to the objection of Roy Hill to the making of an interim distribution. A distribution will be delayed until the Court can rule on Mr. Hill's objection. The timing of that ruling will depend upon the demands of the Court's docket.

4.      During the first quarter of 2024[1], the Receiver prepared and filed a motion asking the Court to resolve the objection of Roy Hill to making an interim distribution and liquidating the CETA equipment. Roy Hill's response deadline was extended, such that it is presently due on May 1, 2024. The Receiver intends to file a reply, if any, promptly thereafter. The motion will then be fully briefed and will await the Court's determination.

**B. Claims Work**

5.      During the first quarter of 2024, one of the larger tasks undertaken by the Receiver's staff and his counsel was to make use of the forensic work product summarizing the extensive CETA bank records in order to apply the information to the claims received from investors and/or their agents. A methodology was designed, and work commenced to compare the investor claims to the bank records. As noted in the last report, during the first quarter of 2024, it was determined that a significant number of claimants omitted net winnings, which will reduce the overall claim amount. The claims work continued into the second quarter.

**C. Potential Claims**

6.      As reported last quarter, the forensic analysis provided details as to the potential claims against Roy Hill's Trust #2 and the Allen Brothers business and family members. During the first quarter of 2024, the Receiver stepped up efforts to obtain documents from counsel for the Allen Brothers, and was able, through the use of a subpoena, to obtain sufficient records for the Receiver to analyze those potential claims in more detail. The Receiver will be working on these claims further in the second quarter.

**D. Shelly Personal Assets and Liabilities**

7.      During the first quarter of 2024, Shelly sold two additional properties and received a tax refund, with which he eliminated his remaining Kensington debt to eliminate carrying costs on that debt, and cooperated with the Receiver in paying insurance and property taxes on the

remaining investment properties. Shelly also cooperated in the marketing efforts for his Florida home, and a sale was agreed upon and approved by the Court, with closing to occur in the second quarter.

8.   As Shelly and the SEC have not yet resolved the extent of civil penalties to be charged against the Shelly assets, the Receiver is seeking principally to maintain the status quo with regard to the Shelly assets, except to the extent that liquidation reduces overall debt service or other costs to maintain certain assets.

### E. Unibank Controversy

9.   The receiver has been advised by Unibank that it opposes distributions to investors who borrowed funds in order to invest in CETA projects, and those investors have advised that Unibank should be held responsible for its role in this matter. The Receiver will continue to monitor this parallel controversy, and seek direction if needed prior to making such distributions.

### F. Other Receivership Activities

10.  As a result of the need to obtain a Court determination in regard to the CETA assets, the Receiver continued to take steps to secure and/or store the CETA equipment.

11.  The Receiver has complied with administrative requirements and document requests.

12.  The Receiver has interacted with the parties to the main action.

## II. SUMMARY OF ASSETS AND LIABILITIES

### A. Cash versus Administrative Expenses

13.  The receivership estate's combined cash and publicly traded liquid securities is reflected on the attached Exhibit A. The amount is $65,872,934.60.

14.  As of the end of the fourth quarter, the Receiver's professionals have been paid $660,165.65.

B. **Receipts and Disbursements**

15. Exhibit A shows receipts and disbursements for the quarter and since inception.

C. **Receivership Assets**

### CETA Cash

16. As reflected on the attached Exhibit A, the value of the receivership estate's combined cash and publicly traded liquid securities was $65,872,934.60

### Shelly Investments and Real Estate

17. Shelly's cash, investments and real estate are reported on Exhibit B hereto. Their value is estimated at approximately $7 million. The Court has approved the sale of the Ocala property, which is set to close in the second quarter. Other than his mortgage, Shelly has no liabilities.

### CETA Equipment, Vehicles, and Real Estate

18. The CETA equipment has been determined to have essentially salvage value.

19. The vehicles are being liquidated and some proceeds have been included on Exhibit A. Some vehicles lack titles and some had small liens, and that is being addressed.

20. CETA owns industrial yards in Fairfield and Streetman, Texas. The value has not been determined.

21. CETA Land and Mineral Investments, Inc. appears to own a few lots of limited value in Caddo Parish, Louisiana. The value has not been determined.

### Hill Assets

22. Mr. Hill does not appear to have material assets denominated in his own name. Mr. Hill is reportedly and apparently being supported by the assets of Trust No. 2 and/or family members.

D. **Claims Held by the Receivership Estate**

23. Mr. Hill transferred approximately $11 million dollars to "Trust No. 2", which owns the house where he often lives and other property. An accounting of these transfers has now been prepared, and the Receiver will be pressing the question of how Trust No. 2 will address these improper transfers of investor funds.

24. CETA transferred closer to $6 million in respect of the Allen Brothers business, not only to settle a family dispute over ownership, but also to provide counsel to one side of the family. Additionally, some funds were employed to enhance oil and gas operations.

25. With the benefit of a forensic compilation of the bank records, it is now clear that certain investors in earlier periods received back more than they invested. This issue remains somewhat clouded due to the use of intermediary entities through which investments were pooled. The Receiver is working to complete this accounting, and weigh the cost/benefit of the estate's claw-back rights.

E. **Claims of Creditors Against the Receivership Estate**

26. The Receiver has compiled a working claims ledger.

27. In regard to investor claims, with the benefit of the above-described forensic accounting, the investor claims will be examined and verified or adjusted. An updated claims list will be presented.

28. As previously reported, five vendor claims totaling $1,381,268.85 have been submitted.

29. Claims and claim inquiries may be submitted through the former CETA website, located at www.cetaenergy.com.

F. **Creditor Claims Proceedings**

30.   Claims have slowed and the Receiver believes he has received substantially all of the claims, and the Receiver also has a bank records summary from which to determine whether all investors have been identified.

31.   The Receiver is using the forensic work product to conduct a detailed claims review, so that an interim distribution can be made if the Court determines that an interim distribution should occur for the reasons discussed above.

III.   **CONTINUATION OF THE RECEIVERSHIP**

32.   This topic is covered in detail in the Receiver's prior reports. The basic situation has not changed, and therefore the Receiver recommends that the receivership be continued.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone:  214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of April, 2024, a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

*/s/ Dennis Roossien*