IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| V. | § | Case No. 6:23-cv-00321-ADA |
| ROY W. HILL, et al. | § § § | |

### RECEIVER'S UNOPPOSED FIFTH INTERIM FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Albert C. Black III ("Receiver") submits this unopposed Fifth Interim Fee Application, respectfully stating:

### Introduction

1.     This Application seeks the Court's approval of the fees and expenses incurred during the period of January 1, 2023 through March 31, 2023, with the exception of the fees and expenses of Mr. Veech, which are contested and therefore have been presented in a separate Receiver's Fourth Interim Fee Application.

2.     The Receiver has filed a corresponding status report that summarize his efforts during this period, identifies the assets and liabilities of the receivership estate, and provide other information pertinent to this application (Doc. 79).  Additionally, some of the work product can be seen in the Receiver's interim report for the fourth quarter of 2023, which was created and produced during the period covered by this application (Doc. 66).

3.     The services provided to implement the appointment order are detailed below and in the accompanying appendix.

### Amount Sought

4.     This application seeks approval to pay administrative costs of $175,047.24.

**Services Provided**

5.    During the first quarter of 2024, one of the larger tasks undertaken by the Receiver's staff and his counsel was to make use of the forensic work product summarizing the extensive CETA bank records in order to apply the information to the claims received from investors and/or their agents.  A methodology was designed, and work commenced to compare the investor claims to the bank records.  In the course of this work, the Receiver's staff and his counsel were able to discern that many of the claims from the earliest investors had omitted investments in which they had received Ponzi returns, such that, in fact, these parties were net winners and therefore not entitled to share in distributions.  This work continued into the second quarter.

6.    The examination of the forensic work product also permitted the Receiver's staff and his counsel to more closely analyze possible claims to recover diverted investor funds.  The Receiver determined approximately $51 million went to net winners, about $11 million went to Roy Hill's Trust #2, nearly $6 million went to members of the Allen family or to pay items their benefit and/or the Allen Brothers business, and over $73 million went to vendors or CETA employees.  Trust #2, in turn, used the funds for the benefit of Mr. Hill's lifestyle and that of his ex-wife and other persons close to him.  The payments generally described as being to the Allen Brothers went to legal fees to support litigation among the owners of that family business and to fund a line of credit that was used in part to settle that litigation and in part to enhance the oil and gas operations of the Allen Brothers business.  As CETA was a Ponzi scheme, these transfers are presumptively fraudulent transfers, and thus recoverable under applicable law.  The Receiver's counsel accordingly conducted a cost-benefit analysis of whether to pursue such claims, and concluded it was likely that it was likely appropriate to pursue Trust #2 and the Allen Brothers.

The Receiver's staff also conducted supplemental searches of CETA records to assess the reasons why certain parties received CETA payments.

7.      In regard to the Allen Brothers, the Receiver stepped up efforts to obtain documents necessary to analyze the question of what value CETA actually received from those transfers. If the value received by CETA in exchange was reasonably equivalent to the amounts transferred, then the Allen Brothers company and related parties would be entitled to retain the funds. These efforts included communications with counsel for the Allen Brothers, and, when that failed, issuing a subpoena, which did result in the production of documents. As documents were received, the Receiver included in his staff an oil and gas expert, who began to support the analysis of the assets of the Allen Brothers, whose value supposedly increased as a result of the deployment of CETA funds and whose value supposedly justified transfers to family members to buy out their interests in the company and various assets. The work continued into the second quarter.

8.      The Receiver's counsel also summarized the forensic findings in his interim report for the fourth quarter of 2023.

9.      The Receiver also worked with Byron Veech to complete his final report, which was also presented as a part of the Receiver's interim report. Mr. Veech's report made clear that the CETA technology does not have value. Based upon this, the Receiver's counsel sought Mr. Hill's agreement to an interim distribution of the majority of the CETA cash, as well as the liquidation of the CETA equipment, and, when that was not forthcoming, prepared and submitted a contested motion to resolve the dispute. Meanwhile, pending resolution of this dispute, the

Receiver continued to expend funds to secure and/or to store the equipment, and to maintain the CETA real estate.[1]

10.    The Receiver and his counsel also worked on approved liquidation efforts, including marketing Shelly's house in Ocala and filing the necessary motions to sell that property, preparing an accounting of Shelly's liquidation of certain other properties, and pursuing titles for certain vehicles.

11.    The Receiver's staff and his counsel addressed various investor inquiries.

12.    The Receiver and his counsel facilitated further production of documents to Roy Hill and his counsel.

13.    The Receiver and his staff coordinated measures to address environmental hazards at the CETA industrial sites.

14.    The Receiver himself provided strategic direction and oversight for the foregoing efforts.

15.    The Receiver's counsel and his staff kept up an accounting, filed appropriate reports, and worked on transitioning the CETA brokerage account from Wells Fargo.

16.    The Receiver's accountants began the process of complying with federal tax reporting obligations relative to the QSF treatment of the receivership estate.

17.    Statements further detailing the efforts of the Receiver and his professionals, as well as the costs incurred, are detailed in the accompanying appendix. The following chart summarizes the statements, which appear in the appendix in the order stated on the chart:

---

[1] These expenses are included on the New Horizons statements – even though this are business asset expenses, they are being disclosed because they are being provided by New Horizons. The total for the first quarter is $97,402.09.

| Firm | Month | Amount |
|------|-------|--------|
| Receiver | January | 3,546.00 |
| Receiver | February | 5,490.00 |
| Receiver | March | 3,690.00 |
| New Horizons - Prof'l | January | 28,350.05 |
| New Horizons - Prof'l | February | 32,810.30 |
| New Horizons - Prof'l | March | 26,138.77 |
| Munsch Hardt | January | 13,485.95 |
| Munsch Hardt | February | 19,661.50 |
| Munsch Hardt | March | 36,275.26 |
| Jered Perez | January | 2,397.20 |
| Ahuja & Clark | Jan-Mar | 3,202.21 |
| | | 175,047.24 |

**Application of Johnson Factors**

18.     The primary concern in regard to professional fees is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984).  In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714 (5th Cir. 1974).  Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

19.     The following reviews this Application with regard to each of the *Johnson* factors:

(a)     The time and labor required.  The time and labor required are set forth in detail in the statements contained in the accompanying appendix.

(b)     The novelty and difficulty of the questions.  The questions addressed by the professionals herein are common to enforcement receiverships generally, but handling such receivership cases is a narrow specialty requiring experienced professionals conversant with a substantial body of largely common law and customary practice.

(c)     The requisite skill to perform the service.  The fiduciary and legal services required the employment of individuals possessing considerable experience and capacity in handling equity receiverships.  The Receiver, his counsel, and his support staff have considerable

experience in these areas.  The Receiver's support team also includes persons with more general administrative and logistical capacities of they type ordinarily required to administer assets such as those present in this case, to make business judgments, and to otherwise execute certain administrative functions.

(d)     <u>The preclusion of other employment due to the acceptance of the case</u>.  The Receiver and his professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e)     <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Western District of Texas and in the case of the Receiver and his professionals.  Both the Receiver and his counsel have discounted their standard rates by ten percent and agreed to a $65,000 cap for the first month of the case.

(f)     <u>Whether the fee is fixed or contingent</u>. The Receiver and his professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets.

(g)     <u>Time limitations imposed by the client or other circumstances</u>. The early steps in the receivership were conducted on an emergent basis.  Thereafter, the Receiver and his professionals have generally not faced unusual time pressures.

(h)     <u>The amount involved and the results obtained</u>.  The amount involved in this case can be measured in a number of ways.  First, this case involves invested funds of approximately $300 million and a net cash loss in excess of $200 million.  Second, the remaining assets have a presently estimated market value of over $70 million.  Third, this case involves

substantial investments by over 800 investors who are entitled to know what actually happened and to address the tax implications of what occurred with the benefit of accurate knowledge. The results obtained are many, including the implementation of the asset freeze, the halting of the fraudulent conduct both through the asset freeze and the provision of accurate and truthful information, the winding up of the CETA operations and all that entails, the interim resolution of claims and inquiries, and the proper administration of a receivership estate. Ultimately, this case will provide both restitution to investors and proper payment of other claims consistent with applicable law.

        (i)      The experience, reputation and ability of the attorneys. Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion. The Receiver and his counsel have also served as receivers or participated in other receiverships. The reputations of the Receiver and his counsel are recognized and respected in their community and area of practice.

        (j)      The undesirability of the case. The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

        (k)      The nature and length of the professional relationship with the client. This is not a factor with regard to this engagement.

        (l)      Award in similar cases. The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases.

## **Certification**

The undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof.  Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that he has read this Application, that to the best of his knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that he has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, he requests reimbursement only for the amount billed by and paid to the vendor and he is not making a profit on any reimbursable services provided by him.

## **Conclusion**

WHEREFORE, the Receiver prays that the Court approve the administrative expenses sought herein.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone:  214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

## CERTIFICATE OF CONFERENCE

I hereby certify that this motion is not opposed by the Plaintiff [nor Roy Hill], who are the only parties who have appeared through counsel.

*/s/ Dennis Roossien*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

*/s/ Dennis Roossien*