IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § Plaintiff, § § V. § § ROY W. HILL, ERIC N. SHELLY, § CLEAN ENERGY TECHNOLOGY § ASSOCIATION, INC., and § FREEDOM IMPACT CONSULTING, LLC, § § Defendants. § § | Case No. 6:23-cv-00321-ADA |

**RECEIVER'S QUARTERLY REPORT FOR THE SECOND QUARTER OF 2024**

Receiver Albert C. Black III ("Receiver") provides this quarterly report for the period April 1, 2024 through June 30, 2024, respectfully stating:

**Introduction**

1.  This quarterly report is made pursuant to the requirements of the Order Appointing Receiver ("Appointment Order") (Doc. 8, at 16, para. 53).

**I.  SUMMARY OF THE OPERATIONS OF THE RECEIVER**

2.  During the second quarter of 2024, the Receiver engaged in the following principal activities:

**A. Interim Distribution and Liquidation**

3.  As reported in the Receiver's last quarterly report, an interim distribution has been delayed due to the objection of Roy Hill to the making of an interim distribution. A distribution will be delayed until the Court rules on Mr. Hill's objection. The timing of that ruling will depend upon the demands of the Court's docket.

RECEIVER'S QUARTERLY REPORT – Q2 2024 – Page 1

4.     On April 1, 2024, the Receiver filed a Motion for Instructions, proposing to liquidate the CETA equipment and to make an interim distribution of the majority of the funds held by the Receiver (Doc. 75).

5.     On May 6, 2024 that Hill filed a response opposing that course of action (Doc. 80), in which he asserted the equipment should be retained and an operational demonstration should be made for the benefit of parties who might be interested in the equipment.  He identified two such parties who indicated they would either have an interest in looking at the equipment or believed they could bring others who would (Docs. 80, 81-1, & 81-2).  One such party is the Director of the Office of Economic Transformation at the Gillette College Foundation.  He became interested in CETA just before the receivership was imposed.  The other is Douglas Matheney, who is not presently employed but who indicates he is an "energy consultant".  He was previously employed with the Department of Energy for a short time under the Trump administration, and, during that time, arranged an inspection of the CETA equipment in 2017.  (That inspection found deficiencies similar to those of the Receiver's expert six years later.)  Neither party is a potential end-user of the equipment, but instead are persons who present themselves as potentially able to attract others to view the equipment.

6.     On May 10, 2024, the Receiver replied (Doc. 84), taking the position that neither of the two leads offered by Hill was promising, and recommending that Hill's proposal be rejected. The Receiver believes Hill has had many years to demonstrate the prototypes of the equipment and therefore does not believe that another demonstration is likely to lead to a different result.

7.     On May 13, 2024, the Court referred consideration of the matter to Magistrate Judge Derek T. Gilliland (Doc. 85).

8.     On May 29, 2024, Hill filed a supplemental response that included a further letter from Mr. Matheney (Doc. 87).

RECEIVER'S QUARTERLY REPORT – Q2 2024 – Page 2

9.   On July 18, 2024, Hill filed a motion seeking a hearing (Doc. 91), and again submitted further late evidence in the form of declarations from the same two people.

10.   On July 25, 2024, the Receiver responded and opposed the holding of a hearing, whether for argument or evidence, pointing out that the matter is fully briefed and there are no factual disputes, and that no delay should occur to prevent the Magistrate from issuing a report and recommendation.

B.   **Claims Work**

11.   During the second quarter, work continued to reconcile claims against the bank records, and to develop additional information concerning transfers that appear to be to net winners. The Receiver intends to issue letters directly to investors with claim determinations or questions.

C.   **Potential Claims**

12.   As reported previously, the forensic analysis provided details as to the potential claims against Roy Hill's Trust #2 and the Allen Brothers' business and family members.

13.   During the second quarter of 2024, in regard to the Allen Brothers, the Receiver's counsel compiled the documents obtained to date and presented a detailed analysis to counsel for the Allen Brothers. This led to a further exchange of information and discussion. In general, the Receiver determined the following facts. The Allen Brothers business is a multi-generational family business that is based in and around Caddo Lake, which has been explored for more than a century. In the 1950s, Dub Allen began fixing up old wells and generating production. In the 2020 timeframe, the business was not doing well, and there were disputes among the family members over ownership. One side of the family took action to interrupt the sales of oil, and the primary oil purchaser suspended payments to the business. Roy Hill is related to the other side of the family by marriage. For several years, Hill used CETA funds passed through Trust #2 to

replace the oil revenue payments, ultimately expending approximately $1.7 million while the suspended oil proceeds grew correspondingly.  Meanwhile, the competing sides of the family engaged in litigation.  In the Spring of 2023, the case was settled.  Wells Fargo records indicate CETA expended over $5.3 million to fund the settlement, but, it is now clear, only approximately $3.6 million actually made its way to the settlement escrow, the balance of the settlement was funded with the suspended funds from the oil purchaser, and the difference of approximately $1.7 million did not go to the Allen Brothers business.  This determination has caused the Receiver to pursue additional Wells Fargo bank records to further trace the missing $1.7 million, as the notations in the Wells Fargo records indicating the funds were employed for the purpose of the settlement do not fit with documents now provided by the Allen Brothers.  At present, it appears Hill's use of CETA funds led to a much larger settlement than would otherwise have occurred, and the $5 million note is not supported by adequate collateral to support the net $3.6 million contributed by CETA to the settlement.  The Receiver is presently assessing next steps in light of the results of his investigation into the Allen Brothers transactions.

14. During the second quarter, the Receiver also put together more detailed materials in relation to the transfers to Trust #2 and engaged in some communications with Hill's counsel relative to whether there was any equivalent value provided in exchange.  Based upon the response from Hill's counsel, the Receiver is presently inclined to pursue claims against Trust #2.

15. During the second quarter, the Receiver obtained a requested protective order, which resulted in the production of additional information pertaining to transfers to net winners.  The Receiver is presently evaluating that information.

D. **Shelly Personal Assets and Liabilities**

16. During the second quarter of 2024, the closing on Shelly's Florida home occurred, with the results reflected on Exhibits A and B hereto in regard to the proceeds of the personal asset liquidation and the corresponding reduction in Shelly real estate.

17. As Shelly and the SEC have not yet resolved the extent of civil penalties to be charged against the Shelly assets, the Receiver continues to seek principally to maintain the status quo with regard to the Shelly assets.

E. **Unibank Controversy**

18. As previously reported, the receiver has been advised by Unibank that it opposes distributions to investors who borrowed funds in order to invest in CETA projects, and those investors have advised that Unibank should be held responsible for its role in this matter. The Receiver continued to monitor this parallel controversy.

F. **Other Receivership Activities**

19. As a result of the need to obtain a Court determination in regard to the CETA assets, the Receiver continued to take steps to secure and/or store the CETA equipment, and the Receiver also more fully analyzed and addressed environmental concerns at the industrial sites on an inerim basis.

20. The Receiver has complied with administrative requirements and document requests.

21. The Receiver has interacted with the parties to the main action.

II. **SUMMARY OF ASSETS AND LIABILITIES**

A. **Cash versus Administrative Expenses**

22. The receivership estate's combined cash and publicly traded liquid securities is reflected on the attached Exhibit A. The amount is $66,828,211.51.

23. As of the end of the fourth quarter, the Receiver's professionals have been paid $835,570.12.

B. **Receipts and Disbursements**

24. Exhibit A shows receipts and disbursements for the quarter and since inception.

C. **Receivership Assets**

CETA Cash

25. As reflected on the attached Exhibit A, the value of the receivership estate's combined cash and publicly traded liquid securities is $66,828,211.51.

Shelly Investments and Real Estate

26. Shelly's cash, investments and real estate are reported on Exhibit B hereto. The investments and real estate have an estimated value of approximately $5.6 million. The cash included in the SFAR total is approximately $1.5 million. Other than his mortgage, Shelly has no liabilities.

CETA Equipment, Vehicles, and Real Estate

27. The CETA equipment has been determined to have essentially salvage value.

28. The vehicles are being liquidated and proceeds have been included on Exhibit A as business asset liquidation proceeds.

29. CETA owns industrial yards in Fairfield and Streetman, Texas. The value has not been determined.

30. CETA Land and Mineral Investments, Inc. appears to own a few lots of limited value in Caddo Parish, Louisiana. The value has not been determined.

### Hill Assets

31. Mr. Hill does not appear to have material assets denominated in his own name. Mr. Hill is reportedly and apparently being supported by the assets of Trust No. 2 and/or family members.

**D. Claims Held by the Receivership Estate**

32. As reported above, during the second quarter, the Receiver continued to refine the details in relation to potential claw-back claims. The Allen Brothers transfer total amount has been reduced to $3.6 million, and the lack of reasonably equivalent value is now clear. The Trust #2 transfers total has been refined to approximately $10.6 million dollars, and the lack of reasonably equivalent value is now clear. The potential for net winner claims remains under review.

**E. Claims of Creditors Against the Receivership Estate**

33. The Receiver has compiled a working claims ledger.

34. In regard to investor claims, with the benefit of the above-described forensic accounting, the investor claims is examining, verifying, and, as appropriate, adjusting claims. The Receiver intends to engage in individual investor communications before an updated claims ledger is presented.

35. The Receiver has reached compromises with certain vendors and intends to continue to work through vendor claims.

36. Claims and claim inquiries may be submitted through the former CETA website, located at www.cetaenergy.com.

**F. Creditor Claims Proceedings**

37. Claims have slowed and the Receiver believes he has received substantially all of the claims, and the Receiver also has a bank records summary from which to determine whether all investors have been identified. This work has, thus far, provided indications of as many as two

hundred additional investors who have not submitted claims. These indications are being reconciled against other records.

38. The Receiver is working to be in position to make an interim distribution if the Court determines that an interim distribution should occur for the reasons discussed above.

### III. CONTINUATION OF THE RECEIVERSHIP

39. This topic is covered in detail in the Receiver's prior reports. The basic situation has not changed, and therefore the Receiver recommends that the receivership be continued.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: 214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

### CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2024, a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

*/s/ Dennis Roossien*