IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § |
| V. | § § § Case No. 6:23-cv-00321-ADA |
| ROY W. HILL, et al. | § § |

### RECEIVER'S UNOPPOSED SIXTH INTERIM FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Albert C. Black III ("Receiver") submits this fee application, respectfully stating:

### Introduction

1. This Application seeks the Court's approval of the fees and expenses incurred during the period of April 1, 2024 through June 30, 2024, with the exception of the fees and expenses of Mr. Veech, which are contested and therefore have been presented in a separate Receiver's Fourth Interim Fee Application.

2. The Receiver has filed a corresponding status report that summarize his efforts during this period, identifies the assets and liabilities of the receivership estate, and provide other information pertinent to this application (Doc. 94).

3. The services provided to implement the appointment order are detailed below and in the accompanying appendix.

### Amount Sought

4. This application seeks approval to pay administrative costs of $138,259.05.

### Services Provided

5. During the second quarter of 2024, the Receiver's team continued to communicate with investors, gather claims documentation, and execute the claims review protocol developed in

RECEIVER'S UNOPPOSED SIXTH INTERIM FEE APPLICATION – Page 1

the previous quarter. This included obtaining a protective order in order to provide a claims accounting from a promoter. The Receiver's counsel also worked to address failures of banks to provide full and complete records.

6. The Receiver's counsel and certain of his team members continued to develop facts pertaining to the Allen Brothers transfers, and to collect and analyze documents produced relative to the value of the Allen Brothers business. This work included preparing a detailed analysis of the settlement transaction funded by CETA based upon CETA documents, bank records, and document produced pursuant to a subpoena to the Allen Brothers.

7. The Receiver's counsel began working on pleadings necessary to pursue court approval of potential fraudulent transfer claims as identified in the Receiver's reports.

8. The Receiver's counsel prepared a reply to Mr. Hill's objection to the fee application of the Receiver's expert, Byron Veech.

9. The Receiver's counsel and his team cooperated with third-party document requests pertaining to parallel proceedings pertaining to investor loans provided by Unibank and pertaining to bank class action.

10. The Receiver's counsel analyzed the response of Mr. Hill to the Receiver's recommended course of action relative to an interim distribution and liquidation of the CETA equipment, and prepared and submitted a reply.

11. The Receiver monitored the status of certain environmental conditions identified at the CETA industrial sites, assessed interim measures to address them pending Court review of the Receiver's recommendation to liquidate the CETA equipment, and directed such measures.

12. The Receiver's counsel assessed and make recommendations relative to a pending patent application in light of the rejection of the application by the Patent and Trademark Office,

and the need for Court direction as to whether to abandon such efforts as recommended by the Receiver.

13. The Receiver's team and counsel negotiated a consensual resolution of the Agilent vendor claim.

14. The Receiver's team continued to monitor and account for sales of vehicles and obtain lien releases.

15. The Receiver and his team collected and analyzed records indicating possible additional Hill assets.

16. The Receiver and his counsel worked through requests of Bank of America relative to the transition of the CETA brokerage account per the request of Wells Fargo, including preparing and submitting a motion requested by Bank of America's compliance department.

17. The Receiver's counsel and accountant analyzed Eric Shelly's annotated bank records, various requests for payment of property taxes and property insurance, and compiled a quarterly cash accounting and recommendations relative to payment from Shelly funds in the possession of the Receiver.

18. The Receiver addressed certain maintenance issues relative to Eric Shelly's second house in Florida, and took the steps necessary to effect a closing on the sale of that property.

19. The Receiver and his team complied with the administrative obligations imposed by the appointment order, including preparation and submission of the Receiver's quarterly report and accompanying accounting.

20. Statements further detailing the efforts of the Receiver and his professionals, as well as the costs incurred, are detailed in the accompanying appendix. The following chart summarizes the statements, which appear in the appendix in the order stated on the chart:

| Firm | Month | Amount |
|---|---|---|
| Receiver | April | 5,472.00 |
| Receiver | May | 3,888.00 |
| Receiver | June | 5,148.00 |
| New Horizons - Prof'l | April | 26,732.02 |
| New Horizons - Prof'l | May | 26,807.67 |
| New Horizons - Prof'l | June | 24,336.62 |
| Munsch Hardt | April | 25,067.20 |
| Munsch Hardt | May | 20,807.54 |
| Munsch Hardt | June | 18,192.50 |
| | | 138,259.05 |

**Application of Johnson Factors**

21. The primary concern in regard to professional fees is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

22. The following reviews this Application with regard to each of the *Johnson* factors:

    (a)   <u>The time and labor required</u>. The time and labor required are set forth in detail in the statements contained in the accompanying appendix.

    (b)   <u>The novelty and difficulty of the questions</u>. The questions addressed by the professionals herein are common to enforcement receiverships generally, but handling such receivership cases is a narrow specialty requiring experienced professionals conversant with a substantial body of largely common law and customary practice.

    (c)   <u>The requisite skill to perform the service</u>. The fiduciary and legal services required the employment of individuals possessing considerable experience and capacity in handling equity receiverships. The Receiver, his counsel, and his support staff have considerable experience in these areas. The Receiver's support team also includes persons with more general

administrative and logistical capacities of they type ordinarily required to administer assets such as those present in this case, to make business judgments, and to otherwise execute certain administrative functions.

(d)     <u>The preclusion of other employment due to the acceptance of the case</u>. The Receiver and his professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e)     <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Western District of Texas and in the case of the Receiver and his professionals. Both the Receiver and his counsel have discounted their standard rates by ten percent and agreed to a $65,000 cap for the first month of the case.

(f)     <u>Whether the fee is fixed or contingent</u>. The Receiver and his professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets.

(g)     <u>Time limitations imposed by the client or other circumstances</u>. The early steps in the receivership were conducted on an emergent basis. Thereafter, the Receiver and his professionals have generally not faced unusual time pressures.

(h)     <u>The amount involved and the results obtained</u>. The amount involved in this case can be measured in a number of ways. First, this case involves invested funds of approximately $300 million and a net cash loss in excess of $200 million. Second, the remaining assets have a presently estimated market value of over $70 million. Third, this case involves substantial investments by over 800 investors who are entitled to know what actually happened

and to address the tax implications of what occurred with the benefit of accurate knowledge. The results obtained are many, including the implementation of the asset freeze, the halting of the fraudulent conduct both through the asset freeze and the provision of accurate and truthful information, the winding up of the CETA operations and all that entails, the interim resolution of claims and inquiries, and the proper administration of a receivership estate. Ultimately, this case will provide both restitution to investors and proper payment of other claims consistent with applicable law.

(i) <u>The experience, reputation and ability of the attorneys</u>. Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion. The Receiver and his counsel have also served as receivers or participated in other receiverships. The reputations of the Receiver and his counsel are recognized and respected in their community and area of practice.

(j) <u>The undesirability of the case</u>. The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

(k) <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

(l) <u>Award in similar cases</u>. The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases.

## Certification

The undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof. Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that he has read this Application, that to the best of his knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that he has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, he requests reimbursement only for the amount billed by and paid to the vendor and he is not making a profit on any reimbursable services provided by him.

## Conclusion

WHEREFORE, the Receiver prays that the Court approve the administrative expenses sought herein.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: 214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

## CERTIFICATE OF CONFERENCE

I hereby certify that this motion is not opposed by the Plaintiff nor by Roy Hill, who are the only parties who have appeared through counsel. Roy Hill has advised he does not agree with certain of the statements in the application, but does not oppose the amount sought by the application.

*/s/ Dennis Roossien*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

*/s/ Dennis Roossien*