IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>V.<br><br>ROY W. HILL, et al. | §<br>§<br>§  Case No. 6:23-cv-00321-ADA<br>§<br>§<br>§<br>§ |

**RECEIVER'S UNOPPOSED EIGHTH INTERIM FEE APPLICATION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Albert C. Black III ("Receiver") submits this fee application, respectfully stating:

**Introduction**

1. This Application seeks the Court's approval of the fees and expenses incurred during the period of June 1, 2024 through September 30, 2024, with the exception of the fees and expenses of Mr. Veech, which are contested and therefore have been presented in a separate Receiver's Fourth Interim Fee Application.

2. The Receiver has filed a corresponding status report that summarize his efforts during this period, identifies the assets and liabilities of the receivership estate, and provide other information pertinent to this application (Doc. 94).

3. The services provided to implement the appointment order are detailed below and in the accompanying appendix.

**Amount Sought**

4. This application seeks approval to pay administrative costs of $255,005.38.

**Services Provided**

5. During the third quarter of 2024, the Receiver's team stepped up efforts to complete a claims analysis, which included assigning work to the Receiver's outside accounting firm. One

of the issues the Receiver has encountered is that there is some overlap between the project-level accountings and the individual transfers of funds, either in regard to the initial investment or the distributions. Additionally, there are a significant number of investors who did not make claims but have been revealed as the bank records have been reconciled against the accountings and claims presented to date. The inclusion of the Receiver's outside accountant has been necessary to more efficiently reconcile the bank records. This work is important because, without it, a significant number of investors would have receive no restitution. This work has added 162 claims, and brought the total identified investments up by approximately $100 million.

6.      Additionally, the Receiver has worked to determine whether the investors made investments based upon substantially similar representations, since the test for whether to divide restitution pro rata across a group or to divide restitution by sub-classes is whether the investments were substantially similar and whether there was some commingling of funds. The claims process has now produced a reasonably clear picture of the period covered by the SEC's Complaint, which is January 1, 2019 to May 3, 2023. During that period the investor deposits total approximately $323 million. Other deposits total approximately $370,000. Investor payments total nearly $188 million. The net cash loss is approximately $135 million. The claims process also shows CETA offered investments at least dating back to 2009. Between 2009 and 2015, the investments were largely based upon stock sales. In 2016, these stock offerings continued, and there were also investment offerings to finance supposed Department of Energy research grants, occasions where suppliers purchased stock in the hope of obtaining work from CETA, and investments premised upon supposed working interests in coal distillation units. The sale of interests in the coal distillation projects proved popular, which led to the significant increase in investments in 2017-2019. The addition of carbon capture unit projects further expanded the amount of investments

made. Toward the end, it appears some efforts were made to add investments in disposal wells, and the impact of these efforts was not yet clear as of the end of the third quarter. In view of the question of substantial similarity, together with the claims analysis, the Receiver is compiling the underlying records of the various projects that CETA offered.

7. The Receiver also addressed discovery requests from parallel proceedings, and from Mr. Hill. The third-party requests included interrogatories and discovery requests seeking the type of information being gathered and detailed in the claims analysis effort. The Receiver put together objections and responses that sought to use the ongoing work in the claims analysis to provide the parallel litigants with the substance of the information sought without further detailing information in interrogatories or broadening the scope of document to be gathered and produced. Mr. Hill's inquiries sought additional bank records and credit card statements that CETA had not printed out or otherwise collected in real time, which the Receiver worked to address by sending some additional subpoenas and further pressing on Wells Fargo.

8. In regard to potential claw-back claims, one by-product of the claims analysis is the ability to classify payments to investors by investor. Based upon this analysis, the Receiver has obtained greater visibility into potential net winner claims, and the Receiver has concluded cost/benefit considerations preclude bringing such claims in this case.

9. Building on the work to date in regard to the Allen Brothers transactions, the Receiver's counsel prepared internal privileged analyses for the Receiver's review and consideration. The facts concerning the Allen Brothers transactions are detailed in the Third Quarterly Report. Based upon this work, the Receiver resolved parameters for negotiating with the two groups of recipients based upon the benefits received as a result of the transactions. This work led to a settlement of the potential claims against Alton Allen during the fourth quarter.

10. The Receiver and his team complied with the administrative obligations imposed by the appointment order, including preparation and submission of the Receiver's quarterly report and accompanying accounting.

11. The Receiver, his accountants, and counsel also addressed proper preparation and submission of tax returns based upon the qualified settlement fund construct that the appointment order directs the Receiver to employ.

12. Statements further detailing the efforts of the Receiver and his professionals, as well as the costs incurred, are detailed in the accompanying appendix. The following chart summarizes the statements, which appear in the appendix in the order stated on the chart. This table also includes Munsch Hardt's invoice for June. That invoice was included in the second quarter fee application, but, due to a clerical error, the total stated in the table contained in the second quarter application did not include that invoice. The table below corrects that error.

| Firm | Month | Amount |
|---|---|---|
| Receiver | July | 4,698.00 |
| Receiver | Aug-Sept | 5,508.00 |
| New Horizons - Prof'l | July | 20,787.75 |
| New Horizons - Prof'l | August | 16,120.60 |
| New Horizons - Prof'l | September | 20,517.00 |
| Munsch Hardt | June | 18,192.50 |
| Munsch Hardt | July | 20,265.10 |
| Munsch Hardt | August | 30,266.07 |
| Munsch Hardt | September | 61,865.14 |
| Ahuja & Consultants, Inc. | Jul-Sept | 56,785.22 |
| | | 255,005.38 |

**Application of Johnson Factors**

13. The primary concern in regard to professional fees is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Under that test, a

court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

14. The following reviews this Application with regard to each of the *Johnson* factors:

(a) <u>The time and labor required</u>. The time and labor required are set forth in detail in the statements contained in the accompanying appendix.

(b) <u>The novelty and difficulty of the questions</u>. The questions addressed by the professionals herein are common to enforcement receiverships generally, but handling such receivership cases is a narrow specialty requiring experienced professionals conversant with a substantial body of largely common law and customary practice.

(c) <u>The requisite skill to perform the service</u>. The fiduciary and legal services required the employment of individuals possessing considerable experience and capacity in handling equity receiverships. The Receiver, his counsel, and his support staff have considerable experience in these areas. The Receiver's support team also includes persons with more general administrative and logistical capacities of they type ordinarily required to administer assets such as those present in this case, to make business judgments, and to otherwise execute certain administrative functions.

(d) <u>The preclusion of other employment due to the acceptance of the case</u>. The Receiver and his professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Western District of Texas and in the case of the Receiver and his professionals. Both the Receiver

and his counsel have discounted their standard rates by ten percent and agreed to a $65,000 cap for the first month of the case.

(f)     <u>Whether the fee is fixed or contingent</u>. The Receiver and his professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets.

(g)     <u>Time limitations imposed by the client or other circumstances</u>. The early steps in the receivership were conducted on an emergent basis. Thereafter, the Receiver and his professionals have generally not faced unusual time pressures.

(h)     <u>The amount involved and the results obtained</u>. The amount involved in this case can be measured in a number of ways. First, this case involves invested funds of approximately $500 million and a net cash loss in excess of $150 million. Second, the remaining assets have a presently estimated market value of over $70 million. Third, this case involves substantial investments by over 800 investors who are entitled to know what actually happened and to address the tax implications of what occurred with the benefit of accurate knowledge. The results obtained are many, including the implementation of the asset freeze, the halting of the fraudulent conduct both through the asset freeze and the provision of accurate and truthful information, the winding up of the CETA operations and all that entails, the interim resolution of claims and inquiries, and the proper administration of a receivership estate. Ultimately, this case will provide both restitution to investors and proper payment of other claims consistent with applicable law.

(i)     <u>The experience, reputation and ability of the attorneys</u>. Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally

related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion. The Receiver and his counsel have also served as receivers or participated in other receiverships. The reputations of the Receiver and his counsel are recognized and respected in their community and area of practice.

(j) <u>The undesirability of the case</u>. The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

(k) <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

(l) <u>Award in similar cases</u>. The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases.

## Certification

The undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof. Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that he has read this Application, that to the best of his knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable,

necessary and commensurate with the skill and experience required for the activity performed, that he has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, he requests reimbursement only for the amount billed by and paid to the vendor and he is not making a profit on any reimbursable services provided by him.

## Conclusion

WHEREFORE, the Receiver prays that the Court approve the administrative expenses sought herein.

Respectfully submitted,

*/s/ Dennis Roossien*
Dennis L. Roossien, Jr.
Texas Bar No. 00784873
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: 214.855.7535
droossien@munsch.com

COUNSEL FOR RECEIVER

## CERTIFICATE OF CONFERENCE

I hereby certify that this motion is not opposed by the Plaintiff nor by Roy Hill, who are the only parties who have appeared through counsel. Roy Hill has advised he does not agree with certain of the representations, statements and conclusions in the application, but does not oppose the amount sought by the application.

*/s/ Dennis Roossien*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service.

                                                                       */s/ Dennis Roossien*

4898-7748-4293v.1 004856.00022