IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | |
| v. § § | CIVIL ACTION NO. 6:23-cv-00321 |
| ROY HILL, ERIC N. SHELLY, CLEAN ENERGY TECHNOLOGY ASSOCIATION, INC., and FREEDOM IMPACT CONSULTING, LLC, § § § § § § | |
| Defendants. § | |

## DEFENDANT ROY HILL'S PRE-HEARING BRIEF: RECEIVER'S MOTION TO LIQUIDATE

This Court has set a hearing for February 28, 2025 on Receiver's Opposed Motion for Instructions Concerning CETA Liquidation and Interim Distribution. The Receiver's recently filed Fourth Quarter Status Report for 2024 relates to the upcoming hearing. Defendant Roy Hill ("Mr. Hill") provides this prehearing brief addressing the issues raised by the Receiver's recent filing that pertain to the requested proposed interim distribution.

### I.    INTRODUCTION

The Receiver asks this Court for permission to begin distributing millions of dollars, despite an ongoing review of many claims. The proposed interim distribution is premature given that a full and comprehensive accounting of all claims remains incomplete, with evaluations conducted only on claims related to the Shelley investments. Finally, the Receiver's method of calculating losses—including his inappropriate aggregation of a $29 million claim predating the alleged fraudulent scheme—violates established Fifth Circuit case law, as it fails to establish the commonality required for such aggregation. For these reasons, Mr. Hill respectfully requests that

the Court deny the Receiver's motions pending a thorough and independent evaluation of the assets and a complete accounting of all claims.

### II. ARGUMENTS AND AUTHORITIES

#### a. An interim distribution is premature based on the incomplete accounting and unknown estate value.

The Receiver proposes a distribution of two-thirds of the estate's assets. But such a distribution is premature given that the full valuation of the estate remains undetermined. This uncertainty is directly attributable to the Receiver's refusal to enable independent evaluations of the technology assets. Without a comprehensive market appraisal, any interim distribution risks being inequitable and could imperil the maximization of estate value for investors.

To compound the issue, the Receiver's interim distribution plan is based solely on a subset of vetted claims—specifically those related ONLY to Shelley investments. Therefore, many claims have yet to be approved by the Receiver, leaving the true extent of losses and liabilities unclear. This incomplete evaluation underscores the inherent risks in proceeding with an interim distribution at this juncture.

#### b. The Receiver proposes erroneous methods of calculating losses.

In the Quarterly Status Report for the Fourth Quarter of 2024 (Dkt. No. 109), for the first time, the Receiver has advanced a methodology for calculating loss amounts that involves aggregating all claims into a single bucket. This approach is inequitable. The Receiver himself acknowledges that substantive commonality of claims is a deciding factor in a court's determination of whether aggregation of claims is equitable. *See id.* ¶ 49. . Here, the purported commonalities among at least some claims are minimal and, as admitted by the Receiver, there are significant factors that distinguish all the claims from one another. *Id.* at 15-22. Crucially, the

Receiver proposes to include claims *before* the alleged scheme even began as losses. This is inequitable and the Court should categorically reject the Receiver's approach.

### c. The Receiver improperly includes Pre-Ponzi claims in his preliminary loss calculations.

Even if this Court permits the Receiver to aggregate claims from 2015 to 2023, it would be inequitable to allow the Receiver to include the investments made before the alleged Ponzi-scheme began in 2015. Receiver argues that the Court should allow approximately $29 million in claims relating to an equity raise conducted by Mr. Hill be included in the loss amount calculations. This is not equitable and arguably outside the scope of the Receivership Order.

Mr. Hill sold equity shares in CETA and Freestone Energy, Inc. under Regulation D. As Receiver states, "[a] distinction can be drawn between these equity investments and the later offerings, since, at the time of investment, specific returns were not promised. There was *no Ponzi-scheme during this period*. Moreover, the funds invested by the first three investors were fully dissipated prior to 2015." *Id.* at 15-16 (emphasis added).

Even worse, Receiver admits that there is no evidence of any misrepresentations related to these offerings, "[a] case can be made that the original representations were not fraudulent, and, even to the extent the nature and viability of the technology was overstated, the argument can be made that CETA and Hill were simply overly optimistic." *Id.* The Receiver therefore admits that there is no evidence of any misrepresentations, gives credence to an argument that there was no fraud at all related to them, and they predate the alleged Ponzi-scheme.

The $29 million in claims also pre-dates the SEC's allegations of fraud. The SEC lists the relevant time period as December 2019 to the present. (Dkt. No. 1) Indeed, including these claims in the loss amount and as part of the "scheme" is not only inequitable because it predates the

alleged Ponzi, but also because there is simply no evidence the capital was even raised in a manner that was fraudulent.

### III. CONCLUSION

The Receiver's request to execute an interim distribution must be denied. The requested interim distribution is premature nature due to the incomplete evaluation of claims, and risks misallocation of assets. Finally, the Receiver's method of calculating losses—particularly the aggregation of claims lacking the requisite commonality as set forth in Fifth Circuit case law—is legally unsound and exceeds the statutory authority granted by the Receivership Order.

Accordingly, Mr. Hill respectfully request that the Court deny the Receiver's request for an interim distribution until a complete and accurate accounting of all claims is performed. This approach is essential to protecting and maximizing returns for the investors.

Date: February 25, 2025

Respectfully submitted,

/s/ David W. Klaudt
David W. Klaudt
State Bar No. 00796073
klaudtd@gtlaw.com
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEY FOR DEFENDANT ROY HILL**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all parties that have appeared through the Court's electronic filing system on February 25, 2025.

/s/ David W. Klaudt
David W. Klaudt