IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| V. | § § | Case No. 6:23-cv-00321 |
| ROY W. HILL, et al. | § § | |

## RECEIVER'S REPORT AND RECOMMENDATION ON UNIBANK CLAIM OBJECTION

Receiver Albert C. Black III ("Receiver") reports and recommends to the Court as follows:

### Introduction

1. This report and recommendation pertains to claim objections made by Unibank.

2. The Receiver is presently engaged in carrying out the Court's Order Approving Liquidation and Interim Distribution (Doc. 116) (the "Distribution Order"). Consistent with that order, the Receiver has determined the net cash loss of each victim of the scheme and proposed to make pro rata payments to all victims on the same basis (*see* Third Claims Report, Doc. 133).

3. Unibank asserts it should receive the distributions of certain other investors. Unibank relies upon the set of contracts used to perpetrate the fraudulent scheme, which describe Unibank as a small business lender.

4. But, an equitable distribution does not follow the contracts used to market the Ponzi scheme. Those contracts are illegal. The Receiver therefore recommends that all victims be treated the same.

5. The Receiver has attempted to reach agreement with Unibank, but that effort was not. Accordingly, the Receiver presents Unibank's objection to the Court for resolution, as provided for in the Distribution Order (Doc. 116 at 2).

## Applicable Law

6.  The Fifth Circuit has approved pro-rata distributions to fraud victims based upon the equitable power of a federal court. *U.S. v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996); *SEC v. Forex Asset Mgt.*, 242 F.3d 325 (5th Cir. 2001).

7.  When fashioning an equitable distribution, the District Court has discretion to decline to prefer one group of equally defrauded parties greater than another, but instead to conclude "all the fraud victims were in equal positions and should be treated as such". *Durham*, 86 F.3d at 73 (declining to apply tracing principles to favor one investor over all others).

8.  A District Court's discretion will not be disturbed so long as it "uses its discretion in a logical way to divide the money". *Id.*

9.  In an equitable distribution of proceeds of fraud, the touchstone for whether the claimant should be entitled to a share of the recovered funds is not whether the claimant is a general creditor but rather whether the claimant contributed money into the scheme. *CFTC v. PrivateFX Global One*, 778 F.Supp.2d 775, 786–87 (S.D.Tex. 2011). In *CFTC*, Wells Fargo was unable to show that it paid money into the accounts was used to perpetrate the scheme. *Id.* Thus, Wells Fargo was denied a share of the funds remaining when the scheme ended. *Id.* In other words, its status as a lender to the perpetrator of the scheme was not relevant to the determination of whether it should receive a share of the remaining fraud proceeds. *Id.*

10. A contract between a lender to a Ponzi scheme and the Ponzi schemer is void. *Janvey v. Alguire*, 2013 WL 2451738, *10 (N.D.Tex. 2013). As a result, net winners in a Ponzi scheme may not keep interest payments gained on the strength of loan documents with the receivership defendant. *Id.* Rather, the question is simply what cash was put into the scheme, and what cash was taken out – the terms of the loan have no effect, since the loan contract is void. *Id.*

11. In a securities offering, it is the substance of the documents that matters. Regardless of the form of the legal documents, a transaction is an investment contract (meaning, the purchase and sale of a security) when four elements are met in substance: (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profit, (4) to be derived from the efforts of others. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946).

12. A district court has authority to resolve objections to claims in federal equity receivership proceedings. *See, e.g., CFTC v. PrivateFX Global One,* 778 F. Supp. 2d 775 (S.D.Tex. 2011) (resolving objections to distribution and claim determinations by motion practice); *see also Alexander v. Hillman*, 296 U.S. 222, 238-41 (1935) (district court has jurisdiction to resolve claims).

**Facts**

13. Commencing at least by the summer of 2018 and continuing until May 2023, Roy Hill ("Hill") and Clean Energy Technology Association, Inc. ("CETA") perpetrated a Ponzi scheme, in which Hill would represent CETA projects as profitable business undertakings generating revenues when, in fact, the returns paid to CETA investors were paid from later investor contributions.

14. The most numerous CETA projects were those pertaining to supposed coal distillation units and supposed carbon capture units (the "Units"). The coal distillation units existed for demonstration purposes only. The carbon capture units did not operate at all, but instead there were only some shell central components that were shown to investors.

15. The CETA project investments involving Units were premised upon the following basic (false) proposition: (a) CETA would sell an investor or a group of investors (the "Investors") one or more Units, or a interests in a Unit; (b) CETA would loan the Investors additional matching funds to support the purchase price of the Units; (c) CETA would use the invested funds and the

CETA loan to build and to operate the Units nominally owned by the Investors; (d) the Units would generate revenues from third parties; (d) CETA would use the revenues to pay returns to the Investors and to pay down the CETA purchase loan; (e) during the period of ownership, the Investors would receive tax benefits based upon the depreciation of the Units (such that, the existence of the fictitious CETA loan permitted greater ownership and therefore greater tax benefits); and (f) once the investors had received back enough quarterly returns, CETA would receive back ownership of the Unit.

16. Later on, some Investors made investments in projects where the fictitious CETA loan was replaced by a supposed Unibank small business loan.

17. UniBank is a commercial bank located in the State of Washington.

18. UniBank is authorized by the Small Business Administration ("SBA") to issue SBA loans under the SBA's 7(a) loan program (the "7(a) Program"). The 7(a) Program is the SBA's primary program for providing financial assistance to small businesses. As a part of the program, lenders work with the SBA to provide small business loans. The SBA guarantees these loans will be repaid, significantly reducing the risk to financial institutions. The guaranty also enables lenders to offer lower rates and longer terms.

19. UniBank is further authorized to "qualify" loans as "SBA-approved" pursuant to the SBA Preferred Lender Program ("PLP"). PLP lenders are responsible for ensuring that the loans they originate comply with applicable laws and regulations. PLP lenders do not have to obtain advance approval from the SBA. Rather, determinations as to eligibility are only made if an SBA guarantee is triggered after reasonable collection efforts are made.

20. But, SBA regulations do not provide for loans to be made to investors for the purpose of investing in the business of another person.

REPORT AND RECOMMENDATION ON UNIBANK OBJECTION – Page 4

21. Even so, Unibank employee Wan Kim ("Kim"), and others, approved and caused Unibank to fund investments in various fraudulent schemes as if they were small business loans.

22. In addition to CETA, Unibank extended supposed small business loans to investors in two other schemes.

23. Water Station Management LLC and its affiliates ("WaterStation") offered investments similar to CETA, in that WaterStation created a "franchise" investment that mimicked the supposed performance of water filtration machines. It was described as a "passive owner" model. That meant the investor was nominally an owner of one or more water filtration machines, but, in fact, all of the operations were handled by WaterStation. The returns paid to investors were supposedly tied to the revenues of the filtration machines, but it was a Ponzi scheme.[1]

24. WaterStation attempted to obtain approval of its passive franchise investment for SBA loans. But, the SBA declined to approve the passive owner model because the WaterStation passive owner model was nothing more than an investment in WaterStation itself, despite the attempt to document the transaction otherwise by using a "franchise" agreement, a "sales" contract, and SBA loan documents with an SBA franchise addendum.

25. Even so, Kim worked with WaterStation to provide supposed approved SBA loans to support passive owner franchise investments in WaterStation, both for himself and for other investors. Because UniBank is a PLP lender, UniBank self-certified the offering as an SBA loan.

---

[1] The marketing of the investments was based upon the assertion the filtration machines were generating revenues that were paying returns to earlier investors. In fact, the number of machines was grossly overstated. Additionally, returns paid to earlier investors as if they were derived from revenus of the machines were, in fact, paid with later investor dollars – in other words, it was a Ponzi scheme. *See In re Refreshing USA, LLC*, Case No. 24-01863-11, Disclosure Statement, Doc. 793 (E.D.Wa.Bankr.) (lead case in consolidated cases including *In re Water Station Management LLC* and *In re Creative Technologies, LLC*).

REPORT AND RECOMMENDATION ON UNIBANK OBJECTION – Page 5

26. In fact, the entire WaterStation transaction was an investment in a fraudulent scheme. Consistent with this, the Securities Division of the Department of Financial Institutions of the State of Washington has issued a statement of charges finding that, in reality, the investors were purchasing investment contracts.

27. In addition to WaterStation, Kim caused Unibank to fund investments in a similarly structured ATM-based Ponzi scheme. Daryl Fred Heller ("Heller") promoted investments in funds that owned pools of ATM machines operated by a management company called "Paramount". Investors in the fund would supposedly receive returns based upon the revenues of the ATM machines. In fact, Heller operated a Ponzi scheme.[2]

28. Kim became connected with Hill and CETA through Dave Zook. One of the promoters of the Paramount ATM fraud was Dave Zook. He promoted himself as a "Real Asset Investor". He developed an investment club on the theme that the investments he recommended involved ownership of assets and returns based upon the performance of the assets. Zook maintained a substantial list of club members, and he hosted various events where investments in "real assets" were discussed. In the summer of 2018, Zook discovered Hill and CETA through other members of the Real Asset Investor network. It was Zook who worked with Hill to reformat the CETA offering into a real asset investment, just like WaterStation and Paramount, and Zook was the one who designed the CETA offering to include the depreciation tax benefits. In January 2019, Zook introduced Dr. Forrest Bryant to Hill. Zook advised that Dr. Bryant operated a successful investment club called High Speed Alliance. Zook advised Hill that the coal investment would be good for that group. In the Spring of 2020, Kevin Douglas and other High Speed Alliance members heard about UniBank in the course of a presentation at a club meeting concerning

---

[2] *See, e.g., Prestige Fund A, LLC v. Daryl Fred Heller*, Adv. No. 25-01199, Doc. 1, at 10 (Bankr. D.N.J.).

REPORT AND RECOMMENDATION ON UNIBANK OBJECTION – Page 6

UniBank loans for WaterStation franchise investments. Zook was also aware of UniBank's position on lending because UniBank had made loans to support Paramount ATM investments. In July 2020, Zook introduced Kim to Hill.

29. Zook, Kim, and Hill thereafter adapted SBA loan documents to replace the fictitious CETA loan component of the CETA offering with a supposed UniBank small business loan. Here again, it was not actually a small business loan because UniBank was actually supporting an investment by the CETA Investors in CETA.

30. Under the revised structure, UniBank and certain Investors (the "UniBank Investors") both provided the purchase price of the supposed CETA Units to CETA. Both UniBank and the UniBank Investors received back returns from CETA that were actually Ponzi payments. Both UniBank and the UniBank Investors suffered net cash losses.

31. Kim conducted due diligence on the CETA investments on behalf of UniBank and alongside certain UniBank Investors, prepared and obtained signatures on all of the contracts, managed the funds through UniBank accounts, and interacted throughout with UniBank Investors.

32. After the schemes came to light, UniBank sought to collect from the UniBank Investors as if UniBank had provided SBA loans to those Investors.

33. The UniBank Investors objected and brought suit to both stop the collections and to recover damages from UniBank on the theory that UniBank committed common law fraud and state securities fraud alongside CETA in several respects, including by falsely labeling the SBA loans as such and by purporting to have gathered financials and other documents to credential CETA as an approved small business when such documents do not exist ("UniBank Litigation").

34. In the UniBank Litigation, the UniBank Investors sought a restraining order against collection efforts. As a compromise, UniBank agreed not to pursue collection except through the litigation between the parties.

35.     No garnishment orders have been issued to the Receiver from the court handling the UniBank Litigation.

36.     UniBank objected to the Receiver's proposal to make distributions to the UniBank Investors on the ground that it holds a security interest in all of the assets of the UniBank Investors according to the terms of the form SBA loan documents that Kim incorporated into the CETA offering package. Specifically, UniBank objected to the following UniBank Investor claims:

| 60 | Blough, Jason |
|---|---|
| 66 | Bowman, Brodie |
| 78 | Bryant, Jake |
| 114 | Chu, Brian |
| 174 | Douglas, James |
| 177 | Douglas, Kevin |
| 176 | Douglas, Mark |
| 1047 | Holton, Lance T. |
| 352 | Jone, Raymond |
| 420 | Lee, Kwansoo |
| 471 | McGarrah, Stephen Blake |
| 511 | Nguyen, Dat |
| 817 | Peabody, Seth |
| 828 | Pollack Brothers Limited |
| 567 | Pollack, Adam |
| 581 | RAIT Energy 121 - Matthew Lewis, Kunzler Bean & Adamson |
| 594 | Richard, Ryan |
| 654 | Slagle, Kyle |
| 690 | Talosig, Paul & Anna |
| 860 | Tillman, Stacey |
| 742 | Vilt, Jim |
| 1048 | Water Stations LLC |
| 765 | White, Aaron |

37.     According to the terms of the form SBA loan documents included in the revised CETA package, UniBank ostensibly holds a perfected security interest in all of the assets of the UniBank Investors, including their claims for restitution from recoveries made by the Receiver.

REPORT AND RECOMMENDATION ON UNIBANK OBJECTION – Page 8

38. Because the distribution is an equitable distribution, the Receiver is generally ignoring the stated legal rights of the investors as set forth in the CETA offering documents, equipment purchase contracts, CETA loan documents, UniBank SBA loan documents, and so forth. Because of the fraud committed by CETA, the investors have the right to rescind all such documents and recover a pro rata share of the cash recovered by the Receiver.

39. UniBank has not made a claim for restitution as such. However, in the Receiver's view, UniBank is in a situation comparable in many respects to any other person who provided funds to CETA based upon Hill's Ponzi scheme. The main differences are that Kim promoted and administered the CETA investments, and he represented that the UniBank contributions were qualified SBA loans when they were not.

## Analysis and Recommendation

40. The Receiver recommends UniBank's objections be overruled.

41. Under the above-stated applicable law, the Court is making an equitable distribution of restitution to all Investors. In so doing, the Court is properly disregarding all of the CETA contracts since they were made to promote a Ponzi scheme and instead is providing a pro rata distribution based upon relative net cash losses. In reality, UniBank was not making an SBA loan, and the adapted SBA loan documents cannot credibly be separated from the integrated set of revised CETA offering documents prepared by Kim, Zook, and Hill, which the UniBank Investors executed in order to invest in the CETA Ponzi scheme. As such, none of the contracts included in the bundle of CETA offering documents can be enforced. Casting Kim's role in the best possible light, both UniBank and the UniBank investors suffered net cash losses because Hill perpetrated a fraudulent scheme. Casting UniBank's role in the best possible light, it funded a Ponzi scheme because of the misconduct of Kim. It is therefore inequitable and legally improper to elevate UniBank's position over that of the UniBank Investors.

WHEREFORE, the Receiver prays that the Court enter an order overruling UniBank's objection and directing that the Receiver pay the UniBank Investors (and UniBank) based upon their respective net cash losses.

        Respectfully submitted,

        /s/ Dennis Roossien
        Dennis L. Roossien, Jr.
        Texas Bar No. 00784873
        MUNSCH HARDT KOPF & HARR, P.C.
        500 N. Akard Street, Suite 3800
        Dallas, Texas 75201-6659
        Telephone:  214.855.7535
        droossien@munsch.com

        COUNSEL FOR RECEIVER

### **CERTIFICATE OF CONFERENCE**

I hereby certify that the parties to the main action (the Plaintiff and Hill) do not have a position on this motion, and that, after correspondence and discussions with Unibank's counsel, agreement could not be reached, such that the Receiver expects Unibank to file an opposition to this report and recommendation.

        /s/ Dennis Roossien

### **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2025, a true and correct copy of the foregoing instrument was served electronically in compliance with the Court's Electronic Filing Procedures on all counsel of record who are deemed to have consented to electronic service, and via email and overnight letter to:

    Counsel for Unibank:        Arnold M. Willig
                                    Hacker & Willig, Inc., P.S.
                                    1215 Fourth Avenue, Suite 910
                                    Seattle, Washington 98161
                                    *arnie@hackerwillig.com*

    Counsel for Unibank Investors:        James B. Eubank
                                      Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
                                      218 Commerce Street
                                      Montgomery, AL 36104
                                      *James.Eubank@BeasleyAllen.com*

        /s/ Dennis Roossien