# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> V. <br><br> ROY W. HILL, et al. | Case No. 6:23-cv-00321 |

## UNIBANK'S RESPONSE TO RECEIVER'S REPORT

By way of this special, limited appearance, UniBank, a Washington State banking corporation, through its undersigned counsel, hereby responds (the "Response") to the Receiver, Albert C. Black III's ("Receiver") Report and Recommendation on UniBank Claim Objection [Dkt. 137] ("Report") to the Court.

### I.      Introduction

UniBank is not a party to this receivership proceeding and has never submitted to this Court's jurisdiction. UniBank's sole involvement has been limited to providing notice to the Receiver of the bank's duly perfected security interests in the assets of certain claimants in this case (the "Borrowers"). That limited notification does not constitute an appearance or consent to jurisdiction. Importantly, UniBank has not filed, nor does it presently assert, any claim directly against the receivership estate. Rather, UniBank's rights arise independently from its loan agreements with Borrowers and perfected liens on their property, which exist entirely outside of and apart from this receivership process. The filing of this Response does not constitute consent to this Court's jurisdiction over UniBank, nor does it waive UniBank's rights to challenge jurisdiction under Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction) and (2) (lack of personal jurisdiction).

Further, UniBank has not objected to any of the Receiver's proposed interim distributions to date. UniBank's position has been limited to the assertion of its bargained-for rights under valid and enforceable loan and security agreements, voluntarily executed by the Borrowers. Under those agreements, the Borrowers expressly pledged their personal property—including the funds now subject to proposed distribution—as collateral to secure repayment of their loans. Despite this, the Receiver now seeks to adjudicate UniBank's contractual and statutory rights by recommending that this Court (i) disregard UniBank's duly perfected security interests, (ii) declare UniBank's loan documents "void," and (iii) order distribution of collateralized funds back to the Borrowers themselves. Such recommendations, if adopted, would effectively nullify valid lien rights in contravention of governing law and in derogation of UniBank's clear contractual entitlements.

UniBank is already actively engaged in parallel litigation against these same Borrowers in Washington State Superior Court for Snohomish County, the forum properly vested with jurisdiction over the parties' loan agreements and secured obligations. That court has already resolved certain claims and legal issues squarely in UniBank's favor, including rejecting the Borrowers' contention that UniBank owed them any fiduciary duty or duty of disclosure, dismissing Borrowers' claims for negligent misrepresentation, and denying the Borrowers' cross-motion for summary judgment seeking recognition of a quasi-fiduciary duty owed by UniBank. The Court will be adjudicating the Parties' remaining claims, including Borrowers' asserted defenses against Unibank's enforcement of the loans.

The Receiver's recommendations therefore not only exceed the permissible scope of this Court's equitable authority but also directly conflict with binding, ongoing Washington State court proceedings. In doing so, they invite impermissible federal interference in matters of state law and risk depriving UniBank of its constitutional due process rights to have its property and contract claims adjudicated in the proper forum. For all of these reasons, UniBank respectfully requests that any distribution proposed by the Receiver be deposited into the registry of the

Snohomish County Superior Court, where the parties' rights and obligations are already being adjudicated. This approach will ensure that the distribution is preserved and properly administered under the supervision of the court with jurisdiction over the pending litigation.

This Response is supported by the concurrently filed Exhibit 1 of the Appendix to UniBank's Response to the Receiver's Report and Recommendations ("Appendix"), which is the Declaration of Arnold M. Willig and the exhibits attached thereto ("Willig Decl.").

## II.    Background

UniBank is a reputable community bank based in Lynnwood, Washington. It offered loans through the United States Government's Small Business Administration ("SBA") 7(a) loan program, which encourages lending to new small businesses that would otherwise be underserviced because of the inherent risk of lending to a business with no history of performance.

UniBank's Borrowers, who are claimants in this receivership case, are affluent, highly educated investors who sought high-return investments in speculative ventures. Most of these Borrowers were members of High Speed Alliance ("HSA"), a paid investment group specializing in high-risk, high-return ventures. Through HSA, they paid up to $4,000 per month in membership fees to access "alternative" investments promising high returns. HSA purported to conduct due diligence on these investments, promoting them as "best in class" investment solutions.

After learning of the investment opportunity from HSA, all of the Borrowers chose to buy "carbon capture units" from Clean Energy Technology ("CETA") with CETA promising annual returns of 20% to 30%, repayment of the principal in 36 months and a continuous monthly income stream for 8 years. In most instances, instead of risking their personal funds for their speculative ventures, the Borrowers each solicited UniBank and applied for SBA 7(a) loans, ranging from $1,155,000.00 to $3,150,000.00, for their CETA purchases.[1]

---

[1] Willig Decl., **Ex. S-AA , App. 5959-7283**. (*See, e.g.* Exs. 8, 26, 42, 57, 72, 88, 103, 119, 134, 149, and 164 of the Declaration of Yuko Elliott In Support of Defendants' Opposition to Plaintiffs Renewed Motion for Preliminary Injunction (containing the loan amount information in each of the borrowers' loan note agreements.)

When the investments ultimately failed to produce the promised returns, the Borrowers attempted to shift responsibility from themselves to UniBank. Despite being sophisticated investors with a history of seeking high-risk, high-reward investments, the Borrowers alleged that UniBank failed to adequately warn them of their investment risks. In essence, the Borrowers claim that UniBank should bear the full consequences of their own investment decisions.

### III.    Procedural History and State Court Litigation

**A. Ongoing Washington State Court Litigation.**

The Borrowers originally brought an action against UniBank and five other defendants[2] in the United States District Court for the Western District of Washington under case number 2:23-CV-971-JCC. Willig Decl., **Ex. A, App. 1**. On October 2, 2023, upon UniBank's motion, that Court dismissed the Borrowers' federal claims, and dismissed the action without prejudice for the Borrowers to refile their state law claims in Washington State Court. [2:23-cv-971-JCC - Fed. Dkt. 43]. Willig Decl., **Ex. G, App. 1943**.

On October 31, 2023, the Borrowers refiled their case in Superior Court for the State of Washington in Snohomish County under case no. 23-2-07972-31 (the "Washington State Case"). Willig Decl., **Ex. H, App.  1950.** Since the filing of the Washington State case, the parties have taken 14 depositions, exchanged multiple sets of interrogatories and requests for production of documents with every Borrower, conducted no fewer than 12 conferences of counsel, and attended approximately five substantive Court hearings. Willig Decl., ¶ 2.

On December 20, 2024, UniBank filed a motion for partial summary judgment. Willig Decl., **Ex. AG, App. 7736.** UniBank sought dismissal of the Borrowers' negligent misrepresentation claim, which asserted that UniBank had any duty to disclose any information to the Borrowers outside the terms of the written loan documents, and that UniBank had any heightened or quasi-fiduciary duty to the Borrowers. *Id.* On January 27, 2025, the Borrowers moved for summary judgment on these same

---

[2] In addition to UniBank, plaintiffs asserted claims against U&I Financial Corp. and of UniBank's Officers: Simon Bai, D. Benjamin Lee, Peter Park, and Stephanie Yoon.

claims and their claims that UniBank provided them with extra services in connection with their CETA financing; advised them regarding government loan qualifications; possessed specialized knowledge on which they relied; and that UniBank's purported "partnership" with Eric Shelly and CETA created a conflict of interest. **Ex. AG, App. 7736.** The Borrowers further alleged that UniBank solicited their continued investments, selectively disclosed positive due diligence information while omitting negative information, and acted as a "promoter" of the CETA transactions. **Ex. AI, App. 8046**.

On February 25, 2025, following extensively developed written discovery and document production, extended briefing and presentation of arguments by all parties, the Court granted UniBank's motion for partial summary judgment, dismissing with prejudice Borrowers' central claim of negligent misrepresentation. Willig Decl., **Ex. AR, App. 8731**. The ruling established as a matter of law in the Washington State Case that UniBank had no duty of disclosure to the Borrowers beyond the obligations explicitly set forth in the parties' written loan agreements, that the Borrowers were not entitled to rely on UniBank's due diligence, that UniBank had no quasi-fiduciary relationship with the Borrowers, that there was no heightened duty of care on UniBank's part because these are SBA loans, and the authenticity of the Borrower's respective loan documents. Furthermore, the Court determined that the Borrowers' negligence claim lacked legal merit.[3] *Id.*

More recently, the Court has considered a second summary judgment motion to dismiss the Borrowers' fraudulent misrepresentation claims. In opposing UniBank's motion, the Borrowers represented to the Court that disputed factual issues existed which, in their view, should be reserved for resolution by the trier of fact. **Ex. AT 93:13-20; App. 8740.** At the hearing, the Court accepted UniBank's position that the Borrowers were sophisticated investors who knowingly assumed the risks of their ventures and did not rely on UniBank for due diligence but ultimately determined that, out of caution, the issues cannot at this time be resolved as a matter of law. These issues through similar

---

[3] Willig Decl. **Exs. AG, App. 7736; AR, App. 8731; AQ, App. 8722**. (UniBank's Motion for Summary Judgment dated December 20, 2024, Order Granting UniBank's Partial Summary Judgment dated February 25, 2025, and Order Denying Borrowers' Cross-Motion for Partial Summary Judgment dated February 25, 2025.)

pending submission should be submitted to a trier of fact. Willig Decl., **Exs. AT, App. 8740; AS, App. 8737.**

    **B. Borrowers' Solicitation of UniBank and Investment Choices.**

    The Receiver's Report necessarily rests on an incomplete factual record, which is understandable in light of the complex ongoing litigation currently before the Washington State Superior Court. That Court is actively adjudicating the parties' respective rights and obligations, and the evidentiary record continues to develop in those proceedings. It has been established that it was the Borrowers—not UniBank—who initiated contact with UniBank regarding their CETA transactions. Willig Decl., **Ex. AR, App. 8731**. UniBank first became aware of CETA only through the Borrowers themselves, who provided background information and due diligence materials in an effort to persuade UniBank to extend loans to finance their purchases. *Id.,* **Ex. AG, App. 7736.** The Borrower's respective depositions confirm this sequence of events: the Borrowers approached UniBank seeking financing for their CCU purchases and, thereafter, actively referred friends, family members, and associates to UniBank for the same purpose.[4]

    UniBank first learned of CETA through Borrowers Richard and K. Douglas, who contacted UniBank in May 2020 to inquire about obtaining a loan for their desired transactions with CETA.[5] Following an initial call with UniBank's Loan Production Manager, Wan Kim, these Borrowers provided UniBank with extensive information regarding CETA—including necessary background and due diligence—to persuade UniBank to make the loans to fund their transactions.[6] They connected

---

[4] Willig Decl., **Ex. AH, App. 7769**. (See Mattila Decl., Ex. 1 at 90:19–91:7, 187:1–188:24; Ex. 2 at 51:16–54:19, 75:20–76:20; Ex. 3 at 60:9–21, 147:21–148:1; Ex. 4 at 169:16–25; Ex. 5 at 81:25–84:15, 95:21–96:12; Ex. 6 at 23:1–23, 194:16–195:15; Ex. 7 at 23:21–24: 13; Ex. 8 at 31:14–32:12, 101:8–102:6; Ex. 9 at 38:10–39:2; Ex. 10 at 54:16–55:14; Ex. 11 at 103:2-103:11, 103:17-106:13; Ex. 12 at 74:6–9; Ex. 13 at 83:9–84:9; Ex. 14 at 88:20–89:10, 268:16–25, 271:2–9; Ex. 15 at 167:17–169:4.)
[5] Willig Decl., **Exs. AH, App. 7769; R, App. 5808.** (See Mattila Decl., Ex. 1 at 90:19–91:7; Kim Decl. at ¶ 4.)
[6] Willig Decl., **Ex. R, App. 5808.** (Kim Decl., at ¶¶ 4–16, 22–43, Ex. 1–5, 16, 18–20, 26, 27, 29, 30.)

Wan Kim with David Zook ("Zook"), the creator and seller of an investment fund featuring another of CETA's products—its coal distribution units—as the investment vehicles.

Not a single Borrower learned about CETA from or was initially approached by Unibank to take out a loan for their CCU transactions. Borrowers K. Douglas, Richard, and Seth Peabody—independently and without UniBank's influence—recruited their friends, family, and professional contacts to UniBank to request SBA loans for CCU purchases.[7] The evidence is clear that none of the Borrowers were solicited by UniBank for the loans at issue. *Id.*

Although each Borrower used their loans from UniBank to purchase one or more CCUs, these were far from the sole source of funding for their transactions with CETA—in fact, multiple Borrowers invested with CETA prior to closing on their loans with UniBank or continued to invest in CETA after their loan with UniBank.[8] For example, Borrower Richard made several investments in CETA, including an investment through one of Zook's coal distillation funds prior to obtaining a loan from UniBank.[9] After obtaining their SBA loans from UniBank, certain borrowers continued to make multiple additional investments in CETA through other projects.[10] Similarly, Borrower McGarrah, invested five times with CETA *before* obtaining his UniBank loan and invested three more times with CETA *after* his SBA loan.[11] Likewise, Borrower Aaron White, who first learned about CETA from Shelly and was introduced to UniBank via Shelly's business partner Borrower K. Douglas, first

---

[7] Willig Decl., **Ex. AH, App. 7769.** (See Mattila Decl., Ex. 1 (Kevin Douglas) at 90:19– 91:7, 187:1– 188:24; Ex. 2 (Timothy Peabody) at 51:16–54:19, 75:20–76:20; Ex. 3 (Ryan Richard) at 147:21–148:1, 168:11–169:11; Ex. 4 (Stacey Tillman) at 169:16–25; Ex. 5 (Brian Chu) at 95:21–96:12; Ex. 6 (Adam Pollack) at 23:1–23, 194:16–195:15; Ex. 7 (Allison Douglas) at 23:21–24:13; Ex. 8 (Mark Douglas) at 31:14–32:12; Ex. 9 (Brodie Bowman) at 38:10–39:2; Ex. 10 (Jonathan Pollack) at 54:16–55:14; Ex. 11 (Kwansoo Lee) 103:2–103:11, 103:17–106:13; Ex. 12 (James Douglas) at 74:6–9; Ex. 13 (Stephen McGarrah) at 83:9–84:9, 111:06–16; Ex. 14 (Aaron White) at 88:20–89:10, 268:16–25, 271:2–9; Ex. 15 at 168:17–169:4.)

[8] Willig Decl., **Ex. AH, App. 7769.** (See, e.g., Mattila Decl., at Ex. 9 at 30:9–32:8.)

[9] Willig Decl., **Ex. AH, App. 7769.** (Mattila Decl., Ex. 3 at 53:2–12); Willig Decl., Ex. P. (Escobar Decl., Ex. 20 at Response to Interrogatory No. 15.)

[10] Willig Decl., **Ex. P, App. 5070.** (Escobar Decl., Ex. 20 at Response to Interrogatory No. 15.)

[11] Willig Decl., **Ex. P, App. 5070.** (Escobar Decl., Ex. 21 at Response to Interrogatory No. 15.)

invested in CETA through one of Shelly's funds and then invested three more times with CETA through Shelly, in addition to the CCU purchase he financed with his UniBank loan.[12]

None of the Borrowers relied on UniBank to initiate or guide their CETA investments; rather, they pursued those investments independently and often outside the scope of their UniBank loans. The record confirms that several Borrowers invested with CETA both before and after obtaining financing from UniBank, undermining any claim of reliance on any representation by UniBank. Willig Decl., **Ex. AG, App. 7736.**

C.    **Each Borrower was responsible for preparing, reviewing, and certifying the accuracy of their own SBA loan application materials submitted to UniBank.**

Between 2021 and 2022, UniBank assisted Borrowers with processing the application materials for their SBA 7(a) guaranteed loans in accordance with UniBank's standard packaging services. Willig Decl., **Ex. S, App. 5959.** (Elliott Decl., at ¶ 5.) The loan documents and accompanying supporting materials were put together using information provided and verified by Borrowers, including but not limited to the template business plans and projections originally provided and edited by Borrower KD Carbon (through its co-owners, Shelly and Borrower K. Douglas).[13]

After this initial set of loan documents and supporting business-related material was finalized and submitted for KD Carbon's loan, UniBank used them as the template for the rest of Borrowers' loan documents, which each Borrower had the opportunity to review before signing. Each Borrower acknowledged that they had read and understood the statements contained in each section of the form and verified that such information was true and accurate.[14] Sections II (Individual Owner Information) and III (Entity Owner Information) of the Form 1919 each also contains a separate acknowledgement and certification page in substantially similar form to the foregoing certification page for Section I

---

[12] Willig Decl., **Ex. P, App. 5070.** (Escobar Decl., Ex. 27 at Response to Interrogatory No. 15); Willig Decl., Ex. AH. (Mattila Decl., Ex. 14 at 34:2–6).

[13] Willig Decl., **Ex. AH, App. 7769.** (Mattila Decl., Ex. 1 at 107:1–22, 227:9–232:1, 290:1–291:2, 304:1–18; Ex. 2 at 54:6-55:9; Ex. 3 195:16–196:7.)

[14] Willig Decl., **Exs. AH, App. 7769; S − AB, App. 5959 - 7405.** (Mattila Decl., Ex. 24; See also, Elliott Decl., Exs. 12, 13, 15, 30, 46, 61, 76, 92, 107, 123, 138, 153, 168, 182.)

(Business Information). Willig Decl., **Ex. AH, App. 7769** (Mattila Decl., Ex. 24.). In other words, Borrowers *certified under penalty of perjury* multiple times—with respect to each section of the Form 1919 of which they now claim to be inaccurate—the accuracy of the information contained in their application, including its supporting materials. It was therefore *Borrowers* who were contractually responsible for supplying and ensuring the accuracy of the information provided to UniBank in connection with their SBA loans. In reliance on Borrowers' personal high net worth and guarantees and based on the type of transaction being financed (in this case, an equipment purchase), the provisions and requirements in the Operating Agreement, and the business plans and projects submitted and certified by each Borrowers, UniBank approved each of the Borrowers for their requested loans.[15]

### D.    The Borrowers did not rely on UniBank for Investment Advice.

As the Court in the Washington State Case has already determined as a matter of law, UniBank conducted its own due diligence in its capacity as a commercial lender, focusing solely on whether each Borrower had sufficient income and assets to service their monthly loan payments, without relying on or incorporating any projected CETA-related revenue to satisfy the loan balances in the event of acceleration.[16]

As already established, the Borrowers have admitted that UniBank was not conducting due diligence on their behalf and that they were solely responsible for evaluating the risks of their own business transactions. For example, Borrower Brodie Bowman admitted this was his own responsibility:[17] Notwithstanding the Borrowers' own negligence and complacency, *all Borrowers* testified to the fact that they had the time and resources to review the loan documentation before they

---

[15] Willig Decl., **Exs. S, App. 5959; AB, App. 7405.** (See generally, Elliott Decl., Exs. 1–184.)

[16] Willig Decl., **Ex. S, App. 5959.** (See, Elliott Decl., ¶¶ 6–10.)

[17] Willig Decl., **Ex. AH, App. 7769.** (Mattila Decl., Ex. 9 at 149:8–150:2; See also, Id., Ex. 1 at 58:17–59:2; Ex. 8 at 144:5–12.)

signed it and that they had the adequate means, resources, and opportunity to retain lawyers, financial advisors, or other professionals to advise them, even if they chose not to do so.[18]

In determining whether to purchase CETA CCUs, Allison Douglas primarily deferred to her husband, Mark Douglas, who admitted he understood that they were responsible for their own due diligence and that the Bank was not doing their personal due diligence for them.[19] In fact, they could have retained a lawyer, financial advisor, or private investigator to assist them, but they chose not to.[20] Likewise, Borrower Bowman, did very minimal due diligence, beyond a cursory internet search, and relied on the fact that others had purchased CCUs, and his prior investments in CETA, despite acknowledging it was his own responsibility.[21] Moreover, despite this lack of due diligence, a Borrower proceeded to make additional CETA-related investments, one before the CETA purchase and three after their UniBank loan transactions, which were facilitated by NOEP. [22] And Borrower Aaron White, who had invested directly with Shelly before his SBA loan CCU purchase, in lieu of doing due diligence in CETA via a professional or on his own, instead relied heavily on the fact that he was seeing returns with his prior investments. Willig Decl., **Ex. AH, App. 7769** (Mattila Decl., Ex. 14 at 82:15–84:4.). In fact, Borrower White very candidly admitted in an email afterwards that he had ignored the "basic rules of investing" with his CETA-related transactions, "don't invest more than you can afford to lose, don't put all your eggs in one basket, and don't leverage on high-risk investments." Willig Decl., **Ex. P, App. 5070** (Escobar Decl., Ex. 49.).

---

[18] Willig Decl., **Ex. AH, App. 7769.** (See Mattila Decl., Ex. 1 at 33:7–15, 66:15–23, 99:12–25, 358:4–15; Ex. 2 at 80: 2–81:20, 105:7–15; Ex. 3 at 21:23–22:23; Ex. 4 at 65:13–23, 68:18–69:1; Ex. 5 at 112:12–116:17; Ex. 6 at 175:13–176:19; Ex. 7 at 44:12–45:16; Ex. 8 at 98:6–99:1, 125:20–126:21; Ex. 9 at 91:10–92:2; Ex. 10 at 72:7–73:15; Ex. 11 at 145:6–146:10; Ex. 12 at 84:3–85:20; Ex. 13 at 65:14–19, 111:6–16; Ex. 14 at 82:15–84:4, 100:19–102:1; Ex. 15 at 112:1–114:2; 131:18–132:12.)
[19] Willig Decl., **Ex. AH, App. 7769.** (Mattila Decl., Ex. 7 at 54:9–16; Ex. 8 at 144:5–146:1.)
[20] Willig Decl., **Ex. AH, App. 7769.** (Id., Ex. 7 at 44:12–45:16, Ex. 8 at 98:6–99:1, 125:20–126:21.)
[21] Willig Decl., **Ex. AH, App. 7769.** (Mattila Decl., Ex. 9 at 57:9–14, 59:4–22, 68:3–18, 149:8–150:2.)
[22] Willig Decl., **Ex. P, App. 5070.** (Escobar Decl, Ex. 23 at Response to Interrogatory No. 15.)

UNIBANK'S RESPONSE TO RECEIVER'S REPORT    pg. 10

**E.     There is No Evidence of Misrepresentation by UniBank**.

Despite more than a year of discovery, including the production of tens of thousands of pages of documents and the sworn deposition testimony of every individual Borrower, the Borrowers have failed to identify any specific, actionable misrepresentation made by UniBank. Instead, the sole evidence Borrowers rely upon in support of their fraudulent misrepresentation claim consists of a handful of vague, oral statements allegedly made by former UniBank loan officer Wan Kim. These isolated remarks—most of which are forward-looking, generalized, or subjective opinion in nature— fall far short of meeting the stringent standard for fraud under Washington law, which requires clear and convincing evidence of a knowingly false representation of a material preexisting fact made with intent to deceive.[23]

During their respective depositions, each Borrower was asked, under oath, to identify any specific representation made by UniBank that was false or misleading. Without exception, every Borrower either failed to identify any such representation or affirmatively testified that they were unaware of any false statement made by UniBank or its personnel in connection with their loan transactions. For example:

**Borrowers Kevin Douglas and Ryan Richard**

- **Deposition Testimony:**
  Q: With that kind of in mind, do you think Wan Kim and I will go through a couple of the other bank people too, but Wan Kim specifically, are you claiming that Wan Kim intentionally tried to deceive you or harm you in connection with your UniBank loan transaction?

  A: No
  Q: Okay. Can you identify anyone at UniBank, based on your interactions with them in connection with your loan, that you feel today, that they just intentionally tried to deceive you, harm you, in connection with your loan?
  A: Intentionally -- Intentionally tried to deceive. Not to my knowledge, no.

---

[23] *See Westby v. Gorsuch*, 112 Wn. App. 558, 570, 50 P.3d 284 (2002); *Cornerstone Equip. Leasing, Inc. v. MacLeod*, 159 Wn. App. 899, 905, 247 P.3d 790, 794 (2011); *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965, 970 (2012).

- **Citation**: Willig Decl., **Ex. O, App. 3986**. (Escobar Declaration ISO PL PI, Ex. 3 (K. Douglas Dep.) 127:25-128:18.)

  Q: But sitting here today, you personally are not aware of any facts, you know, that -- that you can point to right now saying, you know, to -- you know, to point to that any particular individual at UniBank acted in an intentionally deceptive manner towards you in connection with your loan?

  A. I don't have any facts to -- that I'm aware of.

- **Citation**: Willig Decl., **Ex. O, App. 3986**. (Escobar Declaration ISO PL PI, Ex. 3 (K. Douglas Dep.) 129:20-130:8.)

  **Borrower Kwansoo Lee**

- **Deposition Testimony:**

  Q:  So with respect to fraudulent misrepresentation, what representation was made to you from any UniBank representative that you believe was wrong?

  A:  To be frank, I'm not sure.

  Q:  There's nothing that comes to mind?

  A:  No.

- **Citation**: (L. Kwansoo Dep.) 225:24-226:4

  Willig Decl., **Ex. AY, App. 9141**.

The foregoing factual summary highlights just a few examples of the complex issues and extensive evidentiary record that is being developed and adjudicated in the Washington State Case.

### IV.    Receivership Status and Report

On February 27, 2025, UniBank formally notified the Receiver that it holds a duly perfected security interest in any proposed distributions to its Borrowers. UniBank's secured position arises from executed Commercial Security Agreements, which expressly grant UniBank a security interest in the Borrowers' assets, and from corresponding UCC financing statements that were timely and properly filed in accordance with Article 9 of the Uniform Commercial Code. By virtue of these perfected liens, UniBank's interest in the funds at issue is superior to the claims of unsecured creditors and must be recognized and preserved in any distribution ordered

by the Court. A copy of the letter to the Receiver is attached as **Ex. K** to the Willig Decl. (App. 2075).

The Receiver asserts that UniBank's loan documents were somehow employed to perpetuate a fraudulent scheme, contending that they were used as a marketing tool to promote the CETA Ponzi scheme. As the record demonstrates, every Borrower was already aware of— and had independently elected to participate in—the CETA investment prior to ever contacting UniBank. [Cite]. The Borrowers' decisions to pursue CETA investments predated and were wholly independent of any loan documentation prepared by UniBank. Accordingly, the Receiver's claim that UniBank's loan documents functioned as instruments of the fraud is inconsistent with the undisputed events.

The Borrowers and UniBank are currently engaged in extensive and far-reaching litigation that has been pending in Washington state in Snohomish County Superior Court since 2023. The Washington court has already considered and dismissed the Borrowers' central claim that UniBank negligently breached any duty of disclosure to Borrowers.. Willig Decl., **Ex. AR, App. 8731**. While UniBank recognizes that its loan proceeds to purchase equipment from the perpetrators of the Ponzi scheme—and thus may properly be considered victims of that scheme—UniBank itself asserts no claim against the assets of this receivership estate. At the Receiver's urging, UniBank participated in settlement discussions with its Borrowers in an effort to resolve issues relating to potential distributions from this receivership. Those discussions proved unsuccessful, as the very issues raised are already the subject of active litigation in the Washington State Case, where they are being properly and lawfully adjudicated.

Significantly, UniBank has not attempted to interfere with these receivership proceedings, nor has it objected to any matter before this Court. UniBank's involvement has been limited to advising the Receiver's counsel of the existence of its duly perfected security interests in the Borrowers' personal property—interests arising under valid Commercial Security Agreements and perfected through the filing of UCC financing statements.

## V.     Legal Argument

### A.     Lack of Jurisdiction over UniBank.

UniBank has not made any claim in this receivership case and in no manner consented to this Court's jurisdiction, and its filing of a response does not constitute consent. In fact UniBank specifically denies that this Court has jurisdiction over UniBank. The validity of any federal court order depends upon that court's having jurisdiction over both the subject matter and the parties.[24] Filing a response or notice to protect a security interest does not, by itself, constitute consent to jurisdiction.

### B.     Abstention Due to Ongoing State Court Litigation.

UniBank is already actively engaged in litigation with these same Borrowers in the Washington State Case. As noted above, the Snohomish County Superior Court has already resolved certain other legal issues in UniBank's favor, including summary judgment dismissal of the Borrowers' negligence claim and rejection of the Borrowers' contention that UniBank owed them any duty of disclosure. Most recently, the Superior Court considered UniBank's motion for summary judgment to enforce its loan documents and to establish the nature, extent, and validity of UniBank's perfected security interests. While the Court declined to grant judgment as a matter of law on that issue, it expressly reserved the matter for full adjudication on the merits at a later stage in the case. These rulings underscore that the Washington State Case is the proper forum for determining UniBank's rights and the Borrowers' defenses, and they demonstrate that those issues are already well underway toward resolution.

Allowing the Receiver to circumvent these ongoing proceedings by asking this Court to disregard UniBank's contracts and secured status undermines principles of federal-state comity and invites conflicting rulings. "The existence of a federal receivership should not be allowed to hamper litigants in a state court from securing their evidence, provided production or examination of the receiver's books and papers can be had without interference with due administration of the

---

[24] *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982), *citing Stoll v. Gottlieb*, 305 U.S. 165, 171-172 (1938); *Thompson v. Whitman*, 18 Wall. 457, 465 (1874)

receivership. On the other hand, the accident of a federal receivership should give state litigants no greater rights to procure evidence before trial than they would have if the receivership did not exist. The state court, which has the main suit before it, ought in general to be able to proceed unimpeded by the federal receivership, but nothing more should follow from the fact of a receivership." *Whan v. Green Star S.S. Corp.*, 38 F.2d 68, 68–69 (2d Cir. 1930). This federal receivership Court should abstain from interfering with ongoing, parallel state court litigation, especially where the state court has already ruled on key issues. The doctrine of abstention allows federal courts to defer to ongoing state proceedings to avoid duplicative litigation and inconsistent rulings.[25] Here, each of the well-established *Colorado River* factors weigh in favor of abstention in light of the existing Washington State Case: the contractual and statutory issues governed by Washington State law are already pending before a more convenient forum (Washington State court), there is an obvious and desirable interest in avoiding piecemeal litigation of the Borrowers' dispute with UniBank, and only the Washington State court presently has jurisdiction over all parties to such dispute (*i.e.*, over UniBank and the other defendants in the Washington State Case).[26]

The Washington litigation between UniBank and the parties has been proceeding for almost two years. It has involved extensive discovery, including all of the Borrowers having their depositions taken. The Court has already made several determinations based on Washington law and the extensive evidentiary record before it, and will adjudicate the Parties' remaining claims in due course.

### C. Preclusion, Full Faith and Credit, and Limits on Receiver's Authority.

The Receiver's recommendations improperly invite this Court to disregard binding rulings already issued by the Washington State Superior Court in ongoing litigation between UniBank and its Borrowers. Federal courts are obligated by statute to give "the same full faith and credit…to judicial

---

[25] *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal court abstention appropriate given interests of "wise judicial administration" and "conservation of judicial resources and comprehensive disposition of litigation").
[26] *Id.* at 818.

proceedings of any State…as they have by law or usage in the courts of such State" (28 U.S.C. § 1738). This mandate extends to issue preclusion (collateral estoppel) and claim preclusion (res judicata).[27]

Here, the Snohomish County Superior Court has already dismissed with prejudice the Borrowers' central claims that UniBank owed them fiduciary or disclosure duties, that it engaged in negligent misrepresentation, or that it stood in a quasi-fiduciary relationship. Because the Receiver stands in the shoes of the Borrowers, the Receiver is equally bound by the preclusive effect of those rulings.[28] That authority does not extend to declaring contracts void, extinguishing perfected security interests, or circumventing parallel state court proceedings.

To allow the Receiver's recommendation to stand would not only contravene UniBank's statutory lien rights, but also undermine the settled principles of full faith and credit, federal-state comity, and the orderly administration of justice.

### D. Equitable Authority Cannot Override Valid Security Interests Without Due Process.

The Receiver cannot use equitable powers to disregard UniBank's perfected security interests without an adversarial proceeding and specific findings of inequitable conduct. Article 9 of the Uniform Commercial Code (U.C.C. §§ 9-201, 9-203, 9-308) protects the rights of secured creditors and requires due process before those rights can be disturbed. Equitable subordination requires a showing of inequitable conduct, injury to creditors, and that subordination is not inconsistent with bankruptcy law.[29]

---

[27] *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) (federal courts must honor state court judgments with the same preclusive effect those judgments would receive in state court).

[28] *See Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008) (a nonparty is bound where its interests are represented by a party to the prior litigation). Further, a receiver's authority is strictly limited to preserving, managing, and distributing receivership property in accordance with the appointing court's order. See *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (receiver acts as an arm of the court and cannot expand his authority beyond the mandate of the appointment order).

[29] *See, Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977); *In re Fabricators, Inc.*, 926 F.2d 1458, 1464–65 (5th Cir. 1991). A receiver must initiate an adversary proceeding to challenge a lien. *See, e.g.*, Fed. R. Bankr. P. 7001(2) (proceeding to determine validity, priority, or extent of a lien must be brought as an adversary proceeding).

Equitable subordination of a secured creditor's claim requires specific findings of inequitable conduct, injury to creditors, and that subordination is not inconsistent with bankruptcy law.[30] In analyzing what claims may preempt a secured creditor, the one court stated as follows: "While courts recognize that a creditor's consent to appointment of a receiver may create liability for the receiver's expenses that may be deducted from the creditor's proceeds of collateral, this reasoning has never been extended to include a capital gains tax. Moreover, once a receiver is appointed, the sale of assets is conducted independent of the creditors. The receiver is "act[ing] on the authority of the court and for the interest of the general creditors, not on the authority of the secured creditors and for their particular interests."[31]

The fact that UniBank is pursuing its contractual rights against its Borrowers does not constitute inequitable or fraudulent conduct that may be used to compel subordination of its claims.[32]

### E. No Evidence of UniBank's Participation in the Fraudulent Scheme.

There is no evidence that UniBank participated in or promoted the CETA Ponzi scheme; its only relationship was with the Borrowers. Liability for aiding and abetting fraud requires actual knowledge and substantial assistance.[33] Mere provision of loans, without more, does not establish participation in a fraudulent scheme.

There is no legal or factual basis to assert that UniBank "participated" in the Ponzi scheme or that its loans are "void." The Washington court has already rejected similar allegations. The loans at issue were made to the Borrowers. It is irrelevant as to the loan program the loans were made to the

---

[30] *See, e.g., Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977) (three-prong test for equitable subordination). *In re Fabricators, Inc.*, 926 F.2d 1458, 1464–65 (5th Cir. 1991) (court must make specific findings and conclusions).

[31] *United States v. F.D.I.C.*, 899 F. Supp. 50, 56 (D.R.I. 1995).

[32] *See, e.g., In re Zohar III, Corp.*, 639 B.R. 73, 113 (Bankr. D. Del. 2022), aff'd, 620 F. Supp. 3d 147 (D. Del. 2022), in which the Court held: "The likelihood of such a scheme's existence is dubious for the reasons already explained and, without the ability to rely on Defendants' purported inequitable conduct, there are insufficient factual allegations in the Amended Complaint to suggest such a scheme. Nonetheless, even if a scheme did exist, "[t]he real issue is whether Defendants did anything wrong in pursuit of their 'scheme' and can be held liable on the claims asserted."

[33] *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

Borrowers, as the SBA lending program is for the benefit of the lender, not the Borrower. Further, Kim did not in any manner "promote and administered the CETA investments." At the time the loans were made, and based on the Borrower's respective representations made under penalty of perjury, the loans met the qualifications for SBA (7)(a) eligibility. Mr. Kim did not prepare any documents on behalf of any CETA offering. He was the Borrowers' point of contact at UniBank who received information and materials from the respective Borrowers in their efforts and inducement to have UniBank make them a loan. While it is unfortunate the purpose of the loan failed, UniBank is entitled to enforce the terms of the parties' written loan documents.

### F. Receiver Must Initiate Adversary Proceeding to Challenge Lien.

If the receiver wishes to challenge UniBank's security interests, he must do so through an adversary proceeding, not by summary recommendation.[34] Due process requires notice and an opportunity to be heard before property rights are disturbed.[35] Even assuming the Court has jurisdiction over this matter, if the Receiver wishes to challenge the validity, enforceability, or priority of UniBank's security interests, the proper vehicle is an adversary proceeding, with appropriate pleadings, discovery, and a trial. The Receiver has initiated no such process. Here, UniBank has not had the opportunity to be heard, submit evidence, or challenge the Receiver's factual mischaracterizations regarding the loans, the role of UniBank personnel, or the Receiver's conclusions about SBA program eligibility. These issues are central to the pending Washington litigation and should not be re-adjudicated here.

### G. SBA Compliance Is Irrelevant To Contract Enforceability.

The Receiver's repeated assertion that the loans were "not qualified SBA loans" is legally irrelevant. The SBA 7(a) program exists to guarantee repayment to the lender—not to create borrower defenses. Regardless of whether UniBank's loans are SBA-guaranteed, they remain enforceable

---

[34] *See, e.g.,* Fed. R. Bankr. P. 7001(2) (adversary proceeding required to determine validity, priority, or extent of a lien).
[35] *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

contracts. Borrowers are not third-party beneficiaries of SBA eligibility rules and cannot rely on them to avoid loan repayment. Once the SBA purchases an outstanding loan, it stands in the shoes of the original lender and may recoup the balance of the loan owed by the borrower.[36]

## VI.    CONCLUSION

For the foregoing reasons, UniBank respectfully requests that the Court:

1.    **Decline to Adopt Receiver's Recommendation as to UniBank.**

The Court should reject the Receiver's recommendation insofar as it seeks to impair, alter, or nullify UniBank's valid loan documents and perfected security interests. The Receiver's proposal improperly intrudes upon UniBank's contractual and statutory rights and exceeds the Receiver's limited authority.

2.    **Abstain in Favor of Ongoing State Court Proceedings.**

The Court should abstain from adjudicating any matters that are currently pending before the Snohomish County Superior Court, which has primary jurisdiction over the enforcement and interpretation of UniBank's loan agreements and related rights. Federal–state comity and abstention principles dictate deference to the state court in order to avoid conflicting rulings and to preserve the orderly administration of justice.

3.    **Direct Distribution of Funds to State Court Registry.**

Any funds that the Receiver seeks to allocate to Borrower-claimants and to UniBank should instead be deposited with the registry of the Snohomish County Superior Court. That Court is the proper forum to determine the respective rights and entitlements of UniBank and the Borrower-claimants, consistent with Washington state law and the pending litigation.

---

[36] *See BancOhio Nat. Bank*, 1987 WL 37611 at *2 ("[I]f SBA purchases a loan they then stand in the shoes of the bank with all the security and guarantees originally provided running to them."); *see also Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 774 (S.D. Miss. 2013) ("An SBA guarantee does not release the borrower from its indebtedness; it simply changes who enforces the debt.").

4. **Excuse UniBank from Further Participation in Receivership Proceedings.**

Given the pendency of parallel state court litigation and the Receiver's ongoing attempts to re-litigate issues properly before the Snohomish County Superior Court, UniBank should be relieved from any obligation to further appear or participate in these federal receivership proceedings.

Respectfully submitted,

SEYFARTH SHAW LLP

By: _/s/ Andrew R. Escobar_
  Tricia W. Macaluso
  Texas Bar No. 24013773
  2323 Ross Avenue, Suite 1660
  Dallas, Texas 75201
  Phone: (469) 608-6706
  Email: tmacaluso@seyfarth.com

  Andrew R. Escobar, WSBA No. 42793
  *Admitted pro hac vice*
  999 Third Avenue, Suite 4700
  Seattle, Washington 98104-4041
  Phone: (206) 946-4910
  Email: aescobar@seyfarth.com

HACKER & WILLIG, INC., P.S.
  Arnold M. Willig, WSBA No. 20104
  *Admitted pro hac vice*
  The Financial Center
  1215 Fourth Avenue, Suite 910
  Seattle, Washington 98161
  Phone: (206) 946-4910
  Email: arnie@hackerwillig.com

**Attorneys For UniBank**

**<u>CERTIFICATE OF SERVICE</u>**

I certify on August 22, 2025, I served a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

_/s/ George P. Barrington_
George P. Barrington